UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE HONORABLE OTTO J. REICH and OTTO REICH ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>LEOPOLDO ALEJANDRO BETANCOURT LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and FRANCISCO D'AGOSTINO CASADO,<br><br>Defendants. | Civil Action No.: 13 CV 5307 (PJO) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS BETANCOURT LOPEZ AND TREBBAU LOPEZ**

LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue, 34th Floor
New York, N.Y. 10110
(212) 921-8399
*Attorneys for Defendant*
*Alejandro Betancourt Lopez*

TEW CARDENAS LLP
1441 Brickell Avenue, 15th floor
Miami, Florida 33131
(305) 536-1112
*Attorneys for Defendant*
*Pedro Jose Trebbau Lopez*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

I. The Parties ........ 2

II. Plaintiffs' RICO Allegations ........ 3

A. Enterprise ........ 3

B. Racketeering Activity ........ 3

1. Alleged Violations of the Travel Act and FCPA ........ 4

2. Alleged Wire Fraud ........ 5

C. Injury ........ 6

III. Plaintiffs' State Law Claims ........ 7

ARGUMENT ........ 7

Point I
The RICO Claim Should Be Dismissed With Prejudice ........ 8

A. Plaintiffs Do Not Have RICO Standing Because They Do Not Allege That They Suffered Any Injury Caused by a pattern of Racketeering Activity ........ 8

1. Plaintiffs' Attempt To Plead FCPA or Travel Act Violations Do Not Confer RICO Standing ........ 8

2. Plaintiffs' Attenuated Wire Fraud Allegations Do Not Confer RICO Standing ........ 10

B. Plaintiffs Fail to Plead a "Pattern Of Racketeering Activity" ........ 12

C. Plaintiffs' RICO Claim Must Be Dismissed Because It Is Wholly "Extraterritorial" ........ 14

D. Plaintiffs' RICO Conspiracy Claim Should Be Dismissed ........ 16

Point II
The Court Lacks Personal Jurisdiction Over Defendants Betancourt and Trebbau for Plaintiffs' State Law Claims ........ 16

CERTIFICATION ........ 20

CONCLUSION ........................................................................................................................ 21

# TABLE OF AUTHORITIES


Page(s)

CASES

*Abrahams v. Young & Rubicam Inc.*,
79 F.3d 234 (2d Cir. 1996)....................9

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006)....................7

*Adirondack Transit Lines, Inc. v. Lapaglia*,
128 A.D.2d 228, 515 N.Y.S.2d 668 (3d Dep't 1987)....................18

*Antone v. Gen. Motors Corp., Buick Motor Div.*,
64 N.Y.2d 20 (N.Y. 1984)....................18

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006)....................8

*Apparel Art Int'l, Inc. v. Jacobson*,
967 F.2d 720 (1st Cir. 1992)....................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
305 F.3d 120 (2d Cir. 2002)....................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Bernstein v. Misk*,
948 F. Supp. 228 (E.D.N.Y. 1997)....................12

*Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*,
05 Civ. 9994, 2007 WL 747807 (S.D.N.Y. Mar. 9, 2007) (Wood, J.)....................17, 18

*Biro v. Conde Nast*,
11 Civ. 4442, 2013 WL 3948394 (S.D.N.Y. Aug. 1, 2013) (Oetken, J.)....................2

*Boritzer v. Calloway*,
10 Civ. 6264, 2013 WL 311013 (S.D.N.Y. Jan. 24, 2013) (Oetken, J.)....................10, 11, 14

*Boykin v. KeyCorp*,
521 F.3d 202 (2d Cir. 2008)....................8

*Brinkmann v. Adrian Carriers, Inc.*,
815 N.Y.S.2d 196 (2d Dep't 2006)....................18

*Cantor Fitzgerald, L.P. v. Peaslee*,
88 F.3d 152 (2d Cir. 1996)....................19

*Cedeno v. Castillo*,
457 F. App'x 35 (2d Cir. 2012) ....................16

*Cedeno v. Intech Grp.,Inc.*,
733 F. Supp. 2d 471 (S.D.N.Y. 2010) (Rakoff, J.), *aff'd,* 457 F. App'x 35 (2d Cir. 2012) ....................16

*Contes v. City of New York*,
99 Civ., 1597, 1999 WL 500140 (S.D.N.Y. July 14, 1999) (Scheindlin, J.)....................10

*Creed Taylor, Inc. v. CBS, Inc.*,
718 F. Supp. 1171 (S.D.N.Y. 1989) (Carter, J.) ....................10

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq*.,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ....................11

*D.R.S. Trading Co. v. Fisher*,
01 Civ. 8028, 2002 WL 1482764 (S.D.N.Y. July 10, 2002) (Pauley, J) ....................14

*Deer Consumer Prods., Inc. v. Little*,
938 N.Y.S.2d 767 (N.Y. Sup. Ct. 2012)....................18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A*.,
722 F.3d 81 (2d Cir. 2013)....................17

*Efron v. Embassy Suites (Puerto Rico), Inc*.,
223 F.3d 12 (1st Cir. 2000)....................8

*Feinstein v. Resolution Trust Corp.*,
942 F.2d 34 (1st Cir. 1991)....................13

*Fiedler v. First City Nat. Bank of Houston*,
807 F.2d 315 (2d Cir. 1986)....................20

*First Capital Asset Mgmt*,
385 F.3d 159 (2d Cir. 2004)....................16

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.,*
10 Civ. 8, 2011 WL 1044898 (S.D.N.Y. Mar. 10, 2011) (Batts, J.)....................9

*GICC Capital Corp. v. Tech. Fin. Grp., Inc*.,
67 F.3d 463 (2d Cir. 1995)....................12

*Gilman v. Marsh & McLennan Cos.*
868 F. Supp. 2d 118 (S.D.N.Y. 2012) (Oetken, J.)....................2

*Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*,
11 Civ. 420, 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) (Holwell, J.)....................18

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009) (Marrero, J.)....................8

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990)....................8

*Heinfling v. Colapinto*,
946 F. Supp. 260 (S.D.N.Y. 1996) (Scheindlin, J.)....................20

*Hemi Grp., LLC v. City of New York,*
559 U.S. 1 (2010)....................8, 10

*Hollander v. Flash Dancers Topless Club*,
340 F. Supp. 2d 453 (S.D.N.Y. 2004) (Castel, J.), *aff'd*, 173 Fed. App'x 15 (2d Cir. 2006)....................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
935 F. Supp. 2d 666 (S.D.N.Y. 2013) (Buchwald, J.)....................14

