UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE HONORABLE OTTO J. REICH and
OTTO REICH ASSOCIATES, LLC,

                Plaintiffs,

    vs.

LEOPOLDO ALEJANDRO BETANCOURT
LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and
FRANCISCO D'AGOSTINO CASADO,

            Defendants.

Civil Action No.: 13 CV 5307 (PJO)

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF
DEFENDANTS BETANCOURT LOPEZ AND TREBBAU LOPEZ**

LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue, 34th Floor
New York, N.Y. 10110
(212) 921-8399
*Attorneys for Defendant*
*Alejandro Betancourt Lopez*

TEW CARDENAS LLP
1441 Brickell Avenue, 15th floor
Miami, Florida 33131
(305) 536-1112
*Attorneys for Defendant*
*Pedro Jose Trebbau Lopez*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

I.     The Parties .................................................................................... 2

II.    Plaintiffs' RICO Allegations.................................................................. 3

     A.     Enterprise ............................................................................. 3

     B.     Racketeering Activity ............................................................. 4

         1.     Alleged Violations of the Travel Act and FCPA ...................... 4

         2.     Alleged Wire Fraud.............................................................. 5

     C.     Injury .................................................................................. 6

III.    Plaintiffs' State Law Claims ................................................................ 6

IV.    Procedural History ........................................................................... 7

ARGUMENT .................................................................................................. 7

         POINT I

         The RICO Claim Should Be Dismissed With Prejudice .......................... 8

     A.     Plaintiffs do not have RICO standing because they do not allege that they
            suffered any injury caused by a pattern of racketeering activity ......................... 8

         1.     Plaintiffs' attempts to plead FCPA or Travel Act violations do not
              confer RICO standing ................................................................. 8

         2.     Plaintiffs' defective wire fraud allegations do not confer RICO
              standing ....................................................................................... 9

     B.     Plaintiffs fail to plead a "pattern of racketeering activity" .................. 11

     C.     Plaintiffs' RICO claims must be dismissed because they are extraterritorial....... 13

     D.     Plaintiffs' RICO conspiracy claim should be dismissed....................... 16

         POINT II

         The Court Lacks Personal Jurisdiction Over Defendants
         Betancourt and Trebbau ....................................................................... 16

A.    There is no general jurisdiction over Betancourt or Trebbau in New York ......... 17

    1.    Plaintiffs do not allege domicile, consent, or service of process in New York ................................................................................................. 17

    2.    The contacts that plaintiffs allege do not form a basis for general jurisdiction in New York ...................................................................... 17

B.    There is no specific jurisdiction over Betancourt or Trebbau in New York ......... 22

    1.    There is no jurisdiction under CPLR 302(a)(2) or (3) ............................ 23

    2.    There is no jurisdiction under CPLR 302(a)(1) ...................................... 23

C.    It is plaintiffs who bear the burden of establishing a *prima facie* case of personal jurisdiction ................................................................................................ 24

CONCLUSION AND CERTIFICATION ................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abrahams v. Young & Rubicam Inc.*,
    79 F.3d 234 (2d Cir. 1996) .................................................................................9

*Achtman v. Kirby, McInerney & Squire, LLP*,
    464 F.3d 328 (2d Cir. 2006) ...............................................................................7

*Antone v. Gen. Motors Corp.*,
    473 N.E.2d 742 (N.Y. 1984) .............................................................................18

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................8

*Apparel Art Int'l, Inc. v. Jacobson*,
    967 F.2d 720 (1st Cir. 1992) .............................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002) .............................................................................16

*Barron Partners v. Lab123, Inc.*,
    07 Civ. 11135, 2008 WL 2902187 (S.D.N.Y. July 25, 2008) (Rakoff, J.) ............................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................7, 24

*Bernstein v. Misk*,
    948 F. Supp. 228 (E.D.N.Y. 1997) ...................................................................12

*Biro v. Condé Nast*,
    11 Civ. 4442, 2013 WL 3948394 (S.D.N.Y. Aug. 1, 2013) (Oetken, J.) ..................................3

*Boritzer v. Calloway*,
    10 Civ. 6264, 2013 WL 311013 (S.D.N.Y. Jan. 24, 2013) (Oetken, J.) ...........................10, 13

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008) ...............................................................................8

*Brinkmann v. Adrian Carriers, Inc.*,
    815 N.Y.S.2d 196 (App. Div. 2006) .................................................................22

iii

*Burnham v. Superior Court of California*,
   495 U.S. 604 (1990)..................................................................................................17

*Bush v. Stern Bros. & Co.*,
   524 F. Supp. 12 (S.D.N.Y. 1981) (Motley, J.).........................................................19

*Cantor Fitzgerald, L.P. v. Peaslee*,
   88 F.3d 152 (2d Cir. 1996)........................................................................................23

*Cedeño v. Castillo*,
   457 F. App'x 35 (2d Cir. 2012) .................................................................................15

*Contes v. City of New York*,
   99 Civ. 1597, 1999 WL 500140 (S.D.N.Y. July 14, 1999) (Scheindlin, J.)............10

*Creed Taylor, Inc. v. CBS, Inc.*,
   718 F. Supp. 1171 (S.D.N.Y. 1989) (Carter, J.) ......................................................10

*Crucible Ventures, Inc. v. Futuresat Indus., Inc.*,
   88 Civ. 4251, 1990 WL 16140 (S.D.N.Y. Feb. 15, 1990) (Lowe, J.).......................19

*Curtis & Assocs. v. Law Offices of David M. Bushman, Esq.*,
   758 F. Supp. 2d 153 (E.D.N.Y. 2010) ......................................................................10

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014).................................................................................17, 20, 21, 22

*Daniel v. Am. Bd. of Emergency Med.*,
   988 F. Supp. 127 (W.D.N.Y. 1997) ..........................................................................19

*Deer Consumer Prods., Inc. v. Little*,
   938 N.Y.S.2d 767 (Sup. Ct. 2012)........................................................................18, 23

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013).........................................................................................16

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
   223 F.3d 12 (1st Cir. 2000)..........................................................................................7

*Feinstein v. Resolution Trust Corp.*,
   942 F.2d 34 (1st Cir. 1991) ........................................................................................12

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
   218 F. Supp. 2d 369 (S.D.N.Y. 2002) (Kaplan, J.), *aff'd sub nom., First Capital Asset
   Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ..........................20, 21

*First Capital Asset Mgmt, Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)........................................................................................16

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
 04 Civ. 5238, 2005 WL 1500896 (S.D.N.Y. June 23, 2005) (Lynch, J.) ...............................18

*Gatt Commc'ns, Inc. v. PMC Assocs.*,
 10 Civ. 8, 2011 WL 1044898 (S.D.N.Y. Mar. 10, 2011) (Batts, J.)..........................................8

*GICC Capital Corp. v. Tech. Fin. Grp.*,
 67 F.3d 463 (2d Cir. 1995)......................................................................................................11

*Gilman v. Marsh & McLennan Cos.*,
 868 F. Supp. 2d 118 (S.D.N.Y. 2012) (Oetken, J.)....................................................................2

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 131 S. Ct. 2846 (2011).............................................................................................................17

*Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*,
 11 Civ. 420, 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) (Holwell, J.)...................................18

*Gross v. Waywell*,
 628 F. Supp. 2d 475 (S.D.N.Y. 2009) (Marrero, J.) .................................................................7

*Hecht v. Commerce Clearing House, Inc.*,
 897 F.2d 21 (2d Cir. 1990)........................................................................................................8

*Hemi Grp. v. City of New York*,
 559 U.S. 1 (2010).................................................................................................................8, 10

*In re Roman Catholic Diocese of Albany, New York, Inc.*,
 13 Civ. 4736, 2014 WL 485948 (2d Cir. Feb. 7, 2014)..........................................................20

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
 131 F. Supp. 2d 544 (S.D.N.Y. 2001) (Parker, J.)..................................................................19

*J.S. Serv. Ctr. Corp. v. Gen. Elec. Technical Servs. Co.*,
 937 F. Supp. 216 (S.D.N.Y. 1996) (Conner, J.).......................................................................8

