UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE HONORABLE OTTO J. REICH and, OTTO REICH ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LEOPOLDO ALEJANDRO BETANCOURT LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and FRANCISCO D'AGOSTINO CASADO,<br><br>Defendants. | No. 13 CV 5307 (JPO)<br><br>**DECLARATION OF MARK W. SMITH, ESQ.** |

MARK W. SMITH, hereby declares and says:

1. I am an attorney duly admitted to practice before the courts of the State of New York and this Court, and a member of the law firm of Smith Valliere PLLC, attorneys for Plaintiffs the Honorable Otto J. Reich and Otto Reich Associates, LLC (together, "Plaintiffs") in the above-referenced action.

2. I make this declaration in opposition to the Motion to Dismiss the Amended Complaint of Leopoldo Alejandro Betancourt Lopez ("Betancourt"), Pedro Jose Trebbau Lopez ("Trebbau") and Francisco D'Agostino Casado ("D'Agostino") (the "Motion").

3. Plaintiffs allege in the Amended Complaint that during the relevant time period, Betancourt owned and resided at a home located at Olympic Tower, 641 Fifth Avenue, Penthouse 6, New York, New York 10022. (*See* Amended Complaint ("Am. Cmpl.") ¶ 189.) Sale documents filed with the New York City Department of Finance, Office of the City Register, indicate that Penthouse 6 was purchased on November 23, 2010 by a company named BL 641 Fifth LLC. Attached hereto as Exhibit A is a true and correct copy of the sale documents

filed with the New York City Department of Finance, Office of the City Register. Plaintiffs allege that "BL" in the company name stands for "Betancourt Lopez," and that Mr. Betancourt is the actual and/or beneficial owner of BL 641 Fifth LLC, and resides in Penthouse 6. (*See* Am. Cmpl. ¶ 189.)

4. Penthouse 6 is subject to a mortgage financed by J.P. Morgan Chase Bank, N.A. The Real Property Transfer Report filed with the State of New York for Penthouse 6 indicates that an individual named Eduardo Travieso ("Travieso") signed as "Buyer" for BL 641 Fifth LLC. Annexed hereto as Exhibit B is a true and correct copy of the Real Property Transfer Report. The Amended Complaint alleges that Mr. Travieso then worked for J.P. Morgan Securities LLC in New York and performed banking services in New York for Betancourt and Trebbau and their business associates and entities. (*See* Am. Cmpl. ¶¶ 185-187.) The Real Property Transfer Report also indicates that David Levine of Platte, Klarsfeld, Levine & Lachtman, LLP, a New York law firm, signed as a "Manager" of BL 641 Fifth LLC on the mortgage papers for Penthouse 6. (*See* Exhibit B.)

5. Plaintiffs allege in the Amended Complaint that it has been reported that Travieso worked for Defendants and, while at J.P. Morgan, Travieso obscured the source of Defendants' ill-gotten gains by engaging in a series of bond trades designed to conceal the true source of funds resulting from fraudulently-obtained energy contracts deposited in Defendants' bank accounts at J.P. Morgan and Davos Financial Group in New York. (*See* Am. Cmpl. ¶¶ 185-187.) The Amended Complaint alleges that according to a required U.S. regulatory filing with FINRA, Travieso separated from J.P. Morgan on March 21, 2013, following allegations that Travieso had potentially committed violations of investment-related statutes, fraud, or failure to supervise in connection with investment-related statutes, arising from certain undisclosed customer

interactions by Travieso. (*See* Am. Compl. ¶ 187.) Travieso's FINRA Broker Check Report (a true and correct copy of which is annexed hereto as Exhibit C) discloses that "FINRA made a preliminary determination to recommend that disciplinary action be brought against Travieso for potential violations of FINRA Rule 2010 ["Standards of Commercial Honor and Principles of Trade] and NASD Rule 3050." The Broker Check Report also shows that J.P. Morgan has stated publicly that "Mr. Travieso acted in a manner that is inconsistent with the Firm's policies and procedures," and had "fallen short of the standards" of financial industry employees. (*Id.*)

6. An affidavit of attempted service on Betancourt in New York City is attached hereto as Exhibit D. It reflects that Betancourt's doorman at the Olympic Tower indicated that Betancourt lived there and was home—until the doorman identified the process server as someone serving legal papers.

