# SMITH
# S VALLIERE PLLC

1221 AVENUE OF THE AMERICAS 42ND FLOOR NEW YORK NEW YORK 10020

TELEPHONE 212 755 5200
FACSIMILE 212 755 5203
WWW.SVLAW.COM

Mark W. Smith
(212) 755-5220
msmith@svlaw.com

September 12, 2014

Honorable J. Paul Oetken
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *The Honorable Otto J. Reich, et al. v. Betancourt Lopez, et al., No. 13-cv-5307*

Dear Judge Oetken:

　　　We represent the Honorable Otto J. Reich and Otto Reich Associates, LLC (together, "Plaintiffs"), in the above-referenced matter. Frank H. Wohl, counsel for Defendant Leopoldo Alejandro Betancourt Lopez ("Betancourt"), and Joseph De Maria, counsel for Pedro Jose Trebbau Lopez ("Trebbau"), join in this submission.

　　　Pursuant to the Court's instruction in its August 18, 2014 Opinion and Order, the parties have conferred on the appropriate scope and schedule for jurisdictional discovery with respect to Defendants Betancourt and Trebbau. The parties have been able to reach agreement on two issues: (i) Plaintiffs will serve initial document requests and interrogatories on Defendants on or before October 1, 2014; and (ii) Defendants Betancourt and Trebbau will serve their responses, including responsive documents, on or before October 15, 2014.

　　　For the convenience of the Court, the parties have set forth their respective positions as to the other areas in which they have been unable to reach agreement. Plaintiffs' position is attached hereto as Exhibit A; Defendant Betancourt and Trebbau's position is attached hereto as Exhibit B.

Respectfully submitted,

Mark W. Smith, Esq.,

*Attorneys for Plaintiffs*
*The Honorable Otto J. Reich and*
*Otto Reich Associates, LLC*

Frank H. Wohl, Esq.,

*Attorneys for Defendant*
*Leopoldo Alejandro Betancourt Lopez*

Joseph A. DeMaria, Esq.,

*Attorneys for Defendant*
*Pedro Jose Trebbau Lopez*

Enc.
cc:    Shawn Rabin, Esq. (Counsel for Defendant Francisco D'Agostino Casado)

# EXHIBIT A

## EXHIBIT A

### PLAINTIFFS' POSITION CONCERNING THE
### SCOPE AND SCHEDULE FOR JURISDICTIONAL DISCOVERY

Plaintiffs' position concerning the scope and schedule for jurisdictional discovery can be summarized as follows:

Plaintiffs request that they be permitted to conduct merits-based and jurisdictional discovery of Leopoldo Alejandro Betancourt Lopez ("Betancourt") and Pedro Jose Trebbau Lopez ("Trebbau") (collectively, the "Jurisdictional Defendants") *together and simultaneously with* the ongoing merits-based discovery of defendant Francisco D'Agostino Casado ("D'Agostino"). If the Court agrees, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed order (attached hereto as Exhibit 1), which directs the parties to meet and confer pursuant to Fed.R.Civ.P. 26 and to submit a proposed scheduling order to the Court on or before October 15, 2014.

In the alternative, if the Court decides that jurisdictional discovery as to Betancourt and Trebbau will proceed separate and apart from Plaintiffs' discovery on the D'Agostino claims, then Plaintiffs submit that the Court's August 18, 2014 Opinion and Order (the "August 18 Order") permits Plaintiffs to take jurisdictional discovery concerning not only Betancourt's and Trebbau's domiciles, but also their other contacts with New York, in order to demonstrate that they are subject to general jurisdiction here. Plaintiffs contend that such discovery must include the depositions of Betancourt and Trebbau in New York as well as third-party discovery. If the Court agrees, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed scheduling order (attached hereto as Exhibit 2).

# I. MERITS-BASED AND JURISDICTIONAL DISCOVERY OF BETANCOURT AND TREBBAU SHOULD PROCEED SIMULTANEOUSLY

There are four undeniable facts about the procedural posture of the instant case. First, Plaintiffs' state law claims against defendant D'Agostino, which are heavily-focused on alleged New York-based activities, are moving forward. Second, personal jurisdiction discovery of Betancourt and Trebbau (D'Agostino's alleged co-conspirators and business partners) is now commencing. Third, factual inquiries concerning Defendants' relationships and business connections in and directed toward New York will be a primary focus of *both* Plaintiffs' state law claims against D'Agostino *and* Plaintiffs' jurisdictional discovery of Betancourt and Trebbau. Fourth, even if Betancourt and Trebbau are not subject to jurisdiction in New York, they will be required to sit for depositions and to produce documents as non-party witnesses concerning the merits of Plaintiffs' claims against D'Agostino given their roles as business partners, alleged co-conspirators, and material witnesses to Plaintiffs' state law claims.

Due to (a) the inextricably intertwined nature of the factual issues presented by the jurisdictional discovery of Betancourt and Trebbau *and* the merits-based discovery of D'Agostino, and (b) the fact that Betancourt and Trebbau will be subject to merits discovery either as parties or non-parties, the Court should allow Plaintiffs to take merits-based and jurisdictional discovery of Betancourt and Trebbau simultaneously and now.

## A. Given The Substantial Overlap Of Factual Issues, Allowing Merits And Jurisdictional Discovery Will Be More Efficient For The Parties

Under the Court's September 10, 2014 Order, Defendant D'Agostino must serve his Answer to Plaintiffs' First Amended Complaint on September 16, 2014, and merits-based discovery will then commence against him. Because Plaintiffs have alleged that D'Agostino, Betancourt and Trebbau acted as each other's agents, business partners, and co-conspirators, the

merits-based discovery concerning Plaintiffs' claims against D'Agostino is inextricably linked to the personal jurisdiction discovery to be taken of Defendants Betancourt and Trebbau (either as parties or non-parties). As Betancourt's and Trebbau's friend, business partner, agent and co-conspirator, D'Agostino (who is undeniably based in New York) will necessarily possess significant material information about Betancourt's and Trebbau's contacts with and intentions toward New York. Indeed, the best evidence that Betancourt and Trebbau are subject to jurisdiction in New York may arise from their friendship and partnership with D'Agostino and their mutual social, business, financial and civil circles.

