Mark W. Smith
(212) 755-5220
msmith@svlaw.com

March 10, 2015

**BY ECF**

Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:     *The Honorable Otto J. Reich, et al. v. Betancourt Lopez, et al.*, No. 13-cv-5307

Dear Judge Oetken:

      We represent Plaintiffs, the Honorable Otto J. Reich and Otto Reich Associates, LLC, in the above-referenced matter.

      We write to apprise the Court of significant new legal developments, and an announcement from the United States government, concerning the deteriorating situation in Venezuela for opponents of the current Venezuelan government, or those perceived by the current regime to be its enemies. We request that the Court take judicial notice of these public developments and the United States government's view of Venezuela.

      As Plaintiffs demonstrated in their submissions in opposition to Defendants' Renewed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), it is impossible for Plaintiff Ambassador Reich to seek effective legal redress against Defendants (or against anyone) in Venezuela for many reasons. (*See* Declaration of Otto J. Reich, dated January 15, 2015; Plaintiffs' Memorandum of Law in Opposition to Defendants' Renewed Motions to Dismiss at 20-22; and Plaintiffs' Sur-Reply Memorandum of Law in Further Opposition to Defendants' Renewed Motions to Dismiss at 5-8.)

      Yesterday, March 9, 2015, the President of the United States issued an Executive Order sanctioning Venezuelan government officials. The White House reiterated its past condemnations of the extensive public corruption that is rampant in Venezuela, and noted that this corruption has been intensifying. The White House statement on the order specifically criticized "the Venezuelan government's efforts to escalate intimidation of its political opponents" and its increasing efforts at "criminalizing dissent." This escalating misconduct toward, and persecution of, critics of the Venezuelan government underscores the fact,

demonstrated in Plaintiffs' submissions, that Ambassador Reich would face almost certain imprisonment if he were required by this Court to enter Venezuela to pursue his claims. The Venezuelan government has already criminalized Ambassador Reich in retaliation for his criticism of the Venezuelan government and his efforts to expose the public corruption that the White House statement recognizes as an ever-increasing threat to the critics of the regime. The White House's recognition of the intensifying efforts by the Venezuelan government to "detain[] opponents and attempt[] to silence critics" and to "distract from its own actions by blaming the United States or other members of the international community for events inside Venezuela" pose a very real and serious threat to Ambassador Reich, especially if a ruling by this Court requires him to pursue his claims in Venezuela.

The Fact Sheet issued by the White House simultaneously with the Press Secretary's statement explains that, in addition to official government action, the Venezuelan government also utilizes numerous non-governmental actors to extrajudicially monitor, detain, physically abuse, torture and even kill opponents of the regime. The Fact Sheet also underscores the increasing levels of public corruption in Venezuela, including prosecutors, with the cooperation of the Venezuelan courts. The White House statement makes clear that Ambassador Reich could not receive a fair trial in Venezuela if this Court forces him to pursue his claims there.

For the convenience of the Court, we are enclosing copies of the Executive Order, the White House Press Secretary's statement, and the Fact Sheet issued by the White House. Plaintiffs respectfully request that the Court take judicial notice of these documents and the facts contained therein in connection with this matter and the *sub judice* motions.

Respectfully submitted,

Mark W. Smith

Enclosures

cc:    Frank H. Wohl, Esq. (Counsel for Leopoldo Alejandro Betancourt Lopez)
       Joseph A. DeMaria, Esq. (Counsel for Pedro Jose Trebbau Lopez)
       Shawn Rabin, Esq. (Counsel for Francisco D'Agostino Casado)

**The White House**

Office of the Press Secretary

For Immediate Release                                                                                      March 09, 2015

# Statement by the Press Secretary on Venezuela

Today President Obama issued a new Executive Order to implement and expand upon the Venezuela Defense of Human Rights and Civil Society Act of 2014. Venezuelan officials past and present who violate the human rights of Venezuelan citizens and engage in acts of public corruption will not be welcome here, and we now have the tools to block their assets and their use of U.S. financial systems.

We are deeply concerned by the Venezuelan government's efforts to escalate intimidation of its political opponents. Venezuela's problems cannot be solved by criminalizing dissent. We have consistently called on the Venezuelan government to release those it has unjustly jailed as well as to improve the climate of respect for human rights and fundamental freedoms, such as the freedoms of expression and peaceful assembly. These are essential to a functioning democracy, and the Venezuelan government has an obligation to protect these fundamental freedoms. The Venezuelan government should release all political prisoners, including dozens of students, opposition leader Leopoldo Lopez and Mayors Daniel Ceballos and Antonio Ledezma.

