UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

THE HONORABLE OTTO J. REICH and,
OTTO REICH ASSOCIATES, LLC,

    Plaintiffs,

v.

LEOPOLDO ALEJANDRO BETANCOURT
LOPEZ, PEDRO JOSE TREBBAU LOPEZ,
and FRANCISCO D'AGOSTINO CASADO,

    Defendants.

No. 13 CV 5307 (JPO)

ECF CASE

## DECLARATION OF MARK W. SMITH, ESQ., WITH EXHIBITS, IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE THE COURT'S INTERIM SEALING ORDER AND UNSEAL DOCUMENTS PREVIOUSLY FILED UNDER SEAL

I, MARK W. SMITH, declare under the penalties of perjury under the laws of the United States of America that the below is true and correct:

1. I am an attorney duly admitted to practice before the courts of the State of New York and this Court, and a member of the law firm of Smith Valliere PLLC, attorneys for Plaintiffs the Honorable Otto J. Reich and Otto Reich Associates, LLC (together, "Plaintiffs") in the above-referenced action.

2. I make this declaration in support of Plaintiffs' Motion to Vacate the Court's Interim Sealing Order and Unseal Documents Previously Filed Under Seal.

3. Attached hereto as Exhibit 1 is a true and correct copy of the Court's November 13, 2014 Order.

4. In addition to the parties' submissions made in support of and in opposition to the Renewed Motions of Leopoldo Alejandro Betancourt Lopez and Pedro Jose Trebbau Lopez To

Dismiss For Lack Of Personal Jurisdiction Pursuant To Rule 12(b)(2) (the "Motions"), the parties made several related submissions under seal. *See, e.g.*, Mark W. Smith, Esq.'s letter to the Court dated November 26, 2014; F. Wohl's letter to the Court dated December 3, 2014; J. DeMaria's letter to the Court dated December 3, 2014; and Mark W. Smith, Esq.'s letter to the Court dated January 5, 2015. The Court issued related orders on or about December 4, 2014 and January 7, 2015. The Court may take judicial notice of all such submissions and orders.

5. Attached as Exhibit 2 are true and correct copies of: (i) the March 9, 2015 Fact Sheet: Venezuela Executive Order, issued by the White House Office of the Press Secretary; (ii) the March 9, 2015 Statement by the Press Secretary on Venezuela, issued by the White House Office of the Press Secretary; and (iii) the March 9, 2015 Executive Order – Blocking Property and Suspending Entry of Certain Persons Contributing to the Situation in Venezuela, issued by Barack Obama, President of the United States.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: New York, New York
       March 10, 2015

                                                            _____
                                                            MARK W. SMITH

# CERTIFICATE OF SERVICE

I hereby certify this 10th day of March, 2015, that I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to the following attorneys of record, and is available for viewing and downloading:

Frank H. Wohl, Esq.
Julia C. Green, Esq.
Lankler Siffert & Wohl
500 Fifth Avenue, 34th Floor
New York, NY 10110
*Attorneys for Defendant Leopoldo Alejandro Betancourt Lopez*

Joseph A. DeMaria, Esq.
Fox Rothschild LLP
200 South Biscayne Blvd.
Suite 3590
Miami, FL 33131
*Attorneys for Defendant Pedro Jose Trebbau Lopez*

Shawn Rabin, Esq.
Susman Godfrey, L.L.P
560 Lexington Avenue, 15th Floor
New York, NY 10022
*Attorneys for Defendant Francisco D'Agostino Casado*

Mark W. Smith

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
THE HONORABLE OTTO J. REICH and OTTO :
REICH ASSOCIATES, LLC,                                       :
                                         Plaintiffs,         :
                                                             :       13-CV-5307 (JPO)
          -v-                                                :
                                                             :       ORDER
LEOPOLDO ALEJANDRO BETANCOURT                                :
LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and :
FRANCISCO D'AGOSTINO CASADO,                                 :
                                         Defendants.         :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

   Defendants Leopoldo Alejandro Betancourt Lopez ("Betancourt") and Pedro Jose Trebbau Lopez ("Trebbau") have asked this Court to enter an order of confidentiality, a protective order limiting the scope of jurisdictional discovery, and an order quashing third-party subpoenas. Plaintiffs have asked the Court to adjourn their depositions of Betancourt and Trebbau, to extend the deadline for the close of discovery, and to compel production of certain documents. The parties dispute several specific issues regarding the proper scope and timing of jurisdictional discovery. Those issues are addressed in turn.