*J.S. Serv. Ctr. Corp. v. Gen. Elec. Technical Servs. Co*,
937 F. Supp. 216 (S.D.N.Y. 1996) (Conner, J.)....................9

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998)....................18

*JBCHoldings NY, LLC v. Pakter*,
931 F. Supp. 2d 514 (S.D.N.Y. 2013) (Engelmayer, J.)....................8

*Kimm v. Lee*,
04 Civ. 5724, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) (Baer, J.), *aff'd*, 196 F. App'x 14 (2d Cir. 2006)....................10, 11

*Lan Sang v. Ming Hai*,
12 Civ. 7103, 2013 WL 3215458 (S.D.N.Y. June 27, 2013) (Oetken, J.)....................2

*Mansmann v. Smith*,
96 Civ. 5768, 1997 WL 145009 (E.D. Pa. Mar. 21, 1997)....................11

*Medinol Ltd. v. Boston Scientific Corp.*,
346 F. Supp. 2d 575 (S.D.N.Y. 2004) (Hellerstein, J.)....................14

*Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico*,
621 F.3d 10 (1st Cir. 2010)....................10

*Merlino v. Harrah's Entm't, Inc.*,
05 Civ. 6660, 2006 WL 401847 (E.D. Pa. Feb. 17, 2006)....................19

*Morrison v. National Australia Bank*
130 S. Ct. 2869 (2010)....................15

*Mount v. Ormond*,
91 Civ. 0125, 1991 WL 191228 (S.D.N.Y. Sept. 18, 1991) (Duffy, J.)....................10

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
631 F.3d 29 (2d Cir. 2010)....................14, 15

*Patrizzi v. Bourne in Time, Inc.*,
11 Civ. 2386, 2012 WL 4833344 (S.D.N.Y. Oct. 11, 2012) (Engelmayer, J.)....................14

*Petroleos Mexicanos v. SK Engineering & Construction Co. Ltd.*,
12 Civ. 9070, 2013 WL 3936191 (S.D.N.Y. July 30, 2013)....................15

*Prince v. Madison Square Garden*,
427 F. Supp. 2d 372 (S.D.N.Y. 2006) (Sweet, J.)....................8

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*,
89 Civ. 2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) (Jones, J.)....................12

*Republic of Iraq v. ABB AG*,
920 F. Supp. 2d 517 (S.D.N.Y. 2013) (Stein, J.)....................16

*Richtone Design Grp., LLC v. Live Art, Inc.*,
12 Civ. 7652, 2013 WL 5904975 (S.D.N.Y. Nov. 4, 2013) (Keenan, J.)....................17

*Rosenson v. Mordowitz*,
11 Civ. 6145, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) (Oetken, J.)....................8, 12

*Schlaifer Nance & Co. v. Estate of Warhol*,
119 F.3d 91 (2d Cir. 1997)....................12

*Smith v. Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002)....................7

*Symmetra Pty Ltd. v. Human Facets, LLC*,
12 Civ. 8857, 2013 WL 2896876 (S.D.N.Y. June 13, 2013) (Scheindlin, J.)....................19

*Thomas v. JP Morgan Chase, N.A.*,
11 Civ. 3656, 2012 WL 2872164 (E.D.N.Y. July 11, 2012), *aff'd,* 2013 WL 5226415
(2d Cir. Sept. 18, 2013)....................17

*Tsipouras v. W&M Props., Inc.*,
9 F. Supp. 2d 365 (S.D.N.Y. 1998) (Sprizzo, J.) ........................................................... 10

*Tymoshenko v. Firtash*,
11 Civ. 2794, 2013 WL 1234821 (S.D.N.Y. Mar. 26, 2013) (Wood, J.) ............................... 16

*United States v. Ferrara*,
701 F. Supp. 39 (E.D.N.Y. 1988), *aff'd*, 868 F.2d 1268 (2d Cir. 1988) ................................ 11

*United States v. Indelicato*,
865 F.2d 1370 (2d Cir. 1989) ............................................................................................ 9

*United States v. Young & Rubicam, Inc.*,
741 F. Supp. 334 (D. Conn. 1990) ..................................................................................... 9

*Watkins v. Smith*,
12 Civ. 4635, 2012 WL 5868395 (S.D.N.Y. Nov. 19, 2012) (Cote, J.) .................................. 9

STATUTES

18 U.S.C. § 1961 ................................................................................................................ 9

18 U.S.C. § 1962 ................................................................................................... 11, 12, 16

18 U.S.C. § 1964 .............................................................................................................. 10

New York Civil Practice Law and Rules 301 ............................................................... 17, 18

New York Civil Practice Law and Rules 302 ............................................................... 19, 20

OTHER AUTHORITIES

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004) ............................................................................................................................. 8

4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2004) ......................................................................................................................... 16

*FCPA: A Resource Guide to the Foreign Corrupt Practices Act*, *available at*
http://www.justice.gov/criminal/fraud/fcpa/guide.pdf ............................................................ 5

Fed. R. Civ. P. 12 ............................................................................................................ 1, 7

Defendants Leopoldo Alejandro Betancourt Lopez ("Betancourt") and Pedro Jose Trebbau Lopez ("Trebbau") respectfully submit this memorandum of law in support of their motion, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint filed in the above-captioned action.[1]

## PRELIMINARY STATEMENT

This action is a quintessential abuse of RICO. Plaintiffs mischaracterize a defective defamation claim as "wire fraud" and then implausibly attempt to link this illusory "wire fraud" claim to a separate, unrelated and insufficiently pled foreign scheme, allegedly involving bribery of Venezuelan officials, which had no judicially recognizable impact on plaintiffs.

Most obviously, plaintiffs lack standing to bring their RICO claim because they have not alleged -- and cannot allege -- that they suffered any damage proximately caused by a pattern of racketeering activity. The only activity alleged by plaintiffs that bears some resemblance to racketeering is the Venezuelan bribery scheme, as to which plaintiffs claim to be nothing more than disapproving observers. They offer no allegation of any damages to them resulting from the alleged bribery. Plaintiffs' only allegation of injury appears in their defamation claim, which they mischaracterize as "wire fraud." Prevailing RICO jurisprudence is clear that defamation is neither wire fraud nor racketeering activity.

Further, plaintiffs' complaint fails to allege the required "pattern" of racketeering activity because their purported predicate acts -- the alleged bribery scheme and the defamation -- are wholly unrelated to each other and lack continuity. In addition, plaintiffs' alleged bribery scheme, focusing entirely on Venezuela, founders on the Second Circuit's unequivocal

[1] Defendant Francisco D'Agostino Casado joins this Memorandum of Law.

instruction that RICO does not apply to such extraterritorial schemes. Accordingly, the RICO claim should be dismissed with prejudice.