*JBCHoldings NY, LLC v. Pakter*,
 931 F. Supp. 2d 514 (S.D.N.Y. 2013) (Engelmayer, J.) ...........................................................8

*Karabu Corp. v. Gitner*,
 16 F. Supp. 2d 319 (S.D.N.Y. 1998) (Sotomayor, J.)........................................................20, 21

*Kimm v. Lee*,
 04 Civ. 5724, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) (Baer, J.), *aff'd*, 196 F.
 App'x 14 (2d Cir. 2006)..................................................................................................9, 10, 11

*Lan Sang v. Ming Hai*,
 951 F. Supp. 2d 504 (S.D.N.Y. 2013) (Oetken, J.)....................................................................2

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
918 F.2d 1039 (2d Cir. 1990).................................................................................19

*Laufer v. Ostrow*,
434 N.E.2d 692 (N.Y. 1982)...................................................................................22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................16

*Mansmann v. Smith*,
96 Civ. 5768, 1997 WL 145009 (E.D. Pa. Mar. 21, 1997)....................................10

*Mantello v. Hall*,
947 F. Supp. 92 (S.D.N.Y. 1996) (Mukasey, J.).....................................................21

*Medpay Sys., Inc. v. Medpay USA, LLC*,
06 Civ. 1054, 2007 WL 1100796 (E.D.N.Y. Mar. 29, 2007)................................20

*Mende v. Milestone Tech., Inc.*,
269 F. Supp. 2d 246 (S.D.N.Y. 2003) (Berman, J.)...............................................18

*Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico*,
621 F.3d 10 (1st Cir. 2010)......................................................................................9

*Merlino v. Harrah's Entm't, Inc.*,
05 Civ. 6660, 2006 WL 401847 (E.D. Pa. Feb. 17, 2006)....................................19

*Morrison v. National Australia Bank*,
130 S. Ct. 2869 (2010)............................................................................................14

*Mount v. Ormond*,
91 Civ. 125, 1991 WL 191228 (S.D.N.Y. Sept. 18, 1991) (Duffy, J.) .................10

*Nelson v. Mass. Gen. Hosp.*,
04 Civ. 5382, 2007 WL 2781241 (S.D.N.Y. Sept. 20, 2007) (McMahon, J.) ........20

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
631 F.3d 29 (2d Cir. 2010)................................................................................13, 14

*Patel v. Patel*,
497 F. Supp. 2d 419 (E.D.N.Y. 2007) ...................................................................17

*Petróleos Mexicanos v. SK Engineering & Construction Co.*,
12 Civ. 9070, 2013 WL 3936191 (S.D.N.Y. July 30, 2013) .................................15

*Pitrowski v. Pitrowski*,
412 N.Y.S.2d 316 (Sup. Ct. 1979) .........................................................................18

vi

*Prince v. Madison Square Garden*,
    427 F. Supp. 2d 372 (S.D.N.Y. 2006) (Sweet, J.)................................................................8

*Ray Larsen Assocs. v. Nikko Am., Inc.*,
    89 Civ. 2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) (Jones, J.)....................................12

*Republic of Iraq v. ABB AG*,
    920 F. Supp. 2d 517 (S.D.N.Y. 2013) (Stein, J.)...................................................................15

*Richtone Design Grp., LLC v. Live Art, Inc.*,
    12 Civ. 7652, 2013 WL 5904975 (S.D.N.Y. Nov. 4, 2013) (Keenan, J.)..............................24

*Rosenson v. Mordowitz*,
    11 Civ. 6145, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) (Oetken, J.) .........................7, 11

*Schlaifer Nance & Co. v. Estate of Warhol*,
    119 F.3d 91 (2d Cir. 1997)..................................................................................................11

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006)................................................................................................24

*SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*,
    963 N.E.2d 1226 (N.Y. 2012)..............................................................................................23

*Symmetra Pty Ltd. v. Human Facets, LLC*,
    12 Civ. 8857, 2013 WL 2896876 (S.D.N.Y. June 13, 2013) (Scheindlin, J.) ........................23

*Tamam v. Fransabank Sal*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010) (Keenan, J.) .............................................................17

*Thomas v. JP Morgan Chase, N.A.*,
    11 Civ. 3656, 2012 WL 2872164 (E.D.N.Y. July 11, 2012), *aff'd sub nom.*, *Thomas v. Barrett, Daffin, Frappier, Turner & Engel LLP*, 12 Civ. 3223, 2013 WL 5226415 (2d Cir. Sept. 18, 2013)..............................................................................................................16

*Tsipouras v. W&M Props., Inc.*,
    9 F. Supp. 2d 365 (S.D.N.Y. 1998) (Sprizzo, J.) ................................................................10

*United States v. Ferrara*,
    701 F. Supp. 39 (E.D.N.Y. 1988), *aff'd*, 868 F.2d 1268 (2d Cir. 1988)................................10

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir. 1989)................................................................................................9

*United States v. Young & Rubicam, Inc.*,
    741 F. Supp. 334 (D. Conn. 1990).........................................................................................9

*Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*,
    12 Civ. 198, 2012 WL 6186598 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.) ...............................20

*Watkins v. Smith*,
    12 Civ. 4635, 2012 WL 5868395 (S.D.N.Y. Nov. 19, 2012) (Cote, J.) ...................................9


STATUTES

15 U.S.C. §78dd-1 ...........................................................................................................9

18 U.S.C. § 1961 .............................................................................................................9

18 U.S.C. § 1962 ......................................................................................................11, 16

18 U.S.C. § 1964 ...........................................................................................................10

N.Y. CPLR 301 ........................................................................................................17, 19

N.Y. CPLR 302 ........................................................................................................22, 23


OTHER AUTHORITIES

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed.
    2004) .......................................................................................................................8

David B. Smith & Terrance G. Reed, Civil RICO §3.07[3] (2013 ed.) .......................................14

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 7

Defendants Leopoldo Alejandro Betancourt Lopez ("Betancourt") and Pedro Jose Trebbau Lopez ("Trebbau") respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(2) and  Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the first amended complaint filed in the above-captioned action.[1]

## PRELIMINARY STATEMENT

Even in the form of their amended complaint, plaintiffs' action remains a quintessential abuse of RICO.  Plaintiffs begin by mischaracterizing a garden-variety defamation claim as "wire fraud."  They then implausibly attempt to link this illusory "wire fraud" claim to a separate and unrelated scheme, allegedly involving bribery of Venezuelan officials, which had no judicially cognizable impact on plaintiffs.

Most obviously, plaintiffs lack standing to bring their RICO claim because they have not alleged -- and cannot allege -- that they suffered any damage caused by a pattern of racketeering activity.  The only activity alleged by plaintiffs that bears some resemblance to racketeering is the Venezuelan bribery scheme, as to which plaintiffs claim to be nothing more than disapproving observers.  They offer no allegation of any damages to themselves resulting from the alleged bribery.

Plaintiffs' only allegation of injury appears in their defamation claim, which they mischaracterize as "wire fraud."  Prevailing RICO jurisprudence is clear that defamation is neither wire fraud nor racketeering activity.

Further, plaintiffs' amended complaint fails to allege the required "pattern" of racketeering activity because their purported predicate acts -- the alleged bribery scheme and the defamation -- are wholly unrelated to each other.  In addition, plaintiffs' alleged bribery scheme,

---

[1] Defendant Francisco D'Agostino Casado joins this Memorandum of Law.

focusing entirely on Venezuela, founders on the Second Circuit's unequivocal instruction that RICO does not apply extraterritorially.

Finally, without the assistance of RICO's jurisdiction provisions, the Court lacks personal jurisdiction over defendants Betancourt and Trebbau.  For this reason, the remaining state law claims against them must also be dismissed.

## STATEMENT OF FACTS[2]

### I.      The Parties

Plaintiff Otto Reich, a former U.S. Ambassador to Venezuela, is a political consultant and lobbyist.  Amd. Compl. ¶¶ 1, 2, 45.  His company, plaintiff Otto Reich Associates, LLC ("ORA"), markets itself as providing assistance to organizations' and individuals' public relations and business efforts.   Amd. Compl. ¶¶ 2, 45.