7. The Amended Complaint alleges that Betancourt and Trebbau utilize two private jets for purposes of conducting business in New York. (*See* Am. Cmpl. ¶¶ 207-208.) The Amended Complaint alleges that Betancourt's and Trebbau's private jets took off from and landed at Teterboro airport in New Jersey nearly 200 times in a two and one half year period relevant to Plaintiffs' claims. (*Id.*) Teterboro is the private airport used by travelers by private jet to access New York City. (*Id.*) Attached hereto as Exhibit E is a true and correct copy of an article from the March/April 2014 issue of *Departures* magazine reflecting the use of Teterboro airport as a prime access point for private jet travel to and from New York City.

8. The Amended Complaint alleges that Betancourt and Trebbau personally engaged New York attorneys to represent them and to represent their business interests (the "New York Counsel"). The New York Counsel filed at least two lawsuits for Betancourt and Trebbau, personally, and for one of their businesses, Derwick Associates, in New York and Florida, from

which Plaintiffs' claims in this action arise. Annexed hereto as Exhibits F and G, respectively, are true and correct copies of the complaints (without any exhibits thereto) filed by Betancourt and Trebbau through their New York Counsel. The complaints indicate that the New York Counsel were Betancourt's and Trebbau's counsel of record in both actions.

9. The Amended Complaint alleges that Betancourt and Trebbau actively deploy public relations professionals to solicit favorable stories about them and to help manage their images and promote their business interests in New York. (*See* Am. Cmpl. ¶¶ 196, 198-199.) Upon information and belief, their public relations agents solicit New York media professionals and companies to report or create "buzz" about Betancourt and Trebbau in New York by using wire services that specifically target New York media sources. Annexed hereto as Exhibit H are true and correct copies of various press releases placed by Betancourt and Trebbau's public relations agents through two major press release companies, *i.e.*, PR Newswire and PRWeb.

10. Annexed hereto as Exhibit I are true and correct copies of the relevant pages from PR Newswire's website identifying, among other things, the New York-based media companies that receive Betancourt and Trebbau's press release solicitations issued through PR Newswire's US Energy Industry media list. While Plaintiffs do not know exactly which media list Betancourt and Trebbau solicited, it is a reasonable inference that Defendants (who purportedly work in the energy industry) would have sent their press releases to (at a minimum) those reporters and news sources that cover the "energy industry beat." If they did so, then Betancourt and Trebbau would have directly communicated with and solicited no fewer than 570 New York-based media outlets including, the *New York Times*, the *New York Daily News*, and the *New York Post*. If they issued their press releases through a more "general news" database, then they likely

would have communicated with and solicited even more New York-based media outlets and reporters than they would have through the energy-industry database.

11. A true and correct copy of the General Terms and Conditions for PR Newswire, which appear to apply to persons who retain PR Newswire to provide press release services is attached hereto as Exhibit J. PR Newswire is located at 350 Hudson Street, New York, New York, 10014 as reflected by Exhibit J. As parties to the General Terms and Conditions for PR Newswire, Betancourt and Trebbau agreed not only to litigate any disputes in New York, New York, but that New York law would apply regardless of any conflicts of law rules to the contrary. *See* Ex. J at 4.[1]

12. Defendant D 'Agostino was served personally with process in this action within the State of New York. Attached hereto as Exhibit K is a true and correct copy of an Affidavit of Service attesting that D'Agostino was personally served with the Plaintiffs' Complaint in New York.

13. Plaintiffs have alleged significant facts demonstrating that Betancourt and Trebbau are subject to personal jurisdiction in New York. However, many of the facts and documents concerning Betancourt's and Trebbau's personal and business contacts with New York are as yet unknown to Plaintiffs, despite their ongoing investigation, and are exclusively within Betancourt's and Trebbau's personal knowledge, possession or control. Should the Court find Plaintiffs' existing jurisdictional allegations insufficient, Plaintiffs request that they be permitted to conduct jurisdictional discovery to obtain information about, among other things: Betancourt's and Trebbau's residences in New York; their intent to return to and/or remain in New York for domicile purposes; their use of business offices in New York; their use of agents

[1] The undersigned caused page numbers to be added to the General Terms and Conditions to allow the Court and the parties to more readily review the relevant sections.

and employees in New York; their bank accounts and ownership of real property in New York; their retention of attorneys, public relations firms and other agents in New York; their travel to New York, including business travel; and other factors relevant to personal jurisdiction.

14. I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

May 7, 2014
New York, New York

Mark W. Smith, Esq.