Plaintiffs allege that Defendants conspired together to injure Plaintiffs by engaging in a defamation campaign headquartered in New York for the purpose of perpetuating their unlawful activities and protecting their New York-based business and banking relationships. (*See* Amended Complaint ¶¶ 4, 7, 9, 13, 25, 27, 31, 32, 36, 37, 50, 78, 126, 147, 148, 159, 174, 185-193, 197, 198, 208.) These same New York-based relationships will be equally central to *both* personal jurisdiction discovery *and* to proving the motive and methods underlying the unlawful torts against Plaintiffs (*i.e.*, proving the merits of the alleged tort claims).

Allowing jurisdictional and merits-based discovery to proceed simultaneously will be more efficient and convenient for the parties, and will impose no added burdens on the Jurisdictional Defendants, who will be subject to discovery regardless of whether they are ultimately found to be subject to this Court's jurisdiction. *See, e.g.*, *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1160 (D. Nev. 2009) ("granting jurisdictional discovery separate from general discovery would be inefficient" where plaintiffs will depose the individual defendants on the merits even if they are not parties); *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1151 (N.D. Ill. 1979) (court refused to limit discovery of documents to those related

exclusively to jurisdiction where jurisdictional and merits discovery was intertwined).  Unless

Betancourt and Trebbau intend to disobey or evade their discovery obligations as non-parties –

notwithstanding their having availed themselves of New York-based courts, financial

relationships, and media outlets on countless prior occasions (*see* Declaration of Mark W. Smith,

Esq., sworn to May 7, 2014, with exhibits [ECF No. 42]) – the burden and inconvenience to

them, if any, will be insignificant if jurisdictional and merits-based discovery proceed together.

### B.     Allowing Merits And Jurisdictional Discovery Will Promote Judicial Economy

Allowing merits-based and jurisdictional discovery to occur simultaneously will promote

judicial economy and reduce the need for the Court's involvement in discovery.  Absent the

relief requested by Plaintiffs, it is inevitable that any attempt to draw artificial lines between New

York-focused jurisdictional issues (*i.e.*, does the question posed concern "jurisdiction") and New

York-focused merits-related issues will result in endless objections by the Jurisdictional

Defendants (genuine or contrived) and will require the repeated involvement of the Court

(potentially on a question-by-question basis) to resolve these line-drawing disputes.[1]  In the

interests of judicial economy and to avoid unnecessary litigation costs, jurisdictional and merits-

based discovery should proceed simultaneously.  *See, e.g., Hakky v. Washington Post Co.,* 8:09-

cv-2406-T-30MAP, 2010 U.S. Dist. LEXIS 63065, at *16 (M.D. Fl. June 24, 2010) (plaintiff

permitted to conduct jurisdictional discovery and merits discovery at the same time); *Jimmy*

*Smith Racing Tires, Inc. v. Ashleman,* 1:05-cv-0970 (JEC), 2006 U.S. Dist. LEXIS 66964, at

*30-31 (N.D. Ga. Sep. 19, 2006) (same); *Alosio v. Iranian Shipping Lines, S.A.*, 307 F. Supp.

1117, 1120 n.2 (S.D.N.Y. 1970) (discovery allowed "without limitation based upon

---

[1]     Plaintiffs' concern is not a hypothetical.  Betancourt and Trebbau have already commenced their discovery gamesmanship by attempting to impose an artificial, but substantively meaningless, distinction as between jurisdictional and merits discovery.

4

characterization of any particular question as either jurisdictional or relating to the merits" where questions of jurisdiction overlap with merits discovery).

During the meet and confer process, Defendants Betancourt and Trebbau offered no meaningful objection to Plaintiffs' proposal that merits and jurisdictional discovery commence simultaneously. Nor could they. Whether as parties or non-party witnesses they will be required to provide the exact same "merits-based" information to Plaintiffs in discovery. There is no merit to the Jurisdictional Defendants' contention that conducting merits discovery simultaneously with jurisdictional discovery contravenes the Court's August 18 Order.

Plaintiffs respectfully request that the Court enter an order directing the parties to meet and confer pursuant to Fed.R.Civ.P. 26 and to submit a proposed scheduling order to the Court on or before October 15, 2014. (*See* Exhibit 1 hereto.)

## II.     PLAINTIFFS ARE ENTITLED TO JURISDICTIONAL DISCOVERY CONCERNING BETANCOURT'S AND TREBBAU'S DOMICILES AND ANY OTHER CONTACTS WITH NEW YORK TO PROVE GENERAL JURISDICTION

Plaintiffs bear the burden to show that Betancourt and Trebbau are subject to general jurisdiction in New York, either by proving domicile or some other basis for jurisdiction over them. Although Plaintiffs believe that they will be able to show that the Jurisdictional Defendants are domiciled in New York, nothing at this preliminary stage should preclude Plaintiffs from having a full and fair opportunity to establish general jurisdiction on some other basis.

The Court's August 18 Order recognizes that, in certain cases, parties can be subject to general jurisdiction in a state even if they are not domiciliaries of that state. While the Court observes that these circumstances can be narrow, the August 18 Order does not (nor could it, absent specific factual determinations that have yet to occur) preclude Plaintiffs from

establishing that Betancourt's and Trebbau's contacts with New York are sufficient to establish general jurisdiction on a basis other than domicile. Plaintiffs' inquiries during discovery (as well as, ultimately, the Court's factual determinations) will necessarily focus on whether Betancourt's and Trebbau's contacts with New York suffice to subject them to general jurisdiction either by virtue of being domiciled here or otherwise.