The only way to solve Venezuela's problems is through real dialogue – not detaining opponents and attempting to silence critics. The Venezuelan people deserve a government that lives up to its commitment to democracy, as articulated in the OAS Charter, the Inter American Democratic Charter, and other fundamental instruments related to democracy and human rights.

We've seen many times that the Venezuelan government tries to distract from its own actions by blaming the United States or other members of the international community for events inside Venezuela. These efforts reflect a lack of seriousness on the part of the Venezuelan government to deal with the grave situation it faces.

It is unfortunate that during a time when we have opened up engagement with every nation in the Americas, Venezuela has opted to go in the opposite direction. Despite the difficulties in our official relationship, the United States remains committed to maintaining our strong and lasting ties with the people of Venezuela and is open to improving our relationship with the Venezuelan government.

For Immediate Release                                                                                                     March 09, 2015

# FACT SHEET: Venezuela Executive Order

President Obama today issued a new Executive Order (E.O.) declaring a national emergency with respect to the unusual and extraordinary threat to the national security and foreign policy of the United States posed by the situation in Venezuela. The targeted sanctions in the E.O. implement the Venezuela Defense of Human Rights and Civil Society Act of 2014, which the President signed on December 18, 2014, and also go beyond the requirements of this legislation.

We are committed to advancing respect for human rights, safeguarding democratic institutions, and protecting the U.S. financial system from the illicit financial flows from public corruption in Venezuela.

This new authority is aimed at persons involved in or responsible for the erosion of human rights guarantees, persecution of political opponents, curtailment of press freedoms, use of violence and human rights violations and abuses in response to antigovernment protests, and arbitrary arrest and detention of antigovernment protestors, as well as the significant public corruption by senior government officials in Venezuela. The E.O. does not target the people or the economy of Venezuela.

Specifically, the E.O. targets those determined by the Department of the Treasury, in consultation with the Department of State, to be involved in:

- actions or policies that undermine democratic processes or institutions;
- significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014;
- actions that prohibit, limit, or penalize the exercise of freedom of expression or peaceful assembly; or
- public corruption by senior officials within the Government of Venezuela.

The E.O. also authorizes the Department of the Treasury, in consultation with the Department of State, to target any person determined:

- to be a current or former leader of an entity that has, or whose members have, engaged in any activity described in the E.O. or of an entity whose property and interests in property are blocked or frozen pursuant to the E.O.; or
- to be a current or former official of the Government of Venezuela;

Individuals designated or identified for the imposition of sanctions under this E.O., including the seven individuals that have been listed today in the Annex of this E.O., will have their property and interests in property in the United States blocked or frozen, and U.S. persons are prohibited from doing business with them. The E.O. also suspends the entry into the United States of individuals meeting the criteria for economic sanctions.

We will continue to work closely with others in the region to support greater political expression in Venezuela, and to encourage the Venezuelan government to live up to its shared commitment, as articulated in the OAS Charter, the Inter American Democratic Charter, and other relevant instruments related to democracy and human rights.

The President imposed sanctions on the following seven individuals listed in the Annex to the E.O.:

1.  **Antonio José Benavides Torres: Commander of the Strategic Region for the Integral Defense (REDI) of the Central Region of Venezuela's Bolivarian National Armed Forces (FANB) and former Director of Operations for Venezuela's Bolivarian National Guard (GNB).**

- Benavides Torres is a former leader of the GNB, an entity whose members have engaged in significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014. In various cities in Venezuela, members of the GNB used force against peaceful protestors and journalists, including severe physical violence, sexual assault, and firearms.

2.  **Gustavo Enrique González López: Director General of Venezuela's Bolivarian National Intelligence Service (SEBIN) and President of Venezuela's Strategic Center of Security and Protection of the Homeland (CESPPA).**

- González López is responsible for or complicit in, or responsible for ordering, controlling, or otherwise directing, or has participated in, directly or indirectly, significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014. As Director General of SEBIN, he was associated with the surveillance of Venezuelan government opposition leaders.
- Under the direction of González López, SEBIN has had a prominent role in the repressive actions against the civil population during the protests in Venezuela. In addition to causing numerous injuries, the personnel of SEBIN have committed hundreds of forced entries and extrajudicial detentions in Venezuela.