   As a preliminary matter, the parties are ordered to meet and confer for the purpose of reaching an agreement on a confidentiality regime. Because of the sensitivity of the information relating to this issue, the parties shall agree to a procedure permitting the appropriate designation of documents as confidential. Personal contact information, financial information, and the like are properly designated as confidential. Until the parties reach an agreement on confidentiality, they shall treat as confidential all information obtained in this phase of discovery—i.e., all such information will be used only for purposes of this litigation and will not be disclosed to third parties, and the parties shall file any papers containing such information under seal.

The Court hereby makes the following rulings regarding the production of documents.

- *Banking records*: Plaintiffs seek production of Betancourt's and Trebbau's personal banking records. Given the sensitivity of these records and the limited nature of jurisdictional discovery, Betancourt and Trebbau's request for a protective order limiting Plaintiffs' access to this information is granted. Plaintiffs are not entitled to production of Betancourt's and Trebbau's bank or credit card statements.

- *Time-frame*: Plaintiffs seek production of documents that were generated after the filing of this suit. Defendants have refused to produce them. The mere fact that a document was created after the filing of the suit does not render it immune from discovery. Defendants are ordered to produce responsive and non-privileged documents, regardless of when they were generated.

- *Derwick Associates*: Plaintiffs have sought banking documents and other documents regarding Derwick Associates. These documents must be produced only insofar as they are relevant to Betancourt's and Trebbau's *personal* contacts with New York.

- *Family members*: Plaintiffs seeks documents from several members of Betancourt's and Trebbau's families. Plaintiffs are not entitled to any documents from any members of Betancourt's and Trebbau's families.

- *Third-party subpoenas*: Plaintiffs seek documents from a number of third parties located throughout the country. Betancourt and Trebbau object on the ground that some of these third parties are not located in New York. The mere fact that the custodians of documents are not located in New York does not render those documents irrelevant. To the extent that Betancourt and Trebbau move to quash those third-party subpoenas on those grounds, their motion is denied.

- *Travieso*: Plaintiffs seek documents related to Betancourt's personal banker, Eduardo Travieso. Betancourt has refused to produce those documents. Betancourt is hereby ordered to produce documents concerning his meetings and business with Travieso to the extent that those documents are relevant to Betancourt's contacts with the State of New York.
- *D'Agostino*: Plaintiffs seek documents regarding Francisco D'Agostino Casado ("D'Agostino"). Betancourt and Trebbau are hereby ordered to produce documents regarding their dealings with D'Agostino in New York.
- *Other states*: Finally, Plaintiffs seek information regarding Betancourt's and Trebbau's contacts with other states. Plaintiffs contend that Betancourt's and Trebbau's contacts with other states are relevant because they suggest a comparison with their time in New York. The Court concludes that this request is overbroad. Betancourt and Trebbau shall be required to produce information regarding their contacts with other states only insofar as such information is relevant to their contacts with the State of New York.

Plaintiffs have requested an adjournment of Betancourt's and Trebbau's depositions and an extension of the deadline for discovery. The parties may reschedule the depositions to a date no later than December 1, 2014. Betancourt and Trebbau are directed to complete document production by November 24, 2014. Betancourt and Trebbau are directed to file their renewed motion to dismiss on personal jurisdiction grounds by December 14, 2014.

Plaintiffs are hereby reminded of their obligation to provide notice of third-party subpoenas as required by the Federal Rules of Civil Procedure. They are similarly reminded that discovery at this stage is, in fact, limited to the issue of whether Betancourt and Trebbau are

subject to the jurisdiction of this Court. Thus, discovery should be limited to their personal contacts with the State of New York.

    SO ORDERED.

Dated: November 13, 2014
       New York, New York

                                              J. PAUL OETKEN
                                         United States District Judge

# EXHIBIT 2

The White House

Office of the Press Secretary

For Immediate Release                                                                                                           March 09, 2015

# Statement by the Press Secretary on Venezuela

Today President Obama issued a new Executive Order to implement and expand upon the Venezuela Defense of Human Rights and Civil Society Act of 2014. Venezuelan officials past and present who violate the human rights of Venezuelan citizens and engage in acts of public corruption will not be welcome here, and we now have the tools to block their assets and their use of U.S. financial systems.

We are deeply concerned by the Venezuelan government's efforts to escalate intimidation of its political opponents. Venezuela's problems cannot be solved by criminalizing dissent. We have consistently called on the Venezuelan government to release those it has unjustly jailed as well as to improve the climate of respect for human rights and fundamental freedoms, such as the freedoms of expression and peaceful assembly. These are essential to a functioning democracy, and the Venezuelan government has an obligation to protect these fundamental freedoms. The Venezuelan government should release all political prisoners, including dozens of students, opposition leader Leopoldo Lopez and Mayors Daniel Ceballos and Antonio Ledezma.