Without the assistance of RICO's jurisdiction provisions, the Court lacks personal jurisdiction over defendants Betancourt and Trebbau, and for this reason the remaining state law claims against them should be dismissed. New York's long-arm statute does not support plaintiffs' state law claims, all of which sound in defamation.

## **STATEMENT OF FACTS**[2]

### I. The Parties

Plaintiff Otto Reich, a former U.S. Ambassador to Venezuela, is a political consultant and lobbyist. Cmplt. ¶¶ 2, 24, 26. The corporate entity, plaintiff Otto Reich Associates, LLC ("ORA"), through which Reich conducts his consulting business, primarily provides assistance to organizations and individuals with their public relations and business efforts. Cmplt. ¶ 2.

Defendants Betancourt and Trebbau are citizens of Venezuela and the founders and President and Vice-President, respectively, of Derwick Associates Corporation ("Derwick"), a Barbados corporation that provides engineering, procurement, and construction services to power plant companies in Venezuela and other countries in South America.[3] Cmplt. ¶¶ 19, 20, 29, 33,

---

[2] The facts in this section are based on the allegations in the complaint and are assumed to be true solely for purposes of this motion to dismiss. *Lan Sang v. Ming Hai*, 12 Civ. 7103, 2013 WL 3215458, at *3 (S.D.N.Y. June 27, 2013) (Oetken, J.). In fact, many of the salient facts are demonstrably false.

[3] Plaintiffs define "Derwick Associates" to consist of 1) a Florida LLC called "Derwick Associates USA LLC," 2) an unidentified entity labeled "Derwick Associates Corporation," and 3) certain unidentified related entities. Cmplt. ¶ 28. The Articles of Organization for Derwick Associates USA, LLC were filed on December 2, 2010, and the entity was dissolved by the State of Florida on September 28, 2012. *See* Wohl Decl., Exs. B and C. On a motion to dismiss, the court may review "any documents attached to the complaint or incorporated into it by reference, any documents that are 'integral' to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice." *Gilman v. Marsh & McLennan Cos*., 868 F. Supp. 2d 118, 127 (S.D.N.Y. 2012) (Oetken, J.) (citation omitted). Derwick Associates Corporation's Articles of Organization and Derwick Associates USA, LLC's filings with the State of Florida are both integral to the complaint and publicly filed documents, and thus properly noticed by the Court. *See Biro v. Conde Nast*, 11 Civ. 4442, 2013 WL 3948394, at *6 (S.D.N.Y. Aug. 1, 2013) (Oetken, J.) (A "court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

34. *See* Declaration of Frank H. Wohl ("Wohl Decl."), Ex. A. Those services include, among other things, the procurement of power plant equipment, such as turbines, from major companies, such as General Electric, Pratt & Whitney, and ProEnergy Services. Cmplt. ¶ 29.

Plaintiffs allege that Betancourt and Trebbau "reside primarily in the United States." Cmplt. ¶¶ 19, 20. Although plaintiffs do not allege that Betancourt or Trebbau is domiciled in New York or the United States, they allege that defendants "direct, control and coordinate" the affairs of Derwick Associates from an office at 450 Park Avenue, New York, New York and from homes maintained by Betancourt and defendant Francisco D'Agostino Casado ("D'Agostino") in New York. Cmplt. ¶¶ 4, 11, 28. Plaintiffs do not allege that Derwick Associates has offices, owns any property, or has any employees in the United States. Plaintiffs allege that Betancourt and Trebbau own property in Florida. Cmplt. ¶¶ 19, 20.

## II. <u>Plaintiffs' RICO Allegations</u>

### A. <u>Enterprise</u>

Plaintiffs allege two RICO enterprises: 1) Derwick Associates and 2) an association-in-fact consisting of Betancourt; Trebbau; D'Agostino; and non-party Francisco Convit-Guruceaga ("Convit-Guruceaga"). Cmplt. ¶¶ 123, 127.

### B. <u>Racketeering Activity</u>

According to plaintiffs, defendants' "racketeering activity" consists of "the solicitation and payment from the United States of Venezuelan officials for the purpose of securing energy-industry contracts, transmission of the ill-gotten gains via wire to and from bank accounts in the United States and actions constituting wire fraud." Cmplt. ¶ 130. Plaintiffs assert that this

readily determined from sources whose accuracy cannot reasonably be questioned.") (internal quotation marks and citation omitted).

alleged conduct violates the Travel Act, the Foreign Corrupt Practices Act ("FCPA"), and the federal wire fraud statute. Cmplt. ¶¶ 132-40.

### 1. Alleged Violations of the Travel Act and FCPA

Plaintiffs state that they cannot allege the "granular" or "exact details" of the Travel Act and FCPA violations they allege. Cmplt. ¶¶ 44, 51, 61, 72. The complaint alleges that the Federal Bureau of Investigation, the Department of Homeland Security, the Treasury Department and the Securities and Exchange Commission have conducted inquiries into the activities of Derwick Associates. Cmplt. ¶ 78. The complaint makes no allegation that these -- or any other -- official investigations have resulted in charges of wrongdoing by Derwick Associates.

Instead, the complaint relies on allegations that Derwick Associates has been awarded several major contracts, Cmplt. ¶¶ 53, 62, 74, 75, along with allegations of general corruption in Venezuela, especially in the Venezuelan energy sector, problems (unrelated to defendants) at the power companies that contracted with defendants, and regulatory or legal violations (unrelated to defendants) committed by an individual at J.P. Morgan who allegedly provided banking services to defendants. Cmplt. ¶¶ 37-40, 46, 55, 57.

The purported offering and payment of bribes are pled "on information and belief," or with the qualifier, "it is believed." Plaintiffs allege that "*it is believed*" that defendants were involved in three acts in Venezuela over a 13-month period in 2009 and 2010:

i. An alleged payment to Rafael Ramirez ("Ramirez"), President of Petroleos de Venezuela, S.A. ("PDVSA"), in exchange for contracts for Derwick Associates to construct four power plants for PDVSA in Venezuela. Cmplt. ¶¶ 52-53.

ii. An alleged payment to Javier Andres Alvarado Pardi ("Pardi"), the son of a former Venezuelan government official -- but who is not himself alleged to be a current or former government official -- in exchange for his assistance securing contracts for Derwick Associates to construct five power plants for Corporación Eléctrica de Venezuela ("CORPOELEC") in Venezuela. Cmplt. ¶¶ 61-62.

iii. An alleged payment to Rodolfo Sanz ("Sanz"), the Venezuelan Minister of Basic Industries and Mining, in exchange for contracts for Derwick Associates to construct two power plants for Corporación Venezolana de Guayana ("CVG") in Venezuela. Cmplt. ¶¶ 72-74.