Defendants Betancourt and Trebbau are citizens of Venezuela.  Plaintiffs allege that Betancourt and Trebbau "reside[] primarily in the United States," although they do not allege that either Betancourt or Trebbau is domiciled in New York.  Amd. Compl. ¶¶ 24, 26.  Plaintiffs also allege that Betancourt owns an apartment in New York and that both Betancourt and Trebbau own property in Florida.  Amd. Compl. ¶¶ 25, 27, 189, 190.  Plaintiffs allege that Betancourt and Trebbau are founders and President and Vice-President, respectively, of Derwick Associates Corporation ("Derwick"), a Barbados corporation that provides engineering, procurement, and construction services to power plant companies in Venezuela.  Amd. Compl. ¶ 51.  *See* Declaration of Frank H. Wohl, dated February 28, 2014 ("Wohl Decl."), Ex. A.[3]

---

[2] The facts in this section are based on the allegations in the amended complaint and are assumed to be true solely for purposes of this motion to dismiss.  *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 514 (S.D.N.Y. 2013) (Oetken, J.).  In fact, many of the salient alleged facts are demonstrably false.

[3] On a motion to dismiss, the court may review "any documents attached to the complaint or incorporated into it by reference, any documents that are 'integral' to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice."  *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp.

Plaintiffs allege that Derwick Associates obtains certain goods and services in the United States, including power plant equipment and public relations, legal, and banking services.  Amd. Compl. ¶¶ 51, 179, 184, 194, 196, 200, 203.  Plaintiffs do not allege that Derwick Associates has offices, owns any real estate, or has any employees in the United States.

Plaintiffs claim that Derwick Associates' defunct United States subsidiary, Derwick Associates USA LLC ("Derwick USA"), participated in the "illicit scheme" they allege.  Amd. Compl. ¶¶ 3, 232.  Public records, however, establish that Derwick USA did not exist at the time plaintiffs allege that acts of racketeering occurred:  Derwick USA was incorporated on December 2, 2010, after plaintiffs' alleged incidents of bribery.  Amd Compl. ¶¶ 72, 80, 92, 93. Derwick USA was dissolved on September 28, 2012, before plaintiffs' claimed incidents of defamation/"wire fraud" allegedly occurred.  Amd. Compl. ¶¶ 148, 159, 161.  *See* Wohl Decl., Exs. B, C.

Plaintiffs allege that defendants "direct, control and coordinate virtually all aspects of global strategy, as well as the day-to-day activities of Derwick Associates, from their offices and homes in New York and Florida."  Amd. Compl. ¶ 48.

## II.    Plaintiffs' RICO Allegations

### A.    Enterprise

Plaintiffs allege six alternative RICO enterprises:  1) Derwick Associates; 2) an association-in-fact consisting of Betancourt, Trebbau, defendant Francisco D'Agostino Casado ("D'Agostino"), and non-party Francisco Convit-Guruceaga; 3) an association-in-fact comprised

---

2d 118, 127 (S.D.N.Y. 2012) (Oetken, J.).  Derwick Associates Corporation's Articles of Organization and Derwick Associates USA, LLC's filings with the State of Florida are both integral to the complaint and publicly filed documents, and thus properly noticed by the Court.  *See Biro v. Condé Nast*, 11 Civ. 4442, 2013 WL 3948394, at *6 (S.D.N.Y. Aug. 1, 2013) (Oetken, J.) (A "court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" (internal quotation marks omitted)).

of Betancourt and Trebbau; 4) Betancourt; 5) Trebbau; and 6) D'Agostino.  Amd. Compl. ¶¶

232, 236, 240, 244, 246, 248.

    **B.**    <u>**Racketeering Activity**</u>

    According to plaintiffs, defendants' "racketeering activity" consists of:

> the solicitation and payment from the United States of Venezuelan officials for purposes of securing energy-sector contracts, transmission of the ill-gotten gains via wire to and from bank accounts in the United States, and the silencing, via wire fraud and other methods, of those (like Ambassador Reich) who were critical of or otherwise posed an actual or perceived threat to Derwick Associates' illicit methods and who could exposes their illegal scheme.

Amd. Compl. ¶ 234.  Plaintiffs assert that this alleged conduct violates the Travel Act, the

Foreign Corrupt Practices Act ("FCPA"), and the federal wire fraud statute.  Amd. Compl. ¶¶

250-58.

        **1.**    **Alleged Violations of the Travel Act and FCPA**

    Plaintiffs state that they cannot allege the "granular" or "exact details" of the Travel Act

and FCPA violations they allege.  Amd. Compl. ¶¶  63, 70, 79, 90.  Citing a blog posting and

information and belief, the complaint alleges that the Federal Bureau of Investigation, the

Department of Homeland Security, the Treasury Department, and the Securities and Exchange

Commission have conducted inquiries into the activities of Derwick Associates.  Amd. Compl. ¶

115.  The amended complaint makes no allegation that these or any other official investigations

have resulted in charges of wrongdoing by Derwick Associates.

    The purported offering and payment of bribes are pled "on information and belief," or

with the qualifier, "it is believed."  Amd. Compl. ¶¶ 69, 70, 71, 79, 80, 83-86, 89, 90, 91, 93, 95.

Plaintiffs allege that "*it is believed*" that defendants were involved in three acts in Venezuela

over a 13-month period in 2009 and 2010:

        i.    An alleged payment to Rafael Ramirez ("Ramirez"), President of Petroleos de Venezuela, S.A. ("PDVSA"), in exchange for contracts for Derwick Associates to

4

construct four power plants for PDVSA in Venezuela.  Amd. Compl. ¶¶ 65, 70-72.

ii.   An alleged payment to Javier Andres Alvarado Pardi ("Pardi"), the son of a former Venezuelan government official -- but who is not himself alleged to be a current or former government official -- in exchange for his assistance securing contracts for Derwick Associates to construct six power plants for Corporación Eléctrica de Venezuela ("CORPOELEC") in Venezuela.  Amd. Compl. ¶¶ 75, 79-81.

iii.   An alleged payment to Rodolfo Sanz ("Sanz"), the Venezuelan Minister of Basic Industries and Mining, in exchange for contracts for Derwick Associates to construct two power plants for Corporación Venezolana de Guayana  ("CVG") in Venezuela.  Amd. Compl. ¶¶ 87, 90-93.

The complaint admits that plaintiffs have no information concerning "the amount of the kickback[s] and the dates [they were] offered and paid."  Amd. Compl. ¶¶ 70, 79, 90.  The complaint also contains no allegations concerning when, where, or by whom the payments were made.

### 2.   Alleged Wire Fraud

The claimed wire fraud is premised on the allegation that, in November and December 2012, defendants caused statements to be made to the effect that plaintiffs had been retained by Derwick Associates.  Amd. Compl. ¶¶ 147-48, 159-161.  According to the amended complaint, the statements were allegedly made to one of plaintiffs' current clients and to one of plaintiffs' prospective clients.  Amd. Compl. ¶¶ 136, 157.  Plaintiffs allege that the stated association with Derwick was so derogatory that those who heard it discontinued their relationships with plaintiffs.  Amd. Compl. ¶¶ 150, 162.

One of the individuals to whom a false statement was allegedly made was connected to Banco Venezolano, a Venezuelan bank, and plaintiffs allege that defendants caused the statement to be made to interfere with plaintiffs' prospective relationship with Banco Venezolano.  According to plaintiffs, the bank was considering engaging plaintiffs as a consultant concerning a Florida defamation action that Derwick had filed against the bank.  Amd. Compl. ¶¶ 136, 138.

Although the other individual to whom false statements were allegedly made was not affiliated with the bank, plaintiffs allege the statements were made to that individual as part of defendants' "campaign to undermine" plaintiffs' relationship with the bank.  Amd. Compl. ¶¶ 157-58. According to plaintiffs,

> Ambassador Reich's agreement to formally assist Banco Venezolano in its defense would have sent a clear message throughout the Venezuelan émigré community in the United States and to those in Venezuela who were closely following the Defamation[] Suits that the truth would come out.