Betancourt and Trebbau contend that Plaintiffs' jurisdictional inquiries are limited to the issue of domicile. Their reliance on a single line in the Court's August 18 Order, in which the Court concludes that Plaintiffs had not yet alleged sufficient facts to support a finding of general jurisdiction on a basis other than domicile, is misguided. Given the factually-dependent nature of personal jurisdiction determinations, Plaintiffs do not read the Court's decision to hold as a matter of fact and law that Plaintiffs will not be able to establish general jurisdiction on a basis other than domicile after jurisdictional discovery has concluded. The Jurisdictional Defendants' suggestion that the Court has ruled on this subject before any discovery or fact-finding is simply wrong in light of the Court's instruction that "the parties shall confer on the appropriate scope and schedule for *jurisdictional discovery* . . . ." (emphasis added).

## III.   DISCOVERY ON DOMICILE IS NECESSARILY BROAD

Domicile entails factual inquiries into a defendant's presence in a state and his intent to remain or return. *See Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000). With respect to the former, a party may have a presence in New York whether or not he (directly or indirectly) owns real property in New York, such as if he rents or leases a residence, or resides with others. No minimum period of residence is necessary to establish domicile. *National Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991). Plaintiffs are entitled to discovery concerning, among other relevant subjects,

6

the Jurisdictional Defendants' ownership, leasing, or rental of real property in New York, as well as whether they have spent time in New York at hotels or at the residences or other properties of friends, family members, business acquaintances, or others in New York.

Here, Betancourt's and Trebbau's intent to remain in or return to New York present quintessential questions of fact, which require both the depositions of Betancourt and Trebbau and other discovery to identify facts that may corroborate or refute their testimony. *See Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("[q]uestions as to a person's 'intent to change, or not to change, his domicile from [one state] to [another]' are 'factual' questions") (citation omitted). The factors that the courts consider to determine intent are quite extensive and no one factor is conclusive. For example, among other factors, the nature and extent of the Jurisdictional Defendants' business, social, familial, banking, and religious activities in New York versus Venezuela may be probative of their actual intent. *See, e.g., Paul Revere Life Ins. Co. v. Segal*, 99 Civ. 3022 (MBM), 2000 U.S. Dist. LEXIS 14042, at *5 (S.D.N.Y. Sept. 27, 2000) (factors relevant to determining domicile include where a person's family is located; where he maintains affiliations with religious and social organizations; where he transacts business and financial matters); *National Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. at 1228 (factors showing domicile include location of clubs and church memberships, affiliations with social organizations, location of person's lawyer, accountant and financial advisor, and bank accounts).

Likewise, the nature and extent of the Jurisdictional Defendants' ownership of personal property, their statements to third parties, their travel to and from the New York area, the locations from which they conduct business, representations made in business and personal contexts, and other activities in and contacts with New York are all probative of their intent to remain in or return to New York and are all proper subjects of inquiry for jurisdictional

7

discovery. *See, e.g., Bhatti v. Pettigrew,* 11 Civ. 1044 (JPO), 2012 U.S. Dist. LEXIS 47132, at *

9-14 (Oetken, J.) (factors indicative of domicile include travel to and from jurisdiction and

representations to third parties); *Reynolds v. Wohl,* 332 F. Supp. 2d 653, 658 (S.D.N.Y. 2004)

(location of personal belongings is factor for determining domicile). Betancourt's and Trebbau's

lack of contacts with places/jurisdictions other than New York will be equally probative of the

existence of New York contacts, as well as their intent to remain in or return to New York. Any

suggestion that the Court can properly assess the impact and meaning of the Jurisdictional

Defendants' contacts with and activities in New York without comparing them with the

Jurisdictional Defendants' conduct and activities elsewhere is unwarranted. This is particularly

true for the extremely wealthy (such as Betancourt and Trebbau) who have the financial ability

to jet set around the world in their private planes enjoying the benefits of many destinations

while dodging legal accountability in any individual location.

In support of their motion to stay their obligations to answer Plaintiffs' First Amended

Complaint, Betancourt and Trebbau submitted cursory, self-serving declarations which touch

upon, but do not provide any detail, concerning a handful of isolated facts that may be relevant to

(but certainly are not dispositive of) their domiciles. [ECF Nos. 67, 68.] They contend that their

declarations provide Plaintiffs with "much, if not all, of the information to which [Plaintiffs] are

entitled for jurisdictional discovery," and that Plaintiffs' written discovery should be limited to

those "issues that [Plaintiffs] need to develop to supplement the declarations that [Betancourt and

Trebbau] have already submitted." The Jurisdictional Defendants' position is flawed for many

reasons.

First, neither the Court, as fact finder, nor the Plaintiffs are obligated to accept

Betancourt's and Trebbau's untested statements. *See Bank of India v. Subramanian*, 06 Civ.

2026 (WHP), 2007 U.S. Dist. LEXIS 35148, at *12 (S.D.N.Y. May 15, 2007) (self-serving declarations are insufficient to establish domicile); *see also New York Pattern Jury Instructions*, 1A NY PJI3d 1:91, at 184 (2013) ("you may . . . not believe the testimony of an [interested witness] even though it is not otherwise challenged or contradicted").  Like any other party in our adversarial legal system, Plaintiffs have the right to confront and cross-examine the Jurisdictional Defendants on the pressing questions presented here, and the Court has the right (indeed, the obligation) to make factual findings about these same jurisdictional questions.

Second, Betancourt's and Trebbau's conclusory declarations speak, in part, to the time period after this lawsuit was commenced (Betancourt Declaration at ¶ 11; Trebbau Declaration at ¶ 11), and do not address their contacts with New York before or when Plaintiffs commenced the lawsuit.  It is not surprising that Betancourt and Trebbau, who have gone to great lengths to evade service and jurisdiction, may have temporarily curtailed their time and endeavors in New York.

Third, attached to Betancourt's and Trebbau's declarations are copies of their purported voter and tax registrations in Venezuela and their alleged Venezuelan driver's licenses.  But none of these documents is sufficient to establish their alleged domicile in Venezuela.  *See, e.g.*, *Estate of Gadway*, 123 A.D.2d 83, 86 (3d Dep't 1987) (voter registration, filing of tax returns and driver license not conclusive evidence of domicile where there exist competing facts).  As illustrated above, the number of factors that the courts consider in determining domicile is very broad and extends far beyond mere tax filings and a driver's license.