3.  **Justo José Noguera Pietri: President of the Venezuelan Corporation of Guayana (CVG), a state-owned entity, and former General Commander of Venezuela's Bolivarian National Guard (GNB).**

- Noguera Pietri is a former leader of the GNB, an entity whose members have engaged in significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014. In various cities in Venezuela, members of the GNB used excessive force to repress protestors and journalists, including severe physical violence, sexual assault, and firearms.

4.  **Katherine Nayarith Haringhton Padron: national level prosecutor of the 20th District Office of Venezuela's Public Ministry.**

- Haringhton Padron, in her capacity as a prosecutor, has charged several opposition members, including former National Assembly legislator Maria Corina Machado and, as of February 2015, Caracas Mayor Antonio Ledezma Diaz, with the crime of conspiracy related to alleged assassination/coup plots based on implausible - and in some cases fabricated - information. The evidence used in support of the charges against Machado and others was, at least in part, based on fraudulent emails.

5.  **Manuel Eduardo Pérez Urdaneta: Director of Venezuela's Bolivarian National Police.**

- Pérez Urdaneta is a current leader of the Bolivarian National Police, an entity whose members have engaged in significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014. For example, members of the National Police used severe physical force against peaceful protesters and journalists in various cities in Venezuela, including firing live ammunition.

6.  **Manuel Gregorio Bernal Martínez : Chief of the 31st Armored Brigade of Caracas of Venezuela's Bolivarian Army**

and former Director General of Venezuela's Bolivarian National Intelligence Service (SEBIN).

- Bernal Martínez was the head of SEBIN on February 12, 2014, when officials fired their weapons on protestors killing two individuals near the Attorney General's Office.

7.   **Miguel Alcides Vivas Landino: Inspector General of Venezuela's Bolivarian National Armed Forces (FANB) and former Commander of the Strategic Region for the Integral Defense (REDI) of the Andes Region of Venezuela's Bolivarian National Armed Forces.**

- Vivas Landino is responsible for or complicit in, or responsible for ordering, controlling, or otherwise directing, or has participated in, directly or indirectly, significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014.

# Executive Order – Blocking Property and Suspending Entry of Certain Persons Contributing to the Situation in Venezuela

EXECUTIVE ORDER

- - - - - - -

BLOCKING PROPERTY AND SUSPENDING ENTRY OF CERTAIN PERSONS CONTRIBUTING TO THE SITUATION IN VENEZUELA

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 *et seq.*) (NEA), the Venezuela Defense of Human Rights and Civil Society Act of 2014 (Public Law 113-278) (the "Venezuela Defense of Human Rights Act") (the "Act"), section 212(f) of the Immigration and Nationality Act of 1952 (8 U.S.C. 1182(f)) (INA), and section 301 of title 3, United States Code,

I, BARACK OBAMA, President of the United States of America, find that the situation in Venezuela, including the Government of Venezuela's erosion of human rights guarantees, persecution of political opponents, curtailment of press freedoms, use of violence and human rights violations and abuses in response to antigovernment protests, and arbitrary arrest and detention of antigovernment protestors, as well as the exacerbating presence of significant public corruption, constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States, and I hereby declare a national emergency to deal with that threat. I hereby order:

Section 1. (a) All property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in:

(i) the persons listed in the Annex to this order; and

(ii) any person determined by the Secretary of the Treasury, in consultation with the Secretary of State:

(A) to be responsible for or complicit in, or responsible for ordering, controlling, or otherwise directing, or to have participated in, directly or indirectly, any of the following in or in relation to Venezuela:

(1) actions or policies that undermine democratic processes or institutions; 2

(2) significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014;

(3) actions that prohibit, limit, or penalize the exercise of freedom of expression or peaceful assembly; or

(4) public corruption by senior officials within the Government of Venezuela;

(B) to be a current or former leader of an entity that has, or whose members have, engaged in any activity described in subsection (a)(ii)(A) of this section or of an entity whose property and interests in property are blocked pursuant to this order;

(C) to be a current or former official of the Government of Venezuela;

(D) to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of:

> (1) a person whose property and interests in property are blocked pursuant to this order; or

> (2) an activity described in subsection (a)(ii)(A) of this section; or

(E) to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this order.

(b) The prohibitions in subsection (a) of this section apply except to the extent provided by statutes, or in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order.