The only way to solve Venezuela's problems is through real dialogue – not detaining opponents and attempting to silence critics. The Venezuelan people deserve a government that lives up to its commitment to democracy, as articulated in the OAS Charter, the Inter American Democratic Charter, and other fundamental instruments related to democracy and human rights.

We've seen many times that the Venezuelan government tries to distract from its own actions by blaming the United States or other members of the international community for events inside Venezuela. These efforts reflect a lack of seriousness on the part of the Venezuelan government to deal with the grave situation it faces.

It is unfortunate that during a time when we have opened up engagement with every nation in the Americas, Venezuela has opted to go in the opposite direction. Despite the difficulties in our official relationship, the United States remains committed to maintaining our strong and lasting ties with the people of Venezuela and is open to improving our relationship with the Venezuelan government.

The White House
Office of the Press Secretary

For Immediate Release                                                                                                              March 09, 2015

# FACT SHEET: Venezuela Executive Order

President Obama today issued a new Executive Order (E.O.) declaring a national emergency with respect to the unusual and extraordinary threat to the national security and foreign policy of the United States posed by the situation in Venezuela. The targeted sanctions in the E.O. implement the Venezuela Defense of Human Rights and Civil Society Act of 2014, which the President signed on December 18, 2014, and also go beyond the requirements of this legislation.

We are committed to advancing respect for human rights, safeguarding democratic institutions, and protecting the U.S. financial system from the illicit financial flows from public corruption in Venezuela.

This new authority is aimed at persons involved in or responsible for the erosion of human rights guarantees, persecution of political opponents, curtailment of press freedoms, use of violence and human rights violations and abuses in response to antigovernment protests, and arbitrary arrest and detention of antigovernment protestors, as well as the significant public corruption by senior government officials in Venezuela. The E.O. does not target the people or the economy of Venezuela.

Specifically, the E.O. targets those determined by the Department of the Treasury, in consultation with the Department of State, to be involved in:

- actions or policies that undermine democratic processes or institutions;
- significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014;
- actions that prohibit, limit, or penalize the exercise of freedom of expression or peaceful assembly; or
- public corruption by senior officials within the Government of Venezuela.

The E.O. also authorizes the Department of the Treasury, in consultation with the Department of State, to target any person determined:

- to be a current or former leader of an entity that has, or whose members have, engaged in any activity described in the E.O. or of an entity whose property and interests in property are blocked or frozen pursuant to the E.O.; or
- to be a current or former official of the Government of Venezuela;

Individuals designated or identified for the imposition of sanctions under this E.O., including the seven individuals that have been listed today in the Annex of this E.O., will have their property and interests in property in the United States blocked or frozen, and U.S. persons are prohibited from doing business with them. The E.O. also suspends the entry into the United States of individuals meeting the criteria for economic sanctions.

We will continue to work closely with others in the region to support greater political expression in Venezuela, and to encourage the Venezuelan government to live up to its shared commitment, as articulated in the OAS Charter, the Inter American Democratic Charter, and other relevant instruments related to democracy and human rights.

The President imposed sanctions on the following seven individuals listed in the Annex to the E.O.:

1.  **Antonio José Benavides Torres: Commander of the Strategic Region for the Integral Defense (REDI) of the Central Region of Venezuela's Bolivarian National Armed Forces (FANB) and former Director of Operations for Venezuela's Bolivarian National Guard (GNB).**

- Benavides Torres is a former leader of the GNB, an entity whose members have engaged in significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014. In various cities in Venezuela, members of the GNB used force against peaceful protestors and journalists, including severe physical violence, sexual assault, and firearms.

2.  **Gustavo Enrique González López: Director General of Venezuela's Bolivarian National Intelligence Service (SEBIN) and President of Venezuela's Strategic Center of Security and Protection of the Homeland (CESPPA).**

- González López is responsible for or complicit in, or responsible for ordering, controlling, or otherwise directing, or has participated in, directly or indirectly, significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014. As Director General of SEBIN, he was associated with the surveillance of Venezuelan government opposition leaders.
- Under the direction of González López, SEBIN has had a prominent role in the repressive actions against the civil population during the protests in Venezuela. In addition to causing numerous injuries, the personnel of SEBIN have committed hundreds of forced entries and extrajudicial detentions in Venezuela.