The complaint explicitly states that plaintiffs have no information concerning "the amount of the kickback[s] and the dates [they were] offered and paid." Cmplt. ¶¶ 51, 61, 72. The complaint also contains no allegation concerning when, where, or by whom the payments were made.

Plaintiffs offer two bases for the proposition that "it is believed," *id.*, that Derwick Associates paid kickbacks to secure energy-sector construction contracts: 1) the bidding process for these contracts was not public, Cmplt. ¶¶ 48, 58, 69, and 2) in November 2012, defendant D'Agostino allegedly told an unidentified friend that "you always have to pay" "consulting fees" in Venezuela.[4] Cmplt. ¶¶ 50, 60, 71. The complaint quotes guidance from the Department of Justice which explicitly states that consulting fees may be "legitimate payments." *See* Cmplt. ¶ 50 ("[b]ribes are often concealed under the guise of *legitimate payments*, such as commissions or *consulting fees*.") (quoting U.S. Department of Justice, *FCPA: A Resource Guide to the Foreign Corrupt Practices Act*, *available at* http://www.justice.gov/criminal/fraud/fcpa/guide.pdf) (emphasis added).

### 2. Alleged Wire Fraud

The claimed wire fraud is premised on the allegation that defendants told a current and prospective client of plaintiffs that "ORA had been retained by Derwick Associates to offer consulting services." Cmplt. ¶ 116. Substantially the same statement was allegedly said over the telephone on two occasions: sometime in November 2012 to Eligio Cedeño ("Cedeño"), a then-

[4] Further, contrary to the complaint's allegations, D'Agostino is neither an agent, nor an owner, nor an officer, nor an employee of Derwick Associates. Thus, statements by D'Agostino, an *unaffiliated third party,* would not constitute evidence against Betancourt or Trebbau.

current client of ORAl; and on December 20, 2012 to Joaquin Urbano Berrizbeitia ("Urbano"), of Banco Venezolano, a prospective ORA client. Cmplt. ¶¶ 103, 104, 115.

Plaintiffs allege that in October and November of 2012, Banco Venezolano sought to engage ORA as a consultant concerning a defamation action that Derwick Associates had filed against Banco Venezolano (the "Derwick Defamation Action"). Plaintiffs allege that the parties engaged in serious negotiations concerning that engagement, but that Banco Venezolano ceased all communications with plaintiffs as a result of the statement by non-party Convit-Guruceaga that Otto Reich was working for Derwick Associates. Cmplt. ¶¶ 93, 106.

With respect to Cedeño, Plaintiffs allege Cedeño hired ORA in early 2010 and that Cedeño terminated the relationship on November 30, 2012 because of defendant Betancourt's statement. Cmplt. ¶¶ 110, 117.

Plaintiffs allege that defendants made the false statement to interfere with plaintiffs' relationships with Cedeño and the Bank so that defendants could continue their alleged bribery. Plaintiffs allege the "union" of themselves, Banco Venezolano, and Cedeño would have restricted Derwick Associates' ability to continue the alleged bribery of Venezuelan officials, Cmplt. ¶ 8, 139, but Plaintiffs fail to allege how this "union" would have impaired the alleged bribery scheme, which is not alleged to have involved plaintiffs, Banco Venezolano, or Cedeño.

### C. <u>Injury</u>

Plaintiffs allege no damages to themselves resulting from the alleged Travel Act/FCPA violations but only from the defamation, which plaintiffs assert to be wire fraud. Plaintiff Reich alleges only injury to his reputation. Cmplt. ¶ 152. Plaintiff ORA alleges it was injured in its property and business because of its loss of existing and future relationships with Cedeño and Banco Venezolano. *Id.*

## III. Plaintiffs' State Law Claims

Plaintiffs claim the alleged statement that Otto Reich worked for Derwick Associates also constitutes tortious interference with prospective economic advantage, defamation, and civil conspiracy. Cmplt. ¶¶ 153-87.

Although plaintiffs allege that Derwick Associates conducted significant business with General Electric, Pratt & Whitney and ProEnergy Services, LLC, Cmplt. ¶ 29, plaintiffs also claim that mere association with Derwick Associates would "denigrat[e] ORA's reputation and the integrity of the business. . . ." Cmplt. ¶ 158.

## ARGUMENT

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint must be construed in the light most favorable to the plaintiff, the Court need not accept legal conclusions or unwarranted factual inferences: "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice. . . ." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Thus, neither "a formulaic recitation of the elements of a cause of action" nor "naked assertion[s] devoid of further factual enhancement" are sufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In RICO cases, "allegations merit particular scrutiny where" -- as here -- "the predicate acts are mail and wire fraud, and where the use of mail or wires to communicate" -- again, as is the case here -- "is not in and of itself illegal, unlike other predicate acts such as murder or

extortion." *Rosenson v. Mordowitz*, 11 Civ. 6145, 2012 WL 3631308, at *4 n.3 (S.D.N.Y. Aug. 23, 2012) (Oetken, J.).[5]

## Point I

## The RICO Claim Should Be Dismissed With Prejudice

### A. Plaintiffs Do Not Have RICO Standing Because They Do Not Allege That They Suffered Any Injury Caused by a Pattern of Racketeering Activity

To demonstrate RICO standing, a plaintiff must plead facts showing that it suffered injury proximately caused by a pattern of racketeering activity. *Hemi Grp., LLC v. City of New York,* 559 U.S. 1, 9 (2010); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). "[T]he central question . . . is whether the alleged [RICO] violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006).

#### 1. Plaintiffs' Attempts to Plead FCPA or Travel Act Violations Do Not Confer RICO Standing

Plaintiffs do not allege that the purported Travel Act/FCPA violations damaged them.[6] Rather, plaintiffs' allegations, accepted as true, cast them in the role of concerned observers of alleged corruption in Venezuela.

---

[5] *See also Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) ("[C]ourts, including our own, have suggested that RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."); *Gross v. Waywell*, 628 F. Supp. 2d 475, 482 (S.D.N.Y. 2009) (Marrero, J.) ("Exercise of federal court jurisdiction in . . . cases . . . that rely on nothing more than incidental use of mails or wires in furtherance of a simple fraudulent scheme with few victims and narrow impacts, would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions.").