Amd. Compl. ¶ 140.  Plaintiffs do not explain why the bank's engagement of plaintiffs would have revealed facts relevant to the Derwick defamation action or interfered with the alleged bribery scheme, which is not alleged to have involved plaintiffs or the bank.

### C.  Injury

The damage plaintiffs claim they suffered consists of the loss of the future business relationship with Banco Venezolano and the loss of an existing relationship with one client. Amd. Compl. ¶ 273.  Plaintiffs allege that both of these clients would have paid plaintiffs a monthly fee of $20,000, and calculate the damages from the lost relationships as "not less than $2,000,000 plus treble damages."  Amd. Compl. ¶¶ 139, 155, 273.  Plaintiffs allege no damages to themselves resulting from the alleged Travel Act/FCPA violations.

### III.  Plaintiffs' State Law Claims

Plaintiffs claim that the alleged statement that Otto Reich worked for Derwick Associates also constitutes tortious interference with prospective economic advantage, defamation, and civil conspiracy.  Amd. Compl. ¶¶ 280-324.  Although plaintiffs allege that Derwick Associates conducted significant business with General Electric, Pratt & Whitney, and ProEnergy Services, LLC, Amd. Compl. ¶ 51, plaintiffs also claim that mere association with Derwick Associates would "denigrat[e] ORA's reputation and the integrity of the business."  Amd. Compl. ¶ 285.

IV.   **Procedural History**

Plaintiffs filed the original complaint in this action on July 30, 2013.  Following the exchange of letters required by the Court's Individual Practices and a pre-motion conference, defendants moved to dismiss the original complaint on December 23, and December 27, 2013. Plaintiffs filed the amended complaint on January 13, 2014.

## ARGUMENT

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While a complaint must be construed in the light most favorable to the plaintiff, the Court need not accept legal conclusions or conclusory allegations.  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).  Thus, neither "a formulaic recitation of the elements of a cause of action" nor "naked assertion[s] devoid of further factual enhancement" are sufficient to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  In RICO cases, "allegations merit particular scrutiny where" -- as here -- "the predicate acts are mail and wire fraud, and where the use of mail or wires to communicate" -- again, as is the case here -- "is not in and of itself illegal, unlike other predicate acts such as murder or extortion."  *Rosenson v. Mordowitz*, 11 Civ. 6145, 2012 WL 3631308, at *4 n.3 (S.D.N.Y. Aug. 23, 2012) (Oetken, J.).[4]

---

[4] *See also Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) ("[C]ourts, including our own, have suggested that RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."); *Gross v. Waywell*, 628 F. Supp. 2d 475, 482 (S.D.N.Y. 2009)  (Marrero, J.) ("Exercise of federal court jurisdiction in . . . cases . . . that rely on nothing more than incidental use of the mails or wires in furtherance of a simple fraudulent scheme with few victims and narrow impacts[] would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions.").

## POINT I

### The RICO Claim Should Be Dismissed With Prejudice

**A.      Plaintiffs do not have RICO standing because they do not allege that they suffered any injury caused by a pattern of racketeering activity**

To demonstrate RICO standing, a plaintiff must plead facts showing that it suffered injury proximately caused by a pattern of racketeering activity.  *Hemi Grp. v. City of New York*, 559 U.S. 1, 9 (2010); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). "[T]he central question . . . is whether the alleged [RICO] violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

#### 1.      Plaintiffs' attempts to plead FCPA or Travel Act violations do not confer RICO standing

Plaintiffs do not allege that the purported Travel Act/FCPA violations damaged them.[5] Rather, plaintiffs' allegations, accepted as true, cast them in the role of concerned observers of alleged bribery in Venezuela.

When RICO claims are premised on allegations of bribery, courts in this district reject claims brought by plaintiffs who are neither foreign governments nor competitors of the alleged malfeasor.  *See, e.g.*, *J.S. Serv. Ctr. Corp. v. Gen. Elec. Technical Servs. Co.*, 937 F. Supp. 216, 220-25 (S.D.N.Y. 1996) (Conner, J.); *see also Gatt Commc'ns, Inc. v. PMC Assocs.*, 10 Civ. 8,

---

[5] All of the bribery allegations are pled on information and belief, Amd. Compl. ¶¶ 69, 71, 78, 80, 83 - 86, 89, 91, 93, 95 -- or mere belief, Amd. Compl. ¶¶ 70, 79, 90.  Although a plaintiff may plead facts on information and belief, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), courts in this district require that "such allegations must be accompanied by a statement of the facts upon which the belief is founded." *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013) (Engelmayer, J.) (internal quotation marks omitted) (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (Sweet, J.)).  A requirement that plaintiffs provide a factual basis for their belief is particularly important in cases, such as this one, that "cast[] aspersions on the defendant's moral character."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004).  Yet, even in plaintiffs' second pleading effort, the only alleged facts that plaintiffs offer to support their "belief" that defendants offered and paid bribes are 1) that defendants secured contracts pursuant to bidding processes that were not public, 2) that defendant D'Agostino allegedly said in November 2012 that one always has to pay consulting fees to secure contracts in Venezuela, and 3) an unnamed report by an undisclosed "energy expert" that allegedly criticized the prices and quality of Derwick Associates' work.  Amd. Compl. ¶¶ 68, 77, 88, 97, 100-113.  Simply put, plaintiffs' bribery allegations rest on mere speculation.

2011 WL 1044898, at *5 (S.D.N.Y. Mar. 10, 2011) (Batts, J.) (no standing where "[n]one of Plaintiff's alleged injuries were suffered as a result of being a target of the alleged RICO scheme, which allegedly targeted government entities").  Plaintiffs have no standing to claim injuries caused by the alleged kickback scheme, because plaintiffs were "not the target of the racketeering enterprise."  *Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 238 (2d Cir. 1996) (internal quotation marks omitted).  The Second Circuit has explained that there is no proximate cause, and therefore no standing, where a plaintiff's injuries "did not flow from the harms that the predicate acts -- bribery, kickbacks, extortion, fraud -- were intended to cause and the laws against them were intended to prevent."  *Id.*  *A fortiori*, a claim devoid of <u>*any*</u> claim of injury to plaintiffs cannot support RICO standing.[6]

### 2.    Plaintiffs' defective wire fraud allegations do not confer RICO standing

The complaint's only allegations of injuries to plaintiffs relate to the claims of "wire fraud."  But plaintiffs' wire fraud allegations "are -- at best -- thinly clothed defamation claims," which "do not provide the requisite predicate for RICO violations."  *Kimm v. Lee*, 04 Civ. 5724, 2005 WL 89386, at *4-5 (S.D.N.Y. Jan. 13, 2005) (Baer, J.), *aff'd*, 196 F. App'x 14 (2d Cir. 2006); *see also Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico*, 621 F.3d 10, 15-16 (1st Cir. 2010) (because the "gravamen" of plaintiff's charge was defamation, plaintiff

---

[6] Contrary to the suggestion in the complaint, an FCPA violation is not, in and of itself, a separate RICO predicate act.  *See* 18 U.S.C. § 1961 (listing predicate acts).  To be a RICO predicate act, an alleged FCPA violation must also constitute an offense specifically enumerated under the RICO statute.  *See, e.g.*, *United States v. Young & Rubicam, Inc.*, 741 F. Supp. 334, 338-39 (D. Conn. 1990) (alleged FCPA violation could be RICO predicate act insofar as it also constituted a violation of the Travel Act).  Further, "a single violation of one [statute] is not converted into a second predicate act because [another statute] is also violated."  *Watkins v. Smith*, 12 Civ. 4635, 2012 WL 5868395, at *5 (S.D.N.Y. Nov. 19, 2012) (Cote, J.); *see also United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989) (plaintiff may not "fragment an act that plainly is unitary into multiple acts in order to invoke RICO").  The allegations of FCPA violations suffer from the additional defect that plaintiffs have failed to plead facts sufficient to demonstrate that defendants are officers, directors, or employees of a "domestic concern" or that defendants are otherwise subject to the FCPA.  *See* 15 U.S.C. §78dd-1 *et seq.*

failed to plead RICO predicate wire fraud).[7]  Any alleged injury resulting from this thinly-clothed defamation claim does not constitute an injury "by reason of" a RICO violation, and such injury does not provide RICO standing.  18 U.S.C. § 1964(c); *Hemi Grp.,* 559 U.S. at  9.