Fourth, and as addressed in Point II, *supra*, the scope of Plaintiffs' discovery should not be limited solely to Betancourt's and Trebbau's domiciles.

IV.   **PLAINTIFFS SHOULD BE ALLOWED TO DEPOSE BETANCOURT
AND TREBBAU AND CONDUCT THIRD-PARTY DISCOVERY**

Betancourt and Trebbau contend that Plaintiffs should be precluded from exploring issues concerning Betancourt's and Trebbau's residence, intent, or general contacts with New York through depositions, which Plaintiffs submit are the only practical means to meaningfully cross-examine them, explore their intent, and for Plaintiffs' to confirm or disprove the veracity of information obtained through written discovery. They also object to Plaintiffs' use of third-party discovery to develop additional facts relevant to jurisdiction.

A.   **Betancourt And Trebbau Should Be
Required To Sit For Depositions In New York**

It is well settled that parties to a lawsuit are permitted to take depositions on all aspects of discovery in federal litigation. The Jurisdictional Defendants' suggestion that the important threshold issue of jurisdiction should (or could) be decided without permitting Plaintiffs to depose them is highly improper and unfairly prejudicial. Absent depositions, the Court will not be able to make an informed decision or issue appropriate factual findings on a complete factual record. To make such a decision without the benefit of depositions would not only deprive the Plaintiffs of their day in court and fair chance to prove personal jurisdiction, but will deprive the Court itself of highly relevant and probative information. Betancourt and Trebbau are parties to this lawsuit unless and until they have been dismissed from it. The Court has determined that jurisdictional discovery is appropriate, and should order them to participate in that discovery fully through depositions.

Betancourt and Trebbau also resist having their depositions taken in New York. They can hardly complain that New York is inconvenient or burdensome where they have admitted in their declarations that they have/had bank accounts in New York (Trebbau Declaration at ¶ 13, Betancourt Declaration at ¶ 13); own real estate in New York, including an apartment in

midtown Manhattan at the Olympic Tower (Betancourt Declaration at ¶ 12); and travel to New

York on their private airplane (Trebbau Declaration at ¶ 15, Betancourt Declaration at ¶ 15).

Moreover, as alleged in Plaintiffs' First Amended Complaint, they have engaged New York

counsel and availed themselves of the New York court system to commence a lawsuit in New

York in 2012. (See Amended Complaint ¶¶ 7, 34-38.) There is simply no basis for imposing on

Plaintiffs the cost and inconvenience of deposing these parties outside New York.[2]

### B.   Plaintiffs Should Be Permitted To Take Third-Party Discovery To Test The Veracity Of Betancourt's and Trebbau's Written Statements

During the meet and confer process, Betancourt and Trebbau suggested that Plaintiffs

should be precluded from conducting third-party discovery, and that Plaintiffs' ability to test and

refute the Jurisdictional Defendants' self-serving statements should be limited to information

provided by Betancourt and Trebbau themselves. This "fox guarding the hen house" approach is

unacceptable.

Plaintiffs should be permitted to engage in third-party discovery to obtain relevant

information from third-party sources, including sources with information that can refute or rebut

the Jurisdictional Defendants' self-serving claims, and disinterested witnesses who can provide

important facts to the Court to aid it in its fact-finding effort. Denying Plaintiffs this right would

unfairly prejudice them. In making factual determinations, the Court as fact finder should be

provided with any and all probative information. This is especially true where a decision on

personal jurisdiction here might have a dispositive effect on the case. If the Court dismisses

Betancourt and Trebbau from the case on personal jurisdiction grounds, then Plaintiffs' right to

---

[2]   During the meet and confer process, counsel for Betancourt and Trebbau stated that the relevant period for jurisdictional discovery "may include a reasonable period before, and up to, the date the suit was filed." Defense counsel have not officially stated what they contend is a "reasonable period before" the lawsuit was filed. In any event, because Betancourt's and Trebbau's prior conduct is highly probative of their residence, intent to return or to remain in New York, and their overall contacts with New York, the Court should not set an arbitrary deadline for what constitutes "a reasonable period before" the lawsuit was filed.

vindication and relief will be severely handicapped. To deny Plaintiffs the most basic discovery in the form of party depositions and non-party discovery would be unfair and improper.

## V.   PROPOSED SCHEDULE

### A.   Plaintiffs' Proposed Schedule If Merits And Personal Jurisdiction Discovery Are Conducted Simultaneously

If the Court agrees that jurisdictional and merits-based discovery should proceed together, then Plaintiffs request that the Court direct the parties, including D'Agostino, to meet and confer pursuant to Fed.R.Civ.P. 26 and submit a proposed scheduling order on or before October 15, 2014. (*See* Exhibit 1 hereto.)

### B.   Plaintiffs' Proposed Schedule If Only Discovery On Personal Jurisdiction Is Permitted

Alternatively, if the Court decides that it will allow jurisdictional discovery as to Betancourt and Trebbau to proceed separately from merits-based discovery, then Plaintiffs request that the Court enter a scheduling order consistent with the below. (*See* Exhibit 2 hereto.) The proposed dates attempt to account for potential scheduling conflicts, holidays, and time to address possible language translation issues.

- Plaintiffs will serve upon Betancourt and Trebbau initial document requests and jurisdictional interrogatories[3] on or before October 1, 2014 (as already agreed to by Plaintiffs and the Jurisdictional Defendants);

- Betancourt and Trebbau will serve their responses to Plaintiffs' initial document requests and jurisdictional interrogatories on or before October 15, 2014 (as already agreed to by Plaintiffs and the Jurisdictional Defendants);

- Betancourt and Trebbau will produce documents responsive to Plaintiffs' initial document requests on or before October 15, 2014 (as already agreed to by Plaintiffs and the Jurisdictional Defendants);

---

[3]     Plaintiffs' jurisdictional interrogatories will not count against the total number of interrogatories that Plaintiffs are permitted to serve under Fed.R.Civ.P. 33.