Sec. 2. I hereby find that the unrestricted immigrant and nonimmigrant entry into the United States of aliens determined to meet one or more of the criteria in subsection 1(a) of this order would be detrimental to the interests of the United States, and I hereby suspend entry into the United States, as immigrants or nonimmigrants, of such persons, except where the Secretary of State determines that the person's entry is in the national interest of the United States. This section shall not apply to an alien if admitting the alien into the United States is necessary to permit the United States to comply with the Agreement Regarding the Headquarters of the United Nations, signed at Lake Success June 26, 1947, and entered into force November 21, 1947, or other applicable international obligations. 3

Sec. 3. I hereby determine that the making of donations of the type of articles specified in section 203(b)(2) of IEEPA (50 U.S.C. 1702(b)(2)) by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to section 1 of this order would seriously impair my ability to deal with the national emergency declared in this order, and I hereby prohibit such donations as provided by section 1 of this order.

Sec. 4. The prohibitions in section 1 of this order include but are not limited to:

(a) the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order; and

(b) the receipt of any contribution or provision of funds, goods, or services from any such person.

Sec. 5. (a) Any transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this order is prohibited.

(b) Any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited.

Sec. 6. For the purposes of this order:

(a) the term "person" means an individual or entity;

(b) the term "entity" means a partnership, association, trust, joint venture, corporation, group, subgroup, or other organization;

(c) the term "United States person" means any United States citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United

States;

(d) the term "Government of Venezuela" means the Government of Venezuela, any political subdivision, agency, or instrumentality thereof, including the Central Bank of Venezuela, and any person owned or controlled by, or acting for or on behalf of, the Government of Venezuela.

Sec. 7. For those persons whose property and interests in property are blocked pursuant to this order who might have a constitutional presence in the United States, I find that because of the ability to transfer funds or other assets instantaneously, prior notice to such persons of measures to be taken pursuant to this order would render those measures ineffectual. I therefore determine that for these measures to be effective in addressing the national emergency declared in this order, there need be no prior notice of a listing or determination made pursuant to section 1 of this order.

Sec. 8. The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA and 4

section 5 of the Venezuela Defense of Human Rights Act, other than the authorities contained in sections 5(b)(1)(B) and 5(c) of that Act, as may be necessary to carry out the purposes of this order, with the exception of section 2 of this order, and the relevant provisions of section 5 of that Act. The Secretary of the Treasury may redelegate any of these functions to other officers and agencies of the United States Government consistent with applicable law. All agencies of the United States Government are hereby directed to take all appropriate measures within their authority to carry out the provisions of this order.

Sec. 9. The Secretary of State is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA, the INA, and section 5 of the Venezuela Defense of Human Rights Act, including the authorities set forth in sections 5(b)(1)(B), 5(c), and 5(d) of that Act, as may be necessary to carry out section 2 of this order and the relevant provisions of section 5 of that Act. The Secretary of State may redelegate any of these functions to other officers and agencies of the United States Government consistent with applicable law.

Sec. 10. The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to determine that circumstances no longer warrant the blocking of the property and interests in property of a person listed in the Annex to this order, and to take necessary action to give effect to that determination.

Sec. 11. The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to submit the recurring and final reports to the Congress on the national emergency declared in this order, consistent with section 401(c) of the NEA (50 U.S.C. 1641(c)) and section 204(c) of IEEPA (50 U.S.C. 1703(c)).

Sec. 12. This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

Sec. 13. This order is effective at 12:01 a.m. eastern daylight time on March 9, 2015.

BARACK OBAMA

**ANNEX**

1. Antonio José Benavides Torres [Commander of the Central Integral Strategic Defense Region of the National Armed Forces, former Director of Operations for the National Guard; born June 13, 1961]

2. Gustavo Enrique González López [Director General of the National Intelligence Service and President of the Strategic Center of Security and Protection of the Homeland; born November 2, 1960]

3. Justo José Noguera Pietri [President of the Venezuelan Corporation of Guayana, former General Commander of the National Guard; born March 15, 1961]

4. Katherine Nayarith Haringhton Padron [National Level Prosecutor of the 20th District Office of the Public Ministry; born December 5, 1971]

5. Manuel Eduardo Pérez Urdaneta [Director of the National Police; born May 26, 1962]

6. Manuel Gregorio Bernal Martínez [Chief of the 31st Armored Brigade of Caracas, former Director General of the National Intelligence Service; born July 12, 1965]

7. Miguel Alcides Vivas Landino [Inspector General of the National Armed Forces, former Commander of the Andes Integral Strategic Defense Region of the National Armed Forces; born July 8, 1961]