3.  **Justo José Noguera Pietri: President of the Venezuelan Corporation of Guayana (CVG), a state-owned entity, and former General Commander of Venezuela's Bolivarian National Guard (GNB).**

- Noguera Pietri is a former leader of the GNB, an entity whose members have engaged in significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014. In various cities in Venezuela, members of the GNB used excessive force to repress protestors and journalists, including severe physical violence, sexual assault, and firearms.

4.  **Katherine Nayarith Haringhton Padron: national level prosecutor of the 20th District Office of Venezuela's Public Ministry.**

- Haringhton Padron, in her capacity as a prosecutor, has charged several opposition members, including former National Assembly legislator Maria Corina Machado and, as of February 2015, Caracas Mayor Antonio Ledezma Diaz, with the crime of conspiracy related to alleged assassination/coup plots based on implausible - and in some cases fabricated - information. The evidence used in support of the charges against Machado and others was, at least in part, based on fraudulent emails.

5.  **Manuel Eduardo Pérez Urdaneta: Director of Venezuela's Bolivarian National Police.**

- Pérez Urdaneta is a current leader of the Bolivarian National Police, an entity whose members have engaged in significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014. For example, members of the National Police used severe physical force against peaceful protesters and journalists in various cities in Venezuela, including firing live ammunition.

6.  **Manuel Gregorio Bernal Martínez : Chief of the 31st Armored Brigade of Caracas of Venezuela's Bolivarian Army**

and former Director General of Venezuela's Bolivarian National Intelligence Service (SEBIN).

- Bernal Martínez was the head of SEBIN on February 12, 2014, when officials fired their weapons on protestors killing two individuals near the Attorney General's Office.

7. **Miguel Alcides Vivas Landino: Inspector General of Venezuela's Bolivarian National Armed Forces (FANB) and former Commander of the Strategic Region for the Integral Defense (REDI) of the Andes Region of Venezuela's Bolivarian National Armed Forces.**

- Vivas Landino is responsible for or complicit in, or responsible for ordering, controlling, or otherwise directing, or has participated in, directly or indirectly, significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014.

# Executive Order – Blocking Property and Suspending Entry of Certain Persons Contributing to the Situation in Venezuela

EXECUTIVE ORDER

-------

BLOCKING PROPERTY AND SUSPENDING ENTRY OF CERTAIN PERSONS CONTRIBUTING TO THE SITUATION IN VENEZUELA

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.) (NEA), the Venezuela Defense of Human Rights and Civil Society Act of 2014 (Public Law 113-278) (the "Venezuela Defense of Human Rights Act") (the "Act"), section 212(f) of the Immigration and Nationality Act of 1952 (8 U.S.C. 1182(f)) (INA), and section 301 of title 3, United States Code,

I, BARACK OBAMA, President of the United States of America, find that the situation in Venezuela, including the Government of Venezuela's erosion of human rights guarantees, persecution of political opponents, curtailment of press freedoms, use of violence and human rights violations and abuses in response to antigovernment protests, and arbitrary arrest and detention of antigovernment protestors, as well as the exacerbating presence of significant public corruption, constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States, and I hereby declare a national emergency to deal with that threat. I hereby order:

Section 1. (a) All property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in:

    (i) the persons listed in the Annex to this order; and

    (ii) any person determined by the Secretary of the Treasury, in consultation with the Secretary of State:

        (A) to be responsible for or complicit in, or responsible for ordering, controlling, or otherwise directing, or to have participated in, directly or indirectly, any of the following in or in relation to Venezuela:

        (1) actions or policies that undermine democratic processes or institutions; 2

        (2) significant acts of violence or conduct that constitutes a serious abuse or violation of human rights, including against persons involved in antigovernment protests in Venezuela in or since February 2014;

        (3) actions that prohibit, limit, or penalize the exercise of freedom of expression or peaceful assembly; or

        (4) public corruption by senior officials within the Government of Venezuela;

(B) to be a current or former leader of an entity that has, or whose members have, engaged in any activity described in subsection (a)(ii)(A) of this section or of an entity whose property and interests in property are blocked pursuant to this order;

(C) to be a current or former official of the Government of Venezuela;

(D) to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of:

>  (1) a person whose property and interests in property are blocked pursuant to this order; or

>  (2) an activity described in subsection (a)(ii)(A) of this section; or

(E) to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this order.

(b) The prohibitions in subsection (a) of this section apply except to the extent provided by statutes, or in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order.