[6] All of the bribery allegations are pled on information or belief, Cmplt. ¶¶ 49, 52, 59, 63, 65 - 67, 70, 73, 76, -- or mere belief. Cmplt. ¶¶ 51, 61, 72. Although a plaintiff may plead facts on information and belief, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), courts in this district require "such allegations must be accompanied by a statement of the facts upon which the belief is founded." *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013) (Engelmayer, J.) (quotation marks omitted) (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (Sweet, J.)). A requirement that plaintiffs provide a factual basis for their belief is particularly important in cases, such as this one, which "cast[] aspersions on the defendant's moral character." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004). Yet, the only

When RICO claims are premised on allegations of bribery, courts in this district reject claims brought by plaintiffs who are neither foreign governments nor competitors of the alleged malfeasor. *See, e.g.*, *J.S. Serv. Ctr. Corp. v. Gen. Elec. Technical Servs. Co*, 937 F. Supp. 216, 220-25 (S.D.N.Y. 1996) (Conner, J.). *See also Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.,* 10 Civ. 8, 2011 WL 1044898, at *5 (S.D.N.Y. Mar. 10, 2011) (Batts, J.) (no standing where "[n]one of Plaintiff's alleged injuries were suffered as a result of being a target of the alleged RICO scheme, which allegedly targeted government entities."). Plaintiffs have no standing to claim injuries caused by the alleged kickback scheme, because plaintiffs were "not the target of the racketeering enterprise." *Abrahams v. Young & Rubicam Inc*., 79 F.3d 234, 238 (2d Cir. 1996) (quotation marks and citation omitted). The Second Circuit has explained that there is no proximate cause, and therefore no standing, where a plaintiff's injuries "did not flow from the harms that the predicate acts -- bribery, kickbacks, extortion, fraud -- were intended to cause and the laws against them were intended to prevent." *Id.* *A fortiori*, a claim devoid of *any* claim of injury to plaintiffs cannot support RICO standing.[7]

---

alleged facts that plaintiffs offer to support their "belief" that defendants offered and paid bribes are 1) that defendants secured contracts pursuant to bidding processes that were not public and 2) that defendant D'Agostino allegedly said in November 2012 that one always has to pay consulting fees to secure contracts in Venezuela. Simply put, plaintiffs' bribery allegations rest on mere speculation.

[7] Contrary to the suggestion in the complaint, an FCPA violation is not, in and of itself, a separate RICO predicate act. *See*18 U.S.C. § 1961 (listing predicate acts). To be a RICO predicate act, an alleged FCPA violation must also constitute a specifically enumerated offense under the RICO statute. *See, e.g.*, *United States v. Young & Rubicam, Inc*., 741 F. Supp. 334, 339 (D. Conn. 1990) (alleged FCPA violation could be RICO predicate act insofar as it also constituted a violation of the Travel Act). Further, "a single violation of one [statute] is not converted into a second predicate act because [another statute] is also violated. *Watkins v. Smith*, 12 Civ. 4635, 2012 WL 5868395, at *5 (S.D.N.Y. Nov. 19, 2012) (Cote, J.); *see also United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989) (plaintiff may not "fragment an act that plainly is unitary into multiple acts in order to invoke RICO").

### 2. Plaintiffs' Attenuated Wire Fraud Allegations Do Not Confer RICO Standing

The complaint's only allegations of injuries to plaintiffs relate to the claims of "wire fraud." But plaintiffs' wire fraud allegations "are -- at best -- thinly clothed defamation claims," which "do not provide the requisite predicate for RICO violations." *Kimm v. Lee*, 04 Civ. 5724, 2005 WL 89386, at *4-5 (S.D.N.Y. Jan. 13, 2005) (Baer, J.), *aff'd*, 196 F. App'x 14 (2d Cir. 2006); *see also Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico*, 621 F.3d 10, 15-16 (1st Cir. 2010) (because the "gravamen" of plaintiff's charge was defamation, plaintiff failed to plead RICO predicate wire fraud).[8] Any alleged injury resulting from this thinly-clothed defamation does not constitute an injury "by reason of" a RICO violation, and such injury does not provide RICO standing. 18 U.S.C. § 1964(c); *Hemi Grp.,* 559 U.S. at 9.

Simply put, defamation is not wire fraud. "Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right." *Kimm*, 2005 WL 89386, at *4 (quotation marks and citation omitted). This Court has explained that false statements do not constitute wire fraud unless the object of the statement is "*to obtain money or property* by means of false or fraudulent pretenses, representations, or promises or for purposes of executing a scheme to defraud." *Boritzer v. Calloway*, 10 Civ. 6264, 2013 WL 311013, at *6 (S.D.N.Y. Jan. 24, 2013) (Oetken, J.) (emphasis added).[9] Because plaintiffs have not alleged that defendants made false statements

[8] *See also Contes v. City of New York*, 99 Civ. 1597, 1999 WL 500140 (S.D.N.Y. July 14, 1999) (Scheindlin, J.) (defamation is not a predicate act for RICO); *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998) (Sprizzo, J.) ("mere injury to character, business reputation, and/or the intentional infliction of emotional distress are not actionable under civil RICO"); *Mount v. Ormond*, 91 Civ. 0125, 1991 WL 191228, at *2 (S.D.N.Y. Sept. 18, 1991) (Duffy, J.) (same); *Creed Taylor, Inc. v. CBS, Inc.*, 718 F. Supp. 1171, 1180 (S.D.N.Y. 1989) (Carter, J.) (same).

[9] "[A] proper pleading of predicate acts based on mail and wire fraud requires an allegation of an underlying fraudulent scheme, which, in turn, constitutes (1) the existence of a scheme to defraud; (2) fraudulent intent on the part of the defendant; and (3) the materiality of the representations. While the wire fraud statute itself fails to define the phrase 'scheme to defraud,' courts have interpreted it as a plan to deprive a person of something of value by

with the intent to induce anyone to part with money or property, plaintiffs failed to plead wire fraud.

Instead, plaintiffs claim that defendants conveyed false information to Cedeño and Banco Venezolano "to discredit Ambassador Reich in the eyes of Banco Venezolano." Cmplt. ¶8. As Judge Baer ruled in *Kimm*, such reputational injury does not support a claim of wire fraud. *Kimm*, 2005 WL 89386, at *4. *See also United States v. Ferrara*, 701 F. Supp. 39, 43 (E.D.N.Y. 1988), *aff'd*, 868 F.2d 1268 (2d Cir. 1988) ([I]f one's reputation -- standing alone -- could be construed as property, then any ordinary defamation action could be brought under the mail fraud statute -- a startling proposition.").