Most essentially, plaintiffs fail to plead the elements of wire fraud.  This Court has explained that for false statements to constitute wire fraud the object of the statement must be "*to obtain money or property* by means of false or fraudulent pretenses, representations, or promises or for purposes of executing a scheme to defraud."  *Boritzer v. Calloway*, 10 Civ. 6264, 2013 WL 311013, at *6 (S.D.N.Y. Jan. 24, 2013) (Oetken, J.) (emphasis added and internal quotation marks omitted).  Plaintiffs' complaint does not allege that defendants made false statements with the intent to induce anyone to part with money or property.

As Judge Baer held in dismissing the complaint in *Kimm*, reputational injury of the sort alleged by plaintiffs here does not support a claim of wire fraud.  *Kimm*, 2005 WL 89386, at *4. *See also United States v. Ferrara*, 701 F. Supp. 39, 43 (E.D.N.Y. 1988), *aff'd*, 868 F.2d 1268 (2d Cir. 1988) ("[I]f one's reputation -- standing alone -- could be construed as property, then any ordinary defamation action could be brought under the mail fraud statute -- a startling proposition.").

Federal courts consistently find allegations of predicate acts are insufficient where, as here, a party mischaracterizes a common law tort claim (such as defamation) as "wire fraud" for purposes of invoking RICO.  *See, e.g.*, *Curtis & Assocs. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 169 n.19 (E.D.N.Y. 2010); *Mansmann v. Smith*, 96 Civ. 5768, 1997

---

[7] *See also Contes v. City of New York*, 99 Civ. 1597, 1999 WL 500140, at *8 (S.D.N.Y. July 14, 1999) (Scheindlin, J.) (defamation is not a predicate act for RICO); *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998) (Sprizzo, J.) ("mere injury to character, business reputation, and/or the intentional infliction of emotional distress are not actionable under civil RICO"); *Mount v. Ormond*, 91 Civ. 125, 1991 WL 191228, at *2 (S.D.N.Y. Sept. 18, 1991) (Duffy, J.) (same);  *Creed Taylor, Inc. v. CBS, Inc.*, 718 F. Supp. 1171, 1179 n.3, 1180 (S.D.N.Y. 1989) (Carter, J.) (same).

WL 145009, at *5 (E.D. Pa. Mar. 21, 1997).  Here, plaintiffs' "wire fraud" claim is nothing more

than a common law tort claim masquerading as a criminal predicate act in "an effort to construct

a treble damage suit from what, at best, is a civil wrong."  *Kimm*, 2005 WL 89386, at *5.

**B.     Plaintiffs fail to plead a "pattern of racketeering activity"**

Even if plaintiffs had RICO standing, their RICO claims still fail because the complaint

has not established a "pattern of racketeering activity," 18 U.S.C. § 1962, which requires the

alleged predicate acts be related to one another.  *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d

463, 465 (2d Cir. 1995).  To satisfy the relatedness requirement, "[t]he racketeering acts must be

related to each other ('horizontal' relatedness), and they must be related to the enterprise

('vertical' relatedness)."  *Rosenson*, 2012 WL 3631308, at *5 (internal quotation marks omitted).

As the Court of Appeals has explained, "[p]redicate acts are 'related' for RICO purposes when

they have the same or similar purposes, results, participants, victims, or methods of commission,

or otherwise are interrelated by distinguishing characteristics and are not isolated events."

*Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (some internal

quotation marks omitted).

Plaintiffs' claims of bribery and "wire fraud" are not related to each other.  According to

the complaint, the alleged FCPA/Travel Act violations consisted of a scheme to bribe

Venezuelan officials for the purpose of "secur[ing] energy-industry contracts in Venezuela."

Amd. Compl. ¶ 3.  Plaintiffs do not allege that the claimed "wire fraud" was part of the alleged

bribery scheme.  Rather, the alleged "wire fraud" consisted of three phone calls during which

Betancourt and two non-parties allegedly said that Otto Reich was working for Derwick Associates to "discredit Ambassador Reich."  Amd. Compl. ¶¶ 12, 13, 148, 159, 256.[8]

Such unrelated acts do not constitute a pattern of racketeering.  *See Ray Larsen Assocs. v. Nikko Am., Inc.*, 89 Civ. 2809, 1996 WL 442799, at *6-7 (S.D.N.Y. Aug. 6, 1996) (Jones, J.) (fraud, for which the only victim was plaintiff, was not related to fraudulent transfers of funds, for which the victim was the Internal Revenue Service); *Bernstein v. Misk*, 948 F. Supp. 228, 236 (E.D.N.Y. 1997) ("Because the bank frauds bear almost no relation to the predicate acts which allegedly injured the plaintiffs, they cannot be properly considered as part of the 'pattern' of racketeering activity.").

Here, the geographical and temporal differences between the alleged bribery and wire fraud schemes demonstrate that they are unrelated.  The alleged schemes occurred at least two years -- and a continent -- apart.  All of the alleged acts of bribery occurred in Venezuela in 2009 and 2010.  Amd. Compl. ¶¶ 71, 79, 91.  The defamation allegedly occurred in November and December 2012 in the United States.  Amd. Compl. ¶¶ 147, 159.  As then-Judge Breyer explained, the alleged schemes are simply "too *un*related -- *too* separate, *too* distinct," to form the basis of a racketeering pattern.  *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 724 (1st Cir. 1992); *see also Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 44-45 (1st Cir. 1991) (rejecting "the bald assertion that . . . two episodes, nearly two years apart in time, hundreds of miles apart in space, and involving two largely distinct groups of participants, were somehow pieces of a unitary scheme").

---

[8] The amended complaint attempts to claim that the alleged bribery and the alleged defamation/wire fraud were part of a unitary scheme.  Amd. Compl. ¶ 263.  This is presumably because, if plaintiffs were to allege that they formed two separate schemes, both would fail.  In addition to the standing problems described above, the defamation/wire fraud allegations would fail because they could not meet the pattern requirement:  plaintiffs have not alleged the requisite continuity for any alleged scheme, which involved a handful of participants and at most three phone calls over a two month period.

In what can only be described as a "Hail Mary pass," plaintiffs claim that the alleged wire fraud/defamation is related to the alleged bribery because "[t]he union" of Ambassador Reich and the bank "would have been fatal to [Defendants'] ability to perpetuate their unlawful [bribery] scheme." Amd. Compl. ¶ 257. Plaintiffs rely on the bald assertion that a "business alliance between Banco Venezolano and Ambassador Reich . . . *might* reveal the unholy alliance between Defendants and certain Venezuelan government officials." Amd. Compl. ¶ 12 (emphasis added). Plaintiffs fail, however, to explain why either Banco Venezolano or Reich would have had information that would have been relevant to the bribery allegations or why the combination of the bank and Reich would have led to the disclosure of such information. It is also simply implausible to suggest that any expert witness in litigation, even one as highly-regarded as Reich claims to be, could somehow create some sort of "alliance" that would result in anything other than the filing of an expert report in the case in which he was hired. Without any basis for the allegations, the complaint does not "give rise to a plausible narrative" of relatedness, an additional reason why the RICO claim must be dismissed. *Boritzer*, 2013 WL 311013, at *4.[9]

## C. Plaintiffs' RICO claims must be dismissed because they are extraterritorial

The Second Circuit has ruled that RICO does not apply extraterritorially to foreign schemes. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 32-33 (2d Cir. 2010). The