- Betancourt's and Trebbau's depositions to be conducted in New York on or before December 19, 2014; and

- Third party discovery to be served on or before December 31, 2014.


Dated: New York, New York
      September 12, 2014

Respectfully submitted,

SMITH VALLIERE PLLC

By: _____
      Mark W. Smith, Esq.
      Noelle Kowalczyk, Esq.

1221 Avenue of the Americas, 42nd Floor
New York, New York 10020
(212) 755-5200 Telephone
(212) 755-5203 Facsimile
msmith@svlaw.com
nkowalczyk@svlaw.com

*Attorneys for Plaintiffs*
*The Honorable Otto J. Reich and*
*Otto Reich Associates, LLC*

PLAINTIFFS' EXHIBIT 1

EXHIBIT 1 TO PLAINTIFFS' POSITION RE JURISDICTIONAL DISCOVERY

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE HONORABLE OTTO J. REICH and OTTO REICH ASSOCIATES, LLC, | ) ) ) Civ. No. 13 CV 5307 (JPO) |
| Plaintiffs, | ) ) ECF CASE ) |
| v. | ) ) |
| LEOPOLDO ALEJANDRO BETANCOURT LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and FRANCISCO D'AGOSTINO CASADO, | ) ) ) ) |
| Defendants. | ) ) ) |

**[PROPOSED] ORDER**
**GOVERNING DISCOVERY OF DEFENDANTS**
**ALEJANDRO BETANCOURT LOPEZ AND PEDRO JOSE TREBBAU LOPEZ**

WHEREAS, the Court has ordered jurisdictional discovery concerning Defendants

Leopoldo Alejandro Betancourt Lopez ("Betancourt") and Pedro Jose Trebbau Lopez

("Trebbau"); and

WHEREAS, the parties have conferred pursuant to the Court's August 18, 2014 Opinion

and Order concerning the appropriate scope and schedule for jurisdictional discovery and made a

joint submission summarizing their respective positions;

WHEREAS, it would be inefficient to conduct jurisdictional discovery in this action

separate from general discovery because Betancourt and Trebbau will be subject to discovery in

this action either as parties if they are shown to be subject to jurisdiction in New York or as non-party witnesses;

IT IS HEREBY ORDERED, that the parties shall meet and confer in accordance with Fed.R.Civ.P. 26 on or before _____, 2014, and submit a proposed case management plan and scheduling order to the Court on or before October 15, 2014.


SO ORDERED:

Dated: _____

_____
Hon. J. Paul Oetken
United States District Judge

PLAINTIFFS' EXHIBIT 2

**EXHIBIT 2 TO PLAINTIFFS' POSITION RE JURISDICTIONAL DISCOVERY**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE HONORABLE OTTO J. REICH and OTTO REICH ASSOCIATES, LLC, | Civ. No. 13 CV 5307 (JPO) |
| Plaintiffs, | ECF CASE |
| v. | |
| LEOPOLDO ALEJANDRO BETANCOURT LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and FRANCISCO D'AGOSTINO CASADO, | |
| Defendants. | |

**[PROPOSED] SCHEDULING ORDER**
**GOVERNING JURISDICTIONAL DISCOVERY OF DEFENDANTS**
**ALEJANDRO BETANCOURT LOPEZ AND PEDRO JOSE TREBBAU LOPEZ**

WHEREAS, the Court has ordered jurisdictional discovery concerning Defendants Leopoldo Alejandro Betancourt Lopez ("Betancourt") and Pedro Jose Trebbau Lopez ("Trebbau"); and

WHEREAS, the parties have conferred pursuant to the Court's August 18, 2014 Opinion and Order concerning the appropriate scope and schedule for jurisdictional discovery and made a joint submission summarizing their respective positions;

IT IS HEREBY ORDERED, as follows:

1.      Plaintiffs will serve upon Defendants Betancourt and Trebbau initial document requests and jurisdictional interrogatories on or before October 1, 2014[1];

2.      Defendants Betancourt and Trebbau will serve their responses to Plaintiffs' initial document requests and jurisdictional interrogatories on or before October 15, 2014;

3.      Defendants Betancourt and Trebbau will produce documents responsive to Plaintiffs' initial document requests on or before October 15, 2014;

4.      Betancourt's and Trebbau's depositions will be conducted in New York on or before December 19, 2014; and

5.      Third-party discovery will be served on or before December 31, 2014.

SO ORDERED:

Dated: _____

_____
Hon. J. Paul Oetken
United States District Judge

---

[1]      Plaintiffs' jurisdictional interrogatories will not count against the total number of interrogatories Plaintiffs are permitted to serve under Fed.R.Civ.P. 33.

# EXHIBIT B

## Exhibit B

## Defendants Betancourt and Trebbau's Positions With Respect To Discovery

Based on the Court's Order and Opinion, Defendants' view is that jurisdictional discovery should be limited and focused on Defendants' domiciles. As the Supreme Court explained in *Daimler*, the general jurisdiction inquiry should be fairly straightforward. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (describing the "affiliations" necessary to find general jurisdiction as "unique[,]" "easily accessible[,]" and "limited").

We understand, based on our communications with Plaintiffs' counsel, that they propose a more open-ended form of discovery which they have termed "quite broad."[1] Because Plaintiffs have not provided specific document requests or interrogatories, we do not believe it appropriate at this juncture to burden the Court with an abstract debate over whether jurisdictional discovery should be "limited" or "quite broad." We intend to be very responsive, and to act quickly, with respect to any document requests and interrogatories legitimately related to our clients' domiciles during the relevant time period; and we have not given up hope that Plaintiffs will be convinced to limit their requests to that topic.