Sec. 2. I hereby find that the unrestricted immigrant and nonimmigrant entry into the United States of aliens determined to meet one or more of the criteria in subsection 1(a) of this order would be detrimental to the interests of the United States, and I hereby suspend entry into the United States, as immigrants or nonimmigrants, of such persons, except where the Secretary of State determines that the person's entry is in the national interest of the United States. This section shall not apply to an alien if admitting the alien into the United States is necessary to permit the United States to comply with the Agreement Regarding the Headquarters of the United Nations, signed at Lake Success June 26, 1947, and entered into force November 21, 1947, or other applicable international obligations. 3

Sec. 3. I hereby determine that the making of donations of the type of articles specified in section 203(b)(2) of IEEPA (50 U.S.C. 1702(b)(2)) by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to section 1 of this order would seriously impair my ability to deal with the national emergency declared in this order, and I hereby prohibit such donations as provided by section 1 of this order.

Sec. 4. The prohibitions in section 1 of this order include but are not limited to:

(a) the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order; and

(b) the receipt of any contribution or provision of funds, goods, or services from any such person.

Sec. 5. (a) Any transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this order is prohibited.

(b) Any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited.

Sec. 6. For the purposes of this order:

(a) the term "person" means an individual or entity;

(b) the term "entity" means a partnership, association, trust, joint venture, corporation, group, subgroup, or other organization;

(c) the term "United States person" means any United States citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United

States;

(d) the term "Government of Venezuela" means the Government of Venezuela, any political subdivision, agency, or instrumentality thereof, including the Central Bank of Venezuela, and any person owned or controlled by, or acting for or on behalf of, the Government of Venezuela.

Sec. 7. For those persons whose property and interests in property are blocked pursuant to this order who might have a constitutional presence in the United States, I find that because of the ability to transfer funds or other assets instantaneously, prior notice to such persons of measures to be taken pursuant to this order would render those measures ineffectual. I therefore determine that for these measures to be effective in addressing the national emergency declared in this order, there need be no prior notice of a listing or determination made pursuant to section 1 of this order.

Sec. 8. The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA and 4

section 5 of the Venezuela Defense of Human Rights Act, other than the authorities contained in sections 5(b)(1)(B) and 5(c) of that Act, as may be necessary to carry out the purposes of this order, with the exception of section 2 of this order, and the relevant provisions of section 5 of that Act. The Secretary of the Treasury may redelegate any of these functions to other officers and agencies of the United States Government consistent with applicable law. All agencies of the United States Government are hereby directed to take all appropriate measures within their authority to carry out the provisions of this order.

Sec. 9. The Secretary of State is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA, the INA, and section 5 of the Venezuela Defense of Human Rights Act, including the authorities set forth in sections 5(b)(1)(B), 5(c), and 5(d) of that Act, as may be necessary to carry out section 2 of this order and the relevant provisions of section 5 of that Act. The Secretary of State may redelegate any of these functions to other officers and agencies of the United States Government consistent with applicable law.

Sec. 10. The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to determine that circumstances no longer warrant the blocking of the property and interests in property of a person listed in the Annex to this order, and to take necessary action to give effect to that determination.

Sec. 11. The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to submit the recurring and final reports to the Congress on the national emergency declared in this order, consistent with section 401(c) of the NEA (50 U.S.C. 1641(c)) and section 204(c) of IEEPA (50 U.S.C. 1703(c)).

Sec. 12. This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

Sec. 13. This order is effective at 12:01 a.m. eastern daylight time on March 9, 2015.

BARACK OBAMA

# ANNEX

1. Antonio José Benavides Torres [Commander of the Central Integral Strategic Defense Region of the National Armed Forces, former Director of Operations for the National Guard; born June 13, 1961]

2. Gustavo Enrique González López [Director General of the National Intelligence Service and President of the Strategic Center of Security and Protection of the Homeland; born November 2, 1960]

3. Justo José Noguera Pietri [President of the Venezuelan Corporation of Guayana, former General Commander of the National Guard; born March 15, 1961]

4. Katherine Nayarith Haringhton Padron [National Level Prosecutor of the 20th District Office of the Public Ministry; born December 5, 1971]

5. Manuel Eduardo Pérez Urdaneta [Director of the National Police; born May 26, 1962]

6. Manuel Gregorio Bernal Martínez [Chief of the 31st Armored Brigade of Caracas, former Director General of the National Intelligence Service; born July 12, 1965]

7. Miguel Alcides Vivas Landino [Inspector General of the National Armed Forces, former Commander of the Andes Integral Strategic Defense Region of the National Armed Forces; born July 8, 1961]