Federal courts consistently dismiss RICO claims where, as here, a party mischaracterizes a common law tort claim (such as defamation) as "wire fraud" for purposes of invoking RICO. *See, e.g.*, *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 169 n.19 (E.D.N.Y. 2010); *Mansmann v. Smith*, 96 Civ. 5768, 1997 WL 145009, at *5 (E.D. Pa. Mar. 21, 1997). Here, plaintiffs' "wire fraud" claim is nothing more than a common law tort claim masquerading as a criminal predicate act in "an effort to construct a treble damage suit from what, at best, is a civil wrong. . . ." *Kimm v. Lee*, 2005 WL 89386, at *5.

Plaintiff Otto Reich additionally lacks standing because "injury to his reputation" -- the only injury he alleges, Cmplt. ¶ 152 -- is not an injury to "business or property" cognizable under 18 U.S.C. § 1962(c). *See Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2004) (Castel, J.), *aff'd*, 173 Fed. App'x 15 (2d Cir. 2006).

---

trick, deceit, chicane or overreaching, meaning a departure from community standards of fair play and candid dealings." *Boritzer*, 2013 WL 311013, at *7 (quotation marks and citations omitted).

**B. Plaintiffs Fail to Plead a "Pattern Of Racketeering Activity"**

Even if plaintiffs had RICO standing, the RICO claims still fail because the complaint has not established a "pattern of racketeering activity," 18 U.S.C. § 1962, which requires the alleged predicate acts be related to one another. *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). To satisfy the relatedness requirement, "[t]he racketeering acts must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." *Rosenson*, 2012 WL 3631308, at *5 (citation and quotations omitted). As the Court of Appeals has explained, "[p]redicate acts are 'related' for RICO purposes when they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).

Here, plaintiffs' claims of bribery and "wire fraud" are not related to each other. According to the complaint, the alleged FCPA/Travel Act violations consisted of a scheme to bribe Venezuelan officials for the purpose of "secur[ing] energy-industry contracts in Venezuela." Cmplt. ¶ 3. The alleged "wire fraud" was effected through two phone calls during which Betancourt and Convit-Guruceaga said that Otto Reich was working for Derwick Associates in order to "drive a wedge between ORA and Banco Venezolano." Cmplt. ¶103.

Such unrelated acts do not constitute a pattern of racketeering. *See Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, 89 Civ. 2809, 1996 WL 442799, at *6-7 (S.D.N.Y. Aug. 6, 1996) (Jones, J.) (fraud, for which the only victim was plaintiff, was not related to fraudulent transfers of funds, for which the victim was the Internal Revenue Service); *Bernstein v. Misk*, 948 F. Supp. 228, 236 (E.D.N.Y. 1997) ("[b]ecause the bank frauds bear almost no relation to the predicate

acts which allegedly injured the plaintiffs, they cannot be properly considered as part of the 'pattern' of racketeering activity.").

The geographical and temporal differences between the alleged bribery and wire fraud schemes demonstrate that they are unrelated. The alleged schemes occurred at least two years -- and a continent -- apart. All of the alleged acts of bribery occurred in Venezuela in 2009 and 2010. Cmplt. ¶¶ 53, 62, 74. The defamation allegedly occurred in the United States in November and December of 2012. Cmplt. ¶ ¶ 104, 115. As then-Judge Breyer explained, the alleged schemes are simply "too *un* related-*too* separate, *too* distinct," to form the basis of a racketeering pattern. *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 724 (1st Cir. 1992) (emphasis in original); *see also Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 44-45 (1st Cir. 1991) (rejecting "the bald assertion that . . . two episodes, nearly two years apart in time, hundreds of miles apart in space, and involving two largely distinct groups of participants, were somehow pieces of a unitary scheme").

In what can only be described as a "Hail Mary pass," plaintiffs claim that the alleged wire fraud/defamation related to the alleged bribery because "[t]he union of Ambassador Reich, Cedeño and Banco Venezolano would have been fatal to Defendants' ability to perpetuate their unlawful [bribery] scheme." Cmplt. ¶ 139. The allegations in the complaint, however, completely undermine this implausible claim. Thus, the complaint alleges that defendants' purported bribery scheme was carried out from October 2, 2009 to November 30, 2010, during which time a nearly one-year client-consultant relationship or "union" already existed between Cedeño and Reich. Nor does the complaint plead any facts illuminating how the alleged bribery scheme would have been threatened by Reich's "union" with Banco Venezolano. Without any basis for the allegation, the complaint does not "give rise to a plausible narrative" of relatedness,

an additional reason why the RICO claim must be dismissed. *Boritzer*, 2013 WL 311013, at *4.[10]

### C. Plaintiffs' RICO Claim Must Be Dismissed Because It Is Wholly "Extraterritorial"

The Second Circuit has ruled that RICO does not apply extraterritorially to foreign schemes that plaintiffs claim. *Norex Petroleum Ltd. v. Access Indus., Inc.,* 631 F.3d 29, 32 (2d Cir. 2010). Plaintiffs' complaint describes a purely foreign scheme outside the reach of RICO.[11] Both of the alleged enterprises are foreign: Derwick Associates is a Barbados corporation with its principal place of business in Venezuela, and the individuals who comprise the association-in-fact enterprise are all Venezuelan citizens and nationals.[12] Cmplt. ¶¶ 19-21, 123, 127. The Complaint alleges that Derwick Associates is "in the business of providing engineering, procurement and construction services involving power plants to the government of Venezuela" and identifies twelve power plants *in Venezuela* that Derwick Associates won contracts to build. Cmplt. ¶¶ 29, 53, 62, 63, 74, 75. While plaintiffs allege in conclusory fashion that "[d]efendants run their illegal scheme from their homes and offices in New York and through their U.S.-based

[10] The Complaint also fails to establish the continuity required for a "pattern" of racketeering activity. The scope of the alleged scheme was too narrow and discrete to establish closed-ended or open-ended continuity. "Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity." *Medinol Ltd. v. Boston Scientific Corp*., 346 F. Supp. 2d 575, 616 (S.D.N.Y. 2004) (Hellerstein, J.) (quotation marks and citation omitted). *See also Patrizzi v. Bourne in Time, Inc*., 11 Civ. 2386, 2012 WL 4833344, at *5 (S.D.N.Y. Oct. 11, 2012) (Engelmayer, J.) (collecting cases). Plaintiffs' allegations relate to a small number of parties (three) engaged in activities with a narrow purpose (three alleged bribes for contracts and two isolated telephone calls) and essentially a single claimed victim (Reich/ORA). Cmplt. ¶ ¶ 16-21, 51-53, 61-62, 72-74, 104, 115, 116. Because the alleged improper conduct "involves such a limited number of perpetrators, small number of victims, and limited goal, it cannot support a claim of open-ended or closed-ended continuity." *D.R.S. Trading Co. v. Fisher*, 01 Civ. 8028, 2002 WL 1482764 (S.D.N.Y. July 10, 2002) (Pauley, J).