---

[9] Further, the internal inconsistency in plaintiffs' amended complaint stretches plausibility well beyond the breaking point. On the one hand, plaintiffs attempt to portray Derwick Associates as notorious bad guys who "blatant[ly]" engage in corruption -- so much so that mere association with Derwick Associates would "denigrate ORA's reputation and discourage others from dealing with ORA." Amd. Compl. ¶¶ 123, 302. On the other hand, plaintiffs allege that defendants did not want Banco Venezolano to retain ORA, because the retention of ORA would have "dramatically altered" public opinion about Derwick Associates' reputation, which was at issue in the Florida litigation. Amd. Compl. ¶ 140.

amended complaint describes an almost purely foreign scheme well outside the reach of RICO.[10]
All of the alleged enterprises are foreign:  Derwick Associates is a Barbados corporation with its
principal place of business in Venezuela,[11] and the individuals who comprise the various other
alleged associations-in-fact or individual enterprises[12] are citizens and nationals of Venezuela
(or, in the case of defendant D'Agostino, Venezuela and Spain).  Amd. Compl. ¶¶ 24, 26, 28.
Plaintiffs attempt to include Derwick Associates' now-defunct United States subsidiary as part of
one of their alleged RICO enterprises, Amd. Compl. ¶232, but plaintiffs allege no predicate acts
during the 20-month period that the United States subsidiary was in existence.  Further, the
amended complaint alleges that Derwick Associates is "in the business of providing engineering,
procurement and construction services involving power plants to the government of Venezuela,"
and identifies twelve power plants in Venezuela that Derwick Associates won contracts to build.
Amd. Compl. ¶¶ 51, 72, 80, 81, 92, 93.

　　　　Plaintiffs' claims are not saved by their allegations of United States banking or other
transactions.  "[S]imply alleging that *some* domestic conduct occurred cannot support a claim of
domestic application."  *Norex*, 631 F.3d at 33 (emphasis added) (affirming dismissal of RICO
claim under extraterritoriality doctrine notwithstanding allegations of some unlawful acts in the
United States); *see also Morrison v. National Australia Bank*, 130 S. Ct. 2869, 2884 (2010) ("the

---

[10]  For the purposes of this analysis, it is irrelevant that the Travel Act and FCPA apply to extraterritorial conduct.
*See Norex*, 631 F.3d at 33 ("*Morrison* similarly forecloses [plaintiff]'s argument that because a number of RICO's
predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach.").

[11]  In an attempt to refute this fact, plaintiffs misleadingly quote an LD-1 lobbying disclosure form filed by The
Volkov Law Group on behalf of Derwick Associates on December 17, 2013.  Amd. Compl. ¶ 180.  Contrary to the
suggestion in the amended complaint, the fact that there are no other "foreign entities" that hold at least a 20%
equitable ownership in Derwick Associates or meet the other criteria listed on the form does not change the fact that
Derwick Associates is itself a foreign entity.  As the LD-1 form clearly indicates, Derwick Associates is located in
Caracas, Venezuela.  *See* Wohl Decl., Ex. D.

[12]  Plaintiffs allege that Betancourt, Trebbau, and D'Agostino each individually comprise their own separate
enterprise.  Amd. Compl. ¶¶ 244, 246, 248.  A "single person criminal enterprise" has been described as "an absurd
notion."  David B. Smith & Terrance G. Reed, Civil RICO §3.07[3] (2013 ed.) (internal quotation marks omitted)
(explaining the "only way to make sense of the 'individual' as enterprise is by interpreting it to refer to a business
operated as a sole proprietorship").

presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case").  While plaintiffs allege in conclusory fashion that defendants "directed, controlled and coordinated" the activities of Derwick Associates from New York, Amd. Compl. ¶ 233, the only factually specific allegations of Derwick Associates' activities in the United States involve the procurement of goods or services from United States companies.  These allegations of purchases from United States providers do not change the extraterritorial nature of plaintiffs' alleged RICO scheme, because the heart of plaintiffs' RICO allegations involve the allegedly "illicit scheme to secure energy-industry contracts in Venezuela" by offering "multi-million dollar kickbacks to public officials in Venezuela."  Amd. Compl. ¶¶ 3, 4.

Judge Stanton recently dismissed a closely analogous RICO claim in *Petróleos Mexicanos v. SK Engineering & Construction Co.*, 12 Civ. 9070, 2013 WL 3936191 (S.D.N.Y. July 30, 2013).  The RICO claims concerned a bribery scheme aimed at securing oil refinery contracts in Mexico and alleged domestic wire fraud involving United States financing entities. Judge Stanton concluded that the allegations "fail to shift the weight of the fraudulent scheme away from Mexico."  *Id.* at *3.  "[T]hey allege a foreign conspiracy against a foreign victim conducted by foreign defendants participating in foreign enterprises."  *Id.*[13]

---

[13] This case does not require the Court to reach a conclusion on the open question of whether the focus of the extraterritoriality analysis should be on the alleged enterprise or the alleged pattern of racketeering.  *See Cedeño v. Castillo*, 457 F. App'x 35, 37 (2d Cir. 2012).  Plaintiffs' RICO claims are extraterritorial under either analysis. "When foreign actors were the primary operators, victims, and structure of a RICO claim, courts in this Circuit have properly concluded that the claims were extraterritorial."  *Republic of Iraq v. ABB AG*, 920 F. Supp. 2d 517, 546 (S.D.N.Y. 2013) (Stein, J.).

### D.    Plaintiffs' RICO conspiracy claim should be dismissed

Because plaintiffs have not adequately alleged a substantive RICO violation, their

conspiracy claim under 18 U.S.C. § 1962(d) must also be dismissed.  *First Capital Asset Mgmt.,*

*Inc. v. Satinwood, Inc.,*  385 F.3d 159, 182 (2d Cir. 2004).[14]

## POINT II

### The Court Lacks Personal Jurisdiction Over Defendants Betancourt and Trebbau

Because plaintiffs have failed to plead a valid civil RICO claim, they cannot rely on

RICO's nationwide jurisdiction provision as a basis for asserting personal jurisdiction.  *Thomas*

*v. JP Morgan Chase, N.A.*, 11 Civ. 3656, 2012 WL 2872164, at *5 n.6 (E.D.N.Y. July 11, 2012),

*aff'd sub nom.*, *Thomas v. Barrett, Daffin, Frappier, Turner & Engel LLP*, 12 Civ. 3223, 2013

WL 5226415 (2d Cir. Sept. 18, 2013).

Accordingly, the remaining basis for the Court's subject matter jurisdiction is diversity.

Consequently, the Court, sitting in diversity, must determine personal jurisdiction under

standards applicable to state courts.  First, the court must determine if New York law provides a

basis for personal jurisdiction.  Second, if there is a basis for personal jurisdiction under New

York law, the court must determine whether the exercise of jurisdiction would be permissible

under the Due Process Clause of the Fourteenth Amendment.  *Bank Brussels Lambert v. Fiddler*

*Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

Here, plaintiffs fail to meet their burden of pleading a *prima facie* case of personal

jurisdiction by pleading allegations that, if proven, would be legally sufficient to support

personal jurisdiction.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir.

---

[14] In addition, plaintiffs attempt in their seventh count to claim conspiracy for multiple other counts, including both RICO counts, and for "acts of bribery."  Amd. Compl. ¶ 321.   There is no private right of action for conspiracy to commit bribery under New York law--let alone conspiracy to commit RICO conspiracy, as plaintiffs have suggested.  In any event, plaintiffs would have no standing to bring claims based on any alleged bribery, which is not alleged to have caused injury to plaintiffs.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

16

2013).  "A *prima facie* showing of jurisdiction does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction."  *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (Keenan, J.) (internal quotation marks omitted).

### A.  There is no general jurisdiction over Betancourt or Trebbau in New York

#### 1.  Plaintiffs do not allege domicile, consent, or service of process in New York

Section 301 of New York's Civil Practice Law and Rules (CPLR) establishes general (or all-purpose) jurisdiction over individuals on three traditional bases:[15] physical presence (evidenced by service of process within the state), domicile, or consent.  *Patel v. Patel*, 497 F. Supp. 2d 419, 424 (E.D.N.Y. 2007); *see also Burnham v. Superior Court of California*, 495 U.S. 604, 610-11 (1990).  Plaintiffs make no effort to allege personal jurisdiction over defendants Betancourt and Trebbau on any of these traditional bases.