Accordingly, Defendants intend to move forward with written jurisdictional discovery as quickly as possible. In the spirit of cooperation we have agreed to Plaintiffs' October 1 deadline to serve their document requests and interrogatories. We intend to respond promptly, by October 15. Indeed, we have already provided Plaintiffs with declarations and documentary evidence covering the topics the Court noted as probative of our clients' domiciles. Op. at 24; *see* Declarations of Defendants Betancourt and Trebbau, Dkt. Nos. 67, 68, Entered Sept. 5, 2014. We propose that the parties meet and confer immediately after we have produced documents and interrogatories to determine the need for, and scope of, depositions.[2] If the parties cannot reach agreement, we will ask the Court for its guidance on how to proceed.

Such a step-by-step approach is preferable to arguing now over issues that may be resolved by events in the discovery process. That said, we note that courts have discretion to decide jurisdictional issues, including domicile, without resort to depositions when parties seeking discovery have offered no facts supporting jurisdiction. *See, e.g.*, *Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013) (Nathan, J.) (denying jurisdictional

---

[1] Although counsel have conferred, we have not seen each other's exhibits submitted with this letter.

[2] Plaintiffs have taken the position that our clients' deposition would take place in New York. Of course the Court is aware that "[t]here is a general presumption that a non-resident defendant's deposition will be held where he or she resides or works," *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 155 (S.D.N.Y. 1997), which means depositions would presumptively be in Venezuela. Plaintiffs have offered nothing to overcome this presumption, and our view is that issues related to depositions should wait until written discovery is concluded.

discovery when sworn declarations support corporate citizenship elsewhere and defendant, who was seeking removal, did not allege facts supporting jurisdiction); *see also DH Services, LLC v. Positive Impact, Inc.*, 12 Civ. 6153, ECF No. 23 (S.D.N.Y. Mar. 13, 2013) (Abrams, J.) (unpublished order attached) (finding depositions not appropriate at the early stages of jurisdictional discovery).

Finally, conducting full-blown merits discovery involving our clients and jurisdictional discovery at the same time is unwarranted. We see very little if any overlap between the issue of our clients' domiciles and the substantive merits, or lack thereof, of Plaintiffs' allegations. As the Court of Appeals has instructed, "generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but *until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery*." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (emphasis added).

Our view is that the limited jurisdictional discovery can be accomplished quickly and we propose that the Court set a deadline of 45 days from when we receive Plaintiffs' document requests and interrogatories for completion of all jurisdictional discovery. We would soon thereafter renew Defendants' motions to dismiss for lack of personal jurisdiction. In sum, it is our position that the parties complete limited jurisdictional discovery on the following schedule, after October 15, when Defendants propose to respond to Plaintiffs' document requests and interrogatories:

- On or before October 22, 2014, Plaintiffs notify Defendants of any depositions they intend to take, or additional discovery they request;

- The parties meet and confer and submit to the Court a joint submission on the status of discovery and any issues that require the Court's attention on or before October 29, 2014;

- To the extent that additional jurisdictional discovery is necessary, it is completed by November 14, 2014; and

- Defendants resubmit their renewed jurisdictional motion ten days after completion of jurisdictional discovery.

We believe this schedule best serves the Court's interest in having this matter decided in a timely fashion while compiling an adequate record to make an informed decision.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                              :

DH SERVICES, LLC,               :
                              :

                Plaintiff,     :
                              :

          -v-                 :

POSITIVE IMPACT, INC.,      :
                              :

                Defendant.  :
                              :
------------------------------------------------------------ X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/13/13

No. 12 Civ. 6153 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

      On February 28, 2013, the Court granted Plaintiff's request for limited jurisdictional

discovery and directed the parties to propose a discovery plan and schedule. The Court is in receipt

of Plaintiff's March 6, 2013 letter and Defendant's March 11, 2013 responsive letter outlining their

respective positions. It is hereby:

      ORDERED that Plaintiff may serve five (5) interrogatories and (5) document requests on

Defendant. No depositions are appropriate at this time. Plaintiff's inquiries shall be limited to the

discrete question of whether there is personal jurisdiction over Defendant pursuant to N.Y. CPLR

§§ 302(a)(1) or 302(a)(3).

      IT IS FURTHER ORDERED that Plaintiff's discovery requests shall be served by March

25, 2013. Defendant's responses shall be due by April 24, 2013 and any Amended Complaint shall

be filed by May 20, 2013.

SO ORDERED.

Dated:      March 13, 2013
             New York, New York

                                      Ronnie Abrams
                                      United States District Judge



March 6, 2013

BY HAND

The Honorable Ronnie Abrams
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   <u>DH Services, LLC v. Positive Impact, Inc.; 12-cv-06153 (RA)</u>

Dear Judge Abrams,

   This letter follows the February 28th phone conference in this matter.  In observance of your Honor's order, that the parties attempt to agree on a discovery plan, the parties conferred by telephone on March 1, 2013.  While the parties agreed that Plaintiff may serve Defendant five (5) interrogatories, we could not agree on either the amount of document requests, or whether depositions are appropriate at this time.

   Despite Plaintiff's counsel stating a number of the detailed requests itemized below, Defendant would not agree to allow more than four (4) document requests. Defendant asserted that Plaintiff should merely ask document requests tracked to statutory language, and trust Defendant to respond with appropriately detailed documentation.  This is unsatisfactory to Plaintiff, as likely to lead to further dispute about scope of Defendant's document production.  Neither did Defendant agree to allow any depositions.  In light of this unreasonable position held firmly by Defendant, Plaintiff requests the Court individually for leave to grant the below proposed jurisdictional discovery plan and scope, and schedule for amendment of the Complaint.

   Along with the five (5) interrogatories agreed by the parties, Plaintiff requests allowance of twenty-five (25) document requests, and the depositions of Paul Plate and Rick McMurtry.