[11] For the purposes of this analysis, it is irrelevant that the Travel Act and FCPA apply to extraterritorial conduct. *See Norex*, 631 F.3d at 33 ("*Morrison* similarly forecloses [plaintiff]'s argument that because a number of RICO's predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach. . . ."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 731 n.21 (S.D.N.Y. 2013) (Buchwald, J.) (same).

[12] Plaintiffs do not help their cause with their allegation that the enterprise includes Derwick Associates USA, LLC -- a defunct limited liability company that did not exist until *after* the alleged Travel Act/FCPA violations occurred, and was dissolved *before* the occurrence of the alleged wire fraud. *See*, *supra* note 3.

companies," Cmplt. ¶ 4, their factual allegations concerning the actual business activities of Derwick Associates belie any conclusion that the enterprise is domestic.

Judge Stanton recently dismissed a closely analogous RICO claim in *Petroleos Mexicanos v. SK Engineering & Construction Co. Ltd.*, 12 Civ. 9070, 2013 WL 3936191 (S.D.N.Y. July 30, 2013). There, the RICO claims concerned a bribery scheme aimed at securing oil refinery contracts in Mexico. Judge Stanton concluded the claims were extraterritorial: "they allege a foreign conspiracy against a foreign victim conducted by foreign defendants participating in foreign enterprises." *Id*. at *3. Judge Stanton reached this result notwithstanding the allegations of domestic wire fraud concerning United States financing entities, finding the allegations "fail to shift the weight of the fraudulent scheme away from Mexico." *Id*.

The Second Circuit has recognized that "simply alleging that *some* domestic conduct occurred cannot support a claim of domestic application." *Norex*, 631 F.3d at 33 (emphasis added) (affirming dismissal of RICO claim under extraterritoriality doctrine notwithstanding allegations of mail and wire fraud, money laundering, Hobbs Act violations, Travel Act violations and bribery in the United States). The ruling in *Norex* applies to RICO the Supreme Court's teaching in *Morrison v. National Australia Bank*: "[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." 130 S. Ct. 2869, 2884 (2010) (emphasis in original). Here, plaintiffs accuse defendants of wire fraud/defamation aimed at preserving defendants' "ability to continue securing energy-sector contracts through improper means." Cmplt. ¶ 139. The "thrust of the pattern of racketeering activity" they allege was

directed at energy sector contracts in Venezuela. *Republic of Iraq v. ABB AG*, 920 F. Supp. 2d 517, 546 (S.D.N.Y. 2013) (Stein, J.).[13]

This case does not require the Court to reach a conclusion on the open question of whether the focus of the extraterritoriality analysis should be on the alleged enterprise or the alleged pattern of racketeering. *See Cedeno v. Castillo*, 457 F. App'x 35, 37 (2d Cir. 2012). Plaintiffs' RICO claims are extraterritorial under either analysis. "When foreign actors were the primary operators, victims, and structure of a RICO claim, courts in this Circuit have properly concluded that the claims were extraterritorial." *Republic of Iraq*, 920 F. Supp. at 546.

### D. Plaintiffs' RICO Conspiracy Claim Should Be Dismissed

Because plaintiffs have not adequately alleged a substantive RICO violation, their conspiracy claim under 18 U.S.C. § 1962(d) must also be dismissed. *First Capital Asset Mgmt*, 385 F.3d 159, 164 (2d Cir. 2004).

## <u>Point II</u>

## The Court Lacks Personal Jurisdiction Over Defendants Betancourt and Trebbau for Plaintiffs' State Law Claims

Plaintiffs have failed to plead a valid civil RICO claim, and therefore they cannot rely on RICO's nationwide jurisdiction provision as a basis for asserting personal jurisdiction.[14] "[A] plaintiff cannot insert a meritless RICO claim in a complaint as a means to obtain personal

[13] Nor is the foreign character of the alleged enterprise altered by plaintiffs' allegation that certain of the proceeds of the alleged bribery were deposited in a New York bank. *See Tymoshenko v. Firtash*, 11 Civ. 2794, 2013 WL 1234821, at *12-13 (S.D.N.Y. Mar. 26, 2013) (Wood, J.) (dismissing RICO claim when alleged money laundering by U.S. defendants to shield the funds from Ukrainian courts was "incidental" to the primary scheme to "bribe Ukrainian officials" and "engage in politically motivated trials"); *Cedeno v. Intech Grp.,Inc.*, 733 F. Supp. 2d 471, 473 (S.D.N.Y. 2010) (Rakoff, J.) (plaintiffs cannot "sidestep *Morrison* by arguing that their complaint alleges predicate acts of money laundering that involved transfers into and out of this District by U.S. banks."), *aff'd sub nom*, *Cedeno v. Castillo*, 457 F. App'x 35 (2d Cir. 2012).

[14] Because plaintiffs' RICO claims fail as a matter of law, they also cannot give rise to pendant personal jurisdiction for the purposes of plaintiffs' state law claims. *See* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2004) ("Of course, if the only jurisdictionally sufficient claim is dropped or dismissed, particularly if that occurs early in the litigation, the pendent claim should be dismissed as well.").

jurisdiction over a non-domiciliary defendant." *Thomas v. JP Morgan Chase, N.A.*, 11 Civ. 3656, 2012 WL 2872164, at *5 n.6 (E.D.N.Y. July 11, 2012), *aff'd sub nom.*, *Thomas v. Barrett, Daffin, Frappier, Turner & Engel LLP*, 2013 WL 5226415 (2d Cir. Sept. 18, 2013).

Without RICO claims, plaintiffs' only basis for federal jurisdiction is diversity, Cmplt. ¶ 13, and a federal court sitting in diversity must determine personal jurisdiction according to the forum state's laws. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002) (citing Fed. R. Civ. P. 4(k)(1)(A)). Sections 301 and 302 of the New York Civil Practice Law and Rules ("CPLR") establish the bases for general and specific personal jurisdiction in New York. The complaint satisfies neither.[15]

Under CPLR 301,[16] New York's general jurisdiction provision, New York will exercise personal jurisdiction over a defendant based on "the traditional bases for general personal jurisdiction, such as physical presence, consent, domicile, or business activity." *Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, 05 Civ. 9994, 2007 WL 747807, at *2 (S.D.N.Y. Mar. 9, 2007) (Wood, J.). Plaintiffs have alleged none of these bases.