#### 2.  The contacts that plaintiffs allege do not form a basis for general jurisdiction in New York

Plaintiffs' creative attempt to extend traditional concepts of general jurisdiction to apply to defendants fails.  Earlier this year, the Supreme Court explicitly "declined to stretch general jurisdiction beyond limits traditionally recognized."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 757-8 (2014).  In *Daimler* the Court explained that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.  'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Id.* at 760 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846,

---

[15] Enacted in 1962, Section 301 codified New York common law on general jurisdiction:  "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  CPLR 301.

2853-54 (2011)).  The sundry New York affiliations that plaintiffs allege are not within this "limited set," and they have been rejected as bases for general jurisdiction by courts in New York and the Second Circuit:

Residence:  Plaintiffs allege that defendant Betancourt owns a home in New York, Amd. Compl. ¶¶ 25, 189, but ownership of a New York residence does not amount to domicile.  *See Antone v. Gen. Motors Corp.*, 473 N.E.2d 742, 745 (N.Y. 1984) ("New York has long recognized that 'residence' and 'domicile' are not interchangeable. . . .  [W]hile a person can have but one domicile he can have more than one residence.").  As distinct from domicile, residence is not enough to support general jurisdiction.  *Deer Consumer Prods., Inc. v. Little*, 938 N.Y.S.2d 767, 774-75 (Sup. Ct. 2012).

Nor do plaintiffs' intricate allegations concerning the financing of the New York residence, Amd. Compl. ¶ 190, affect the jurisdictional analysis.  *Freeplay Music, Inc. v. Cox Radio, Inc.*, 04 Civ. 5238, 2005 WL 1500896, at *4 (S.D.N.Y. June 23, 2005) (Lynch, J.) (a "single financing arrangement" is "insufficient … to warrant the exercise of general personal jurisdiction" (internal quotation marks omitted)); *accord Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 254 (S.D.N.Y. 2003) (Berman, J.).  Allegations concerning a residence in New York do not change that Betancourt is "not domiciled in this state and thus is not subject to jurisdiction under CPLR s 301."  *Pitrowski v. Pitrowski*, 412 N.Y.S.2d 316, 319 (Sup. Ct. 1979).

New York Litigation:  Similarly inconsequential for jurisdictional purposes is plaintiffs' claim that in 2012 Betancourt and Trebbau filed a lawsuit in New York Supreme Court (which they subsequently withdrew).  Amd. Compl. ¶ 34.  Courts in New York and other jurisdictions have rejected claims that a lawsuit in a state court renders parties subject to general personal jurisdiction in that state.  *See Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*,

11 Civ. 420, 2012 WL 204102, at *4 (S.D.N.Y. Jan. 24, 2012) (Holwell, J.);  *see also Merlino v. Harrah's Entm't, Inc.*, 05 Civ. 6660, 2006 WL 401847, at *3 (E.D. Pa. Feb. 17, 2006) (non-domiciliary defendant, who previously had been a plaintiff in Pennsylvania at least nineteen times, was not subject to personal jurisdiction in Pennsylvania for unrelated lawsuit).

Nor does the occasional retention of New York lawyers as counsel for disputes in New York or elsewhere support general jurisdiction.  *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1046 (2d Cir. 1990);  *Bush v. Stern Bros. & Co.*, 524 F. Supp. 12, 14 (S.D.N.Y. 1981) (Motley, J.).  The conclusory allegation that Betancourt and Trebbau "regularly communicated with New York Counsel either in person at their attorneys' offices in New York or through phone calls, electronic mail or facsimile communications directed to New York," Amd. Compl. ¶ 36, is simply not relevant to the general jurisdiction analysis.  *See Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 224 (W.D.N.Y. 1997) (retention of legal and financial advisors in New York in connection with occasional bond issues and business trips related thereto were insufficient to establish jurisdiction under CPLR 301), *disapproved in later appeal on other grounds*, 428 F.3d 408 (2d Cir. 2005); *see also Crucible Ventures, Inc. v. Futuresat Indus., Inc.*, 88 Civ. 4251, 1990 WL 16140, at *2 (S.D.N.Y. Feb. 15, 1990) (Lowe, J.) (25 business trips to New York to solicit and execute business loans did not support personal jurisdiction under CPLR 301).

Bank Accounts:  Judicial teaching is equally clear that allegations of bank accounts held "by defendants" at J.P. Morgan and Davos Financial Advisors, LLC do not support general jurisdiction.  Amd. Compl. ¶¶ 185, 192.  "It is recognized that the existence of a bank account in New York is generally not sufficient to confer personal jurisdiction over a foreign defendant." *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 548 (S.D.N.Y. 2001) (Parker, J.);

19

*Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 12 Civ. 198, 2012 WL 6186598,

at *2 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.); *see also First Capital Asset Mgmt., Inc. v.

Brickellbush, Inc.*, 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (Kaplan, J.), *aff'd sub nom., First

Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) (no *prima facie* case of

general jurisdiction where defendant owned and sold a New York apartment, made business trips

to New York, engaged in business transactions here, and had New York bank accounts).

    <u>Activities of Derwick Associates</u>:  Similarly insufficient is plaintiffs' attempt to subject

defendants to personal jurisdiction in New York based on the activities of non-party Derwick

Associates.  Such a claim would require disregard of corporate form, an extreme conclusion for

which plaintiffs offer no support.[16]  Further, plaintiffs have failed to offer allegations that

Derwick Associates would be subject to general jurisdiction in New York, a premise that would

be a prerequisite for establishing personal jurisdiction over defendants based on Derwick

Associates' activities.  *Medpay Sys., Inc. v. Medpay USA, LLC*, 06 Civ. 1054, 2007 WL

1100796, at *8 (E.D.N.Y. Mar. 29, 2007); *see also Nelson v. Mass. Gen. Hosp.*, 04 Civ. 5382,

2007 WL 2781241, *32-33 (S.D.N.Y. Sept. 20, 2007) (McMahon, J.).

    In *Daimler*, the Supreme Court articulated a very high standard for finding general

jurisdiction over corporate defendants:  a plaintiff must show that the "corporation's affiliations

with the State are so continuous and systematic as to render it essentially at home in the forum

State."  134 S. Ct. at 761 (internal quotation marks and alteration omitted); *see also In re Roman

Catholic Diocese of Albany, New York, Inc.*, 13 Civ. 4736, 2014 WL 485948, at *5-*8 (2d Cir.

Feb. 7, 2014).  The New York "affiliations" described in the amended complaint fall far below

---

[16] It is unclear whether agency theory ever applies to general jurisdiction under New York law -- and if so, whether any such theory could pass Constitutional scrutiny.  *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 n.4 (S.D.N.Y. 1998) (Sotomayor, J.); *Daimler*, 134 S. Ct. at 759.

this standard.[17]  They consist of: a bank account at J.P. Morgan held by Derwick Associates;

bond purchases in this Derwick Associates account; and contracts between Derwick Associates

and companies that are licensed to do business in New York or traded on the New York Stock

Exchange.  Amd. Compl. ¶¶ 51-52, 74, 89, 185, 186.[18]  This is clearly insufficient.

    <u>Conclusory Allegations of Business Conduct in New York</u>:  The conclusory allegations

that defendants are "engaged in a continuous and systematic course of doing business" and

"direct, control and coordinate" the strategy and day-to-day activities of Derwick Associates

from New York, fail to support general jurisdiction in this state.  Amd. Compl. ¶¶ 32, 48.  Courts

in this district regularly discount such conclusory allegations of defendants' business activities

within the state.  *See, e.g.*, *Barron Partners v. Lab123, Inc.*, 07 Civ. 11135, 2008 WL 2902187,

at *10 (S.D.N.Y. July 25, 2008) (Rakoff, J.); *First Capital Asset Mgmt., Inc.*, 218 F. Supp. 2d at

393; *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324-25 (S.D.N.Y. 1998) (Sotomayor, J.).