   Defendant admitted in its previous letter to your Honor to having contacts and revenue from neighboring states (February 19, 2013 Letter from Def., p.1, 2), and asserted in its April 30, 2012, letter to Plaintiff that it "has used the mark continuously throughout the United States…to target gay men for the purpose of educating them about HIV." (Docket No. 12, Exh. D, ¶ 1.)  Therefore, Plaintiff reasonably seeks evidence as to the extent of Defendant's interstate commerce, contacts and revenue, particularly any contacts with the state of New York.  While Defendant would like Plaintiff and the court to accept the self-serving Declaration of Paul Plate as the only evidentiary production necessary to the court's analysis, that Declaration raises more questions than it answers, particularly in light of other evidence already located by Plaintiff.



Rodenbaugh
———— LAW ————

If the court will allow, then Plaintiff would make the following specific requests for production:

-   All documents regarding Defendant's outreach, including the "targeting" of gay men by Defendant in states outside of Georgia, as referred to in its April 30, 2012 letter.
-   All documents and records showing Defendant's out-of-state clients and from what state they are residents.
-   All documents referring to Defendant's advertising in states outside of Georgia and showing expenditure for those campaigns
-   All documents referring to or showing donations and "fee-for-service" payments Defendant has received from donors and clients located outside of Georgia, including via Defendant's website, which solicits online contributions from anyone, anywhere, including the state of New York.
-   All documents referring to or showing online inquiries made to or from Defendant, from or to persons or entities outside of Georgia, including from New York.
-   All documents referring to educational campaigns or other seminars or conferences initiated by or attended by Defendant in other states.
-   All documents referring to the Defendant's knowledge of the MR. gay pride event held annually in San Francisco.
-   All documents referring to Defendant's participation in gay pride or related events outside of Georgia.
-   All documents referring to federal grant awards obtained by Defendant, as mentioned in Defendant's public financial statements, and which presumably involve interstate commerce activities.
-   All documents regarding "federated funding", as mentioned in Defendant's public financial statements, and which presumably involves interstate commerce activities.
-   All documents referring to Defendant's interactions with the U.S. Department of Health and Human Services, as they must presumably involve interstate commerce.
-   All documents referring to Defendant's interactions with the U.S. Department of Housing and Urban Development, as they must presumably involve interstate commerce.
-   All documents regarding Defendant's "major federal programs" as mentioned in Defendant's public financial statements, and which presumably involve interstate commerce activities.
-   All documents regarding Defendant's out-of-state travel expenses, showing expenses, destination, and purpose of travel.
-   All documents referring to relationships or communications with organizations outside of Georgia, including contracts with such entities.



Examples of specific information Plaintiff seeks in a deposition of Paul Plate include:

- Why did Defendant make claim of national use in commerce, and now is retracting that statement when faced with the Complaint in New York?
- What relations has Defendant had with, or donations received from, New York or outside of Georgia in interstate commerce? (Note that his Declaration, ¶ 8 states that Defendant does not solicit business or donations in New York, but this belies the fact that its website accepts donations from anywhere without restriction, and does not account for business which it does not "solicit" from New York nor from any sort of business transacted with residents of any other state outside of Georgia.)
- What visits have representatives of Defendant made to New York and what was the purpose? (Note that his Declaration, ¶ 10, states only that representatives do not "regularly" visit New York in their official capacities.)
- What contracts or other relationships does Defendant have with organizations and individuals outside of Georgia?

Examples of specific information Plaintiff seeks in a deposition of Rick McMurtry include:

- Why did Rick McMurtry make the written claim of continuous business throughout the United States, and what was the factual basis for the claim?
- Why was McMurtry's April 30, 2012, letter sent on Time Warner letterhead, from Time Warner email servers presumably located in New York?

Plaintiff also proposes the following schedule:

- Jurisdictional discovery to be served by Plaintiff by April 1, 2013.
- Discovery responses and all documents served by Defendant by May 1, 2013.
- Depositions conducted no later than May 31, 2013, in Atlanta where Mr. Plate and Mr. McMurtry conduct business.
- Amended Complaint filed by June 21, 2013.
- Any Motion to Dismiss to be filed in accordance with F.R.C.P.

We greatly appreciate your Honor's attention to this matter, and the handling of this matter thus far via telephone conference as the most efficient means for all parties.

Kind regards,

By: _Mike Rodenbaugh_
Mike Rodenbaugh


**KILPATRICK
TOWNSEND**
ATTORNEYS AT LAW

KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
t 212 775 8700  f 212 775 8800

March 11, 2013

direct dial 212 775 8733
direct fax 212 775 8816
rpotter@kilpatricktownsend.com

**BY E-MAIL**
**Abrams_NYSDChambers@nysd.uscourts.gov**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

   Re:  *DH Services, LLC v. Positive Impact, Inc.*: 12-cv-06153 (RA)

Dear Judge Abrams,

   We submit this letter on behalf of Defendant Positive Impact, Inc. in accordance with the Court's telephonic order of February 28, 2013 and in response to Plaintiff DH Services, LLC's letter of March 6, 2013.

   In its March 6 letter, Plaintiff requests leave to take jurisdictional discovery comprising five interrogatories, 25 document requests, and two depositions—including one of Positive Impact's Atlanta-based pro bono counsel who is not party to, nor an attorney of record in, this lawsuit. Rather than allow Plaintiff to take such overbroad and intentionally burdensome discovery—for which it is unable to articulate any reasonable basis whatsoever—Positive Impact requests that, for the reasons below, Plaintiff's jurisdictional discovery be limited to five interrogatories and four document requests tied to the specific statute at issue.

   In an earlier letter to the Court, dated February 12, 2013, Plaintiff suggested that personal jurisdiction may exist over Positive Impact in New York pursuant either to CPLR §§ 302(a)(1), which requires a defendant to transact business in New York, or 302(a)(3), which similarly requires a defendant, among other things, to regularly do or solicit business in New York, or to derive substantial revenue from New York or otherwise from interstate or international commerce.