Although plaintiffs allege that defendants Betancourt and Trebbau "reside[] primarily *in the United States*," Cmplt. ¶¶ 19-20 (emphasis added), they do not -- and cannot -- claim that either Betancourt or Trebbau is domiciled in New York.[17] Particularly in light of the allegations that defendants Betancourt and Trebbau own property in Florida, Cmplt. ¶¶ 19, 20, a general claim of United States residence does not provide a basis to find New York domicile. Nor does

---

[15] Plaintiffs have failed to establish even a *prima facie* showing of personal jurisdiction, and therefore the Court should dismiss the state law claims based on the facial inadequacies of the complaint. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013); *Richtone Design Grp., LLC v. Live Art, Inc.*, 12 Civ. 7652, 2013 WL 5904975 (S.D.N.Y. Nov. 4, 2013) (Keenan, J.).

[16] Enacted in 1962, § 301 codified New York common law on general jurisdiction: "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." CPLR 301.

[17] The complaint alleges that both defendants Betancourt and Trebbau own property in Florida. Cmplt. ¶¶ 19, 20.

the additional allegation that defendant Betancourt owns a home in New York. *See Antone v. Gen. Motors Corp., Buick Motor Div.*, 64 N.Y.2d 20, 28 (N.Y. 1984) ("New York has long recognized that 'residence' and 'domicile' are not interchangeable. . . . [W]hile a person can have but one domicile he can have more than one residence."). A residence is not enough to support general jurisdiction. *Deer Consumer Prods., Inc. v. Little*, 938 N.Y.S.2d 767, 774-75 (N.Y. Sup. Ct. 2012).

Further, the conclusory allegation that Betancourt and Trebbau regularly conducted business from New York, Cmplt. ¶¶ 19, 20, does not give rise to general jurisdiction. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (legal conclusions that are couched as factual allegations do not establish a *prima facie* case for personal jurisdiction). To the extent that plaintiffs allege Betancourt or Trebbau conducted business in New York as corporate officers of Derwick Associates, those allegations do not support general jurisdiction over Betancourt or Trebbau personally. *Big Apple Pyrotechnics*, 2007 WL 747807, at *4 (quoting *Brinkmann v. Adrian Carriers, Inc.*, 815 N.Y.S.2d 196, 199 (2d Dep't 2006)) ("An individual cannot be subject to jurisdiction under CPLR 301 unless he is doing business in New York as an individual rather than on behalf of a corporation.").

Plaintiffs are incorrect in their suggestion that defendants Betancourt's and Trebbau's commencement of an unrelated lawsuit in New York State Supreme Court might form a basis for plaintiffs, who were not parties to the unrelated state court action, to assert personal jurisdiction here.[18] *See Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, 11 Civ. 420, 2012 WL 204102, at *4 (S.D.N.Y. Jan. 24, 2012) (Holwell, J.); *Adirondack Transit Lines, Inc. v. Lapaglia*, 128 A.D.2d 228, 230, 515 N.Y.S.2d 668, 670 (3d Dep't 1987). *See also Merlino v.*

[18] Plaintiffs referred to this action, *Derwick Associates Corp., et al. v. John Does 1-10*, Index No. 653345/2012 (Sup. Ct, New York Co.), in their October 18, 2013 letter to the Court. Dkt. # 17, n.6.

*Harrah's Entm't, Inc.*, 05 Civ. 6660, 2006 WL 401847, at *3 (E.D. Pa. Feb. 17, 2006) (non-domiciliary defendant, who previously had been a plaintiff in Pennsylvania at least nineteen times, was not subject to personal jurisdiction in Pennsylvania for unrelated lawsuit).

Nor can plaintiffs obtain personal jurisdiction over defendants by reference to New York's long-arm statute, CPLR 302. That statute specifically excepts defamation-based tort claims:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent: . . .
>
> **2.** commits a tortious act within the state, ***except as to a cause of action for defamation of character arising from the act***; or
>
> **3.** commits a tortious act without the state causing injury to person or property within the state, ***except as to a cause of action for defamation of character arising from the act***, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

CPLR 302(a) (emphasis added).

Plaintiffs' tort claims fall squarely within CPLR 302(a)'s exceptions for defamation. *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996) (finding no jurisdiction under CPLR 302(a)(2) and (3) over claims of injurious falsehood and tortious interference with prospective economic advantage, and holding that "[p]laintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation."). *See also Symmetra Pty Ltd. v. Human Facets, LLC*, 12 Civ. 8857, 2013 WL 2896876, at *5 (S.D.N.Y. June 13, 2013) (Scheindlin, J.) ("A plaintiff may not escape the special rules applicable to allegations of defamation through artful pleading: when a claim, however denominated, sounds in defamation, the CPLR's defamation rules apply.").

Further, even if the tort claims did not fall within CPLR 302(a)'s defamation exceptions, there simply is not enough connection between the allegations and New York to give rise to jurisdiction under CPLR 302 or to support an exercise of jurisdiction under the Constitution. The only alleged connection between the tort claims and New York is the speculative allegation that Betancourt "is believed to" have been in New York when he placed one call to Cedeño. Cmplt. ¶ 115. The other call was allegedly placed by non-party Convit-Guruceaga, from an unspecified location, to Urbano, at an unspecified location. Cmplt. ¶ 104. The statements allegedly caused injury to plaintiffs who are domiciled and organized in Virginia, with a principal place of business in Washington, D.C. Cmplt. ¶ 17. A single phone call placed from New York does not provide the basis for long-arm jurisdiction under New York law or satisfy a Constitutional minimum contacts analysis. *Heinfling v. Colapinto*, 946 F. Supp. 260, 264 n. 2 (S.D.N.Y. 1996) (Scheindlin, J.); *see also Fiedler v. First City Nat. Bank of Houston*, 807 F.2d 315, 317 (2d Cir. 1986).

**CERTIFICATION**

Undersigned counsel certifies that they have complied with the provisions of Section 4.B of the Court's Individual Practices in Civil Cases.

**CONCLUSION**

Based on the foregoing, the complaint should be dismissed.

Dated: New York, New York
December 23, 2013

LANKLER, SIFFERT & WOHL LLP

By:_____/s/ Frank H. Wohl__________

Frank H. Wohl (fwohl@lswlaw.com)
Julia C. Green (jgreen@lswlaw.com)
500 Fifth Avenue, 34th Floor
New York, New York 10110
(212) 921-8399

*Attorneys for Defendant Leopoldo Alejandro Betancourt Lopez*

TEW CARDENAS LLP

By:______/s/ Joseph A. DeMaria______

Joseph A. DeMaria (jad@tewlaw.com)
Bryan T. West (btw@tewlaw.com)
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
(305) 536-1112

*Attorneys for Defendant Pedro Jose Trebbau Lopez*