Further, *Daimler* specifically rejected the theory that a corporate defendant -- let alone an

individual defendant -- could be subject to general jurisdiction based on a "substantial,

---

[17] Nor would the contacts alleged in the amended complaint have been enough to subject Derwick Associates to general jurisdiction under pre-*Daimler* case law.  Under the corporate "doing business" test, analysis of whether a defendant was "doing business" in New York depended on the defendant's "principal corporate activity."  *Mantello v. Hall*, 947 F. Supp. 92, 98 (S.D.N.Y. 1996) (Mukasey, J.).  In *Mantello*, a defendant was a Florida theater company.  The complaint alleged the following New York contacts:  1) visits by the director to New York to see and select plays for production; 2) negotiation of licenses and licensing payments; 3) membership in a New York-based organization of regional theaters; 4) contribution to actors' unions health and pension funds in New York and participation in arbitrations of grievances; 5) advertisement for actors and employment of a New York casting agent; and 6) solicitation of contributions and sales of tickets in New York.  *Id.* at 97.  Judge Mukasey determined that these contacts did not constitute "doing business" in New York, because the theater's "business" was the presentation of plays.   The activities alleged in the complaint amounted to the securing of goods and services that the theater needed to do its business in Florida -- i.e., to produce plays.  *Id.* at 98.  In this case, the business of Derwick Associates is "providing engineering, procurement and construction services involving power plants to the government of Venezuela."  Amd. Compl. ¶ 51.  That business occurs in Venezuela, and the procurement of banking or other services in New York does not constitute "doing business" within the state.

[18] The amended complaint also describes a private airplane owned by Derwick Associates that allegedly traveled to the United States 185 times between December 20, 2010 and June 8, 2013.  Amd. Compl. ¶ 208.  The amended complaint indicates that an unspecified portion of these trips to the United States  involved an airport in Teterboro, New Jersey.  *Id.*  There is no allegation that the private airplane actually traveled to New York.

continuous, and systematic course of doing business." *Daimler*, 134 S. Ct. at 760-61 (internal

quotation marks omitted).

To the extent that plaintiffs allege Betancourt or Trebbau conducted business in New

York as corporate officers of Derwick Associates, those allegations do not support general

jurisdiction over Betancourt or Trebbau personally.  *Laufer v. Ostrow*, 434 N.E.2d 692, 696

(N.Y. 1982); *Brinkmann v. Adrian Carriers, Inc.*, 815 N.Y.S.2d 196, 199 (App. Div. 2006).

### B.  There is no specific jurisdiction over Betancourt or Trebbau in New York

Plaintiffs cannot obtain personal jurisdiction over Betancourt or Trebbau by reference to

New York's long-arm statute, CPLR 302.  That statute, which provides specific jurisdiction over

claims "arising from" certain specifically enumerated contacts with New York, explicitly excepts

defamation-based tort claims:

> Acts which are the basis of jurisdiction.  As to a cause of action arising from any
> of the acts enumerated in this section, a court may exercise personal jurisdiction
> over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or
>    services in the state; or
>
> 2. commits a tortious act within the state, *except as to a cause of action for
>    defamation of character arising from the act*; or
>
> 3. commits a tortious act without the state causing injury to person or property within
>    the state, *except as to a cause of action for defamation of character arising from
>    the act*, if he (i) regularly does or solicits business, or engages in any other
>    persistent course of conduct, or derives substantial revenue from goods used or
>    consumed or services rendered, in the state, or (ii) expects or should reasonably
>    expect the act to have consequences in the state and derives substantial revenue
>    from interstate or international commerce . . . .

N.Y. CPLR § 302(a) (emphasis added).

### 1.    There is no jurisdiction under CPLR 302(a)(2) or (3)

Plaintiffs' tort claims fall squarely within CPLR 302(a)'s exceptions for defamation. *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996) (finding no jurisdiction under CPLR 302(a)(2) and (3) over claims of injurious falsehood and tortious interference with prospective economic advantage, and holding that "[p]laintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation"); *see also Symmetra Pty Ltd. v. Human Facets, LLC*, 12 Civ. 8857, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013) (Scheindlin, J.) ("A plaintiff may not escape the special rules applicable to allegations of defamation through artful pleading: when a claim, however denominated, sounds in defamation, the CPLR's defamation rules apply.").

### 2.    There is no jurisdiction under CPLR 302(a)(1)

Plaintiffs cannot evade this statutory exception for defamation-based claims by resorting to CPLR 302(a)(1) and allegations of New York business transactions.  The amended complaint does not allege that plaintiffs' claims arise from defendants' transactions in New York.[19] Particularly for defamation claims, "there must be a substantial relationship between the purposeful activities and the transaction out of which the cause of action arose."  *SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 963 N.E.2d 1226, 1229 (N.Y. 2012) (internal quotation marks and alteration omitted).  Here, there are no allegations of New York business transactions that bear any relation to plaintiffs' defamation-based claims.

Instead, the amended complaint contains highly speculative allegations concerning plaintiffs' retention of New York lawyers to represent them in a Florida action against Banco Venezolano and a separate New York Supreme Court case, attempting to draw a connection

---

[19] Plaintiffs cannot characterize the making of a defamatory statement as the transaction of business to establish long-arm jurisdiction under CPLR 302(a)(1).  *Deer Consumer Products, Inc.*, 938 N.Y.S.2d at 776 (collecting cases).

between New York counsel and plaintiffs' defamation-based claims.  Amd. Compl. ¶¶ 36, 37.

Plaintiffs are not alleged to have been party to either litigation.  The amended complaint guesses

that strategic decisions concerning the Florida litigation might have been made in New York:

> Upon information and belief, such New York-based discussions certainly _would_
> _have_ included mention of Ambassador Reich who _would have_ been on the "short
> list" of potential experts to be considered or otherwise addressed.

Amd. Compl. ¶ 37 (emphasis added).  These highly speculative allegations do not "nudge[]

[plaintiffs'] claims across the line from conceivable to plausible."  _Bell Atl. Corp. v. Twombly_,

550 U.S. at 570.  "A connection that is 'merely coincidental' is insufficient to support

jurisdiction."  _Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC_, 450 F.3d 100, 103 (2d Cir.

2006).

### C.  It is plaintiffs who bear the burden of establishing a *prima facie* case of personal jurisdiction

Plaintiffs suggest that it is somehow "telling[]" that Betancourt and Trebbau did not

include sworn affidavits with their December 23, 2013, motion to dismiss the original complaint.

Amd. Compl. ¶ 40.  Indeed, the decision not to submit sworn affidavits or documentary evidence

refuting plaintiffs' jurisdictional allegations reflects the fact that it is *plaintiffs* who bear the

burden of establishing a *prima facie* case of jurisdiction.  Both the original complaint and the

amended complaint plainly fail to do so.  Accordingly, plaintiffs' state law claims should be

dismissed.  *See, e.g._, *Richtone Design Grp., LLC v. Live Art, Inc*., 12 Civ. 7652, 2013 WL

5904975 (S.D.N.Y. Nov. 4, 2013) (Keenan, J.) (dismissing case for failure to make out a *prima*

*facie* case for jurisdiction).

## CONCLUSION AND CERTIFICATION

The amended complaint should be dismissed in its entirety.  Undersigned counsel

certifies that they have complied with the provisions of Section 4.B of the Court's Individual

Practices in Civil Cases.

Dated: New York, New York             LANKLER SIFFERT & WOHL LLP
      February 28, 2014


By:_____*/s/ Frank H. Wohl*_____
     Frank H. Wohl (fwohl@lswlaw.com)
     Julia C. Green (jgreen@lswlaw.com)
     500 Fifth Avenue, 34th Floor
     New York, New York 10110
     (212) 921-8399
     *Attorneys for Defendant Leopoldo Alejandro*
     *Betancourt Lopez*


  TEW CARDENAS LLP


By:_____*/s/ Joseph A. DeMaria*_____
     Joseph A. DeMaria (jad@tewlaw.com)
     Bryan T. West (btw@tewlaw.com)
     1441 Brickell Avenue, 15th Floor
     Miami, Florida 33131
     (305) 536-1112
     *Attorneys for Defendant Pedro Jose*
     *Trebbau Lopez*