   These are the _only_ jurisdictional inquiries even allegedly at issue, and appropriate discovery (to the extent it is necessary at all) may be limited to four discrete interrogatory topics, each of which would have a corresponding request for related documents:

ATLANTA  AUGUSTA  CHARLOTTE  DENVER  DUBAI  NEW YORK  RALEIGH  SAN DIEGO  SAN FRANCISCO  SEATTLE
SHANGHAI  SILICON VALLEY  STOCKHOLM  TAIPEI  TOKYO  WALNUT CREEK  WASHINGTON  WINSTON-SALEM

The Honorable Ronnie Abrams
March 11, 2013
Page 2

(1) the identification of any business or other persistent course(s) of conduct engaged in by Positive Impact in New York (CPLR §§ 302(a)(1) and 302(a)(3)(i));

(2) the identification of any substantial revenue derived by Positive Impact from goods used or consumed or services rendered in New York (CPLR § 302(a)(3)(i));

(3) the identification of any substantial revenue derived by Positive Impact from interstate commerce, *i.e.* commerce outside of the State of Georgia (CPLR § 302(a)(3)(ii)); and

(4) the identification of any substantial revenue derived by Positive Impact from international commerce, *i.e.* commerce outside of the United States (CPLR § 302(a)(3)(ii)).

Per the Court's order, the parties conferred by telephone on this issue on March 1, 2013, and Positive Impact proposed the four interrogatories and four related document requests described above. Plaintiff instead sought five interrogatories,[1] 25 document requests and, broadening even the request it had made to the Court on the phone only a day before, now sought two depositions, including one from Positive Impact's Georgia-based pro bono counsel. Plaintiff refused to provide Positive Impact, even verbally by phone, with a specific list of its proposed requests or deposition topics.

In its March 6 letter, Plaintiff now articulates such topics. Notably, and in apparent concession that it needs nowhere near 25 document requests, Plaintiff can list only 15 such requests in its letter to the Court, the bulk of which are redundant, overly broad, and/or entirely irrelevant to any jurisdictional issues whatsoever. By way of limited example only, Plaintiff would proffer entirely irrelevant requests regarding Positive Impact's "knowledge of the MR. gay pride event held annually in San Francisco," Req. No. 7[2]; entirely overbroad requests seeking "*all* documents regarding [Positive Impact's] out-of-state travel," ostensibly for any purpose and at any time, Req. No. 14 (emphasis added); and five entirely redundant requests involving federal revenue allegedly obtained through interstate commerce, Req. Nos. 9-13. To the extent any of these requests seek legitimate and relevant jurisdictional discovery, they are subsumed within the four topics Positive Impact identified above.

Plaintiff's apparent strategy—to harass Positive Impact and delay any resolution of this action on the merits—is epitomized by its request for not one, but two depositions. Plaintiff can offer a total of only *six* proposed and entirely unnecessary topics in support of its request for *14 hours* of deposition testimony from Positive Impact's Paul Plate and from Rick McMurtry, an attorney at Turner in Atlanta who represents Positive Impact in a pro bono context in non-litigation matters. Notably, both of these individuals have already submitted sworn and uncontroverted declarations in support of the very points on which Plaintiff now allegedly seeks discovery [DKT 12, 18].

---

[1] To avoid dispute where possible, Positive Impact agreed to consent to five reasonable interrogatories.
[2] Plaintiff failed to number its proposed requests, so we refer to them in the order in which they are listed.

The Honorable Ronnie Abrams
March 11, 2013
Page 3

Of the four topics proposed for the deposition of Mr. Plate, the first is entirely irrelevant as to whether jurisdiction exists under the CPLR, and the remaining three can easily be covered by the interrogatories proposed by Positive Impact.[3] Plaintiff can offer only two facially irrelevant deposition topics for Mr. McMurtry, regarding statements made in an April 30, 2012 demand letter and, incredibly, whether that letter was sent through e-mail servers located in New York. These requests, and the claims underlying them, are entirely without merit, have already been addressed repeatedly, and at this point are plainly brought in bad faith.

As Positive Impact has already noted to the Court, Plaintiff has yet to introduce any legal authority to suggest that the location of an attorney has anything to do with jurisdiction, much less the location of the e-mail servers through which a demand letter was sent, and this argument remains entirely spurious. *See* DKT 17, Positive Impact's Reply Memorandum of Law § 1.A. Even were e-mail servers at all relevant, Mr. McMurtry's sworn declaration makes clear that his letter was sent through Turner Broadcasting servers—not "Time Warner" servers as Plaintiff continues to suggest without any basis whatsoever—and that such servers are located in Georgia, not New York. *See* DKT 18, ¶ 3. Moreover, and as Plaintiff's counsel is abundantly aware, Mr. McMurtry sent Plaintiff's counsel a follow-up letter—only 22 minutes after sending his initial demand—explaining that the letter should have been printed on the letterhead of Pro Bono Partnership of Atlanta, through which he represents Positive Impact. *See* DKT 18, ¶ 7.

Mr. McMurtry's demand letter alleged only that Positive Impact has "used" its mark throughout the United States, and nowhere alleged that Positive Impact transacted business in all fifty states. Use under the Lanham Act is distinct from transacting business or deriving revenue for jurisdictional purposes under the CPLR. As indicated during the February 28 telephonic conference with the Court, any possible assertion to the contrary is withdrawn. In light of its repeated demonstrations that this entire area of inquiry lacks any factual or legal basis of any kind, Positive Impact reserves all rights to seek a protective order and/or sanctions against Plaintiff's ongoing efforts to harass Positive Impact and Mr. McMurtry on these points.

Positive Impact proposes a schedule under which Plaintiff would serve its discovery requests by March 25, 2013 with Positive Impact's response due April 24, 2013, and any Amended Complaint would be filed by May 20, 2013.

We thank the Court for its attention to these issues.

Respectfully submitted,

Robert N. Potter

cc:   Michael Rodenbaugh, Esq.
      David D. Lin, Esq.

---

[3] To the extent the Court nonetheless allows for a deposition of Mr. Plate, we request that it be conducted in Atlanta to minimize the burden to Positive Impact.