UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE HONORABLE OTTO J. REICH and OTTO REICH ASSOCIATES, LLC,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>LEOPOLDO ALEJANDRO BETANCOURT LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and FRANCISCO D'AGOSTINO CASADO,<br><br>　　　　　　　Defendants. | **Defendants' Public Filing**<br><br>~~SEALED DOCUMENT~~<br><br>Civil Action No. 13 CV 5307 (PJO) |

# DEFENDANT BETANCOURT LOPEZ'S
# MEMORANDUM OF LAW IN SUPPORT OF THE RENEWED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue, 34th Floor
New York, N.Y. 10110
(212) 921-8399
*Attorneys for Defendant*
*Leopoldo Alejandro Betancourt Lopez*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS ........................................................................................................1

    I.      The Court's August 18, 2014 Ruling................................................................1

    II.     The Jurisdictional Discovery ............................................................................2

          a.      Mr. Betancourt's Caracas Domicile .........................................................2

          b.      Mr. Betancourt's Limited New York Contacts .........................................4

ARGUMENT..............................................................................................................................6

The State Law Claims Against Defendant Betancourt Should Be Dismissed
Because Jurisdictional Discovery Has Established That He Is Not Subject To
Personal Jurisdiction In New York............................................................................................6

CONCLUSION .........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of India v. Subramanian,*
  06 CIV. 2026, 2007 WL 1424668 (S.D.N.Y. May 15, 2007) ......................................................8

*Bhatti v. Pettigrew,*
  11 CIV. 1044, 2012 WL 1107650 (S.D.N.Y. Apr. 3, 2012) ......................................................8

*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014) ..............................................................................................................1

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,*
  722 F.3d 81 (2d Cir. 2013) ......................................................................................................6

*Finkelstein v. Wachtel,*
  00 CIV. 2672, 2003 WL 1918309 (S.D.N.Y. Apr. 21, 2003) ...................................................8

*Gutierrez v. Fox,*
  141 F.3d 425 (2d Cir. 1998) ....................................................................................................8

*Henderson v. FLOORGRAPHICS, Inc.,*
  153 F. Supp. 2d 133 (D. Conn. 2001) .....................................................................................9

*Hicks v. Brophy,*
  839 F. Supp. 948 (D. Conn. 1993) ......................................................................................7, 9

*MacDermid, Inc. v. Deiter,*
  702 F.3d 725 (2d Cir. 2012) ....................................................................................................6

*In re Methyl Tertiary butyl Ether (MTBE) Products Liability Litig.,*
  07 CIV. 10470, 2014 WL 1778984 (S.D.N.Y. May 5, 2014) ..................................................6

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
  84 F.3d 560 (2d Cir. 1996) ......................................................................................................3

*Nat'l Artists Mgmt. Co. v. Weaving,*
  769 F. Supp. 1224 (S.D.N.Y. 1991) ................................................................................7, 8, 9

*Palazzo ex rel. Delmage v. Corio,*
  232 F.3d 38 (2d Cir. 2000) ...................................................................................................7, 8

*Rosario v. I.N.S.,*
  962 F.2d 220 (2d Cir. 1992) ....................................................................................................7

**Rules and Other Authorities**

Chambers & Partners, http://www.chambersandpartners.com/chambers-latin-
    america-awards-for-excellence-2011 ............................................................................9

CPLR 302 ..............................................................................................................................2

Fed. R. Civ. P. 12(b)(2) ........................................................................................................1

John Glover, *New York Strips London of Mantle as World's Top Financial Center*,
    Bloomberg News (Mar. 16, 2014), http://www.bloomberg.com/news/2014-03-
    15/new-york-steals-london-s-mantle-as-world-s-top-financial-center.html ...............9

## PRELIMINARY STATEMENT

Defendant Leopoldo Alejandro Betancourt Lopez submits this Memorandum in support of his renewed motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

The only issue left for this Court to determine is whether Mr. Betancourt was domiciled in New York when this case began. The extensive jurisdictional discovery that Plaintiffs have conducted confirms that Mr. Betancourt has never been a New York domiciliary. At all relevant times, Mr. Betancourt's home and domicile have been in Caracas, Venezuela, where he continues to live today. The remaining claims against Mr. Betancourt must be dismissed.

## STATEMENT OF FACTS

### I. The Court's August 18, 2014 Ruling

Plaintiffs, Otto Reich and Otto Reich Associates, LLC, initiated this action on July 30, 2013. Plaintiffs filed the First Amended Complaint on January 13, 2014. Dkt. No. 29. By Opinion and Order dated August 18, 2014, the Court granted Defendants Betancourt's and Trebbau's motion in part, dismissing Plaintiffs' RICO claims and civil conspiracy claim (Claims I, II and VII) for failure to state a claim. Dkt. No. 59 ("Op."). The Court denied the motion to dismiss the remaining state law claims (Claims III-VI), granting Plaintiffs' request for limited jurisdictional discovery, even though it found that Plaintiffs had failed to establish a *prima facie* case of personal jurisdiction.

In addressing its jurisdiction, the Court concluded that it would only have personal jurisdiction over Mr. Betancourt for the remaining claims if Mr. Betancourt were domiciled in New York. Applying the Supreme Court's recent precedent in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the Court ruled that Plaintiffs could not establish general jurisdiction based on any

exception to the domicile requirement. Op. 25-26. The Court also considered and rejected Plaintiffs' claims for specific jurisdiction under New York's long-arm statute, CPLR 302. *See* Op. 26-29. On the issue of domicile, however, the Court found that it did not have enough information to determine Betancourt's or Trebbau's domicile. Op. 24.

The Court granted Plaintiffs' request that they be allowed to conduct "limited" jurisdictional discovery. Op. 30. The Court explained that jurisdictional discovery would establish where Defendants Betancourt and Trebbau were domiciled. *Id.*

## II. The Jurisdictional Discovery

In the four months since the Court issued its opinion, Plaintiffs have conducted extensive jurisdictional discovery. Defendants Betancourt and Trebbau each responded to two sets of interrogatories and 119 document requests. Plaintiffs deposed Betancourt, Trebbau, and Defendant Francisco D'Agostino Casado. They also issued subpoenas to 48 nonparties, collecting over 10,000 pages of documents from Defendants and third parties.

### a. Mr. Betancourt's Caracas Domicile

The jurisdictional discovery established beyond question that Mr. Betancourt has been at all relevant times a domiciliary of Venezuela. The evidence gathered by Plaintiffs—including, among other items, travel records, immigration records, tax records, real estate records, and voting records—reflects Mr. Betancourt's extensive contacts with Caracas, Venezuela.

Caracas is where Mr. Betancourt was born and raised, and at all times, Mr. Betancourt has considered Caracas to be his home and domicile. (Declaration of Frank H. Wohl, Dec. 23, 2014 ("Wohl Decl."), Ex. 1, at 13-15.) At the time that this lawsuit was filed, Mr. Betancourt owned

2

two residential properties in Caracas, one of which he lived in and one of which he rented out.[1] (Wohl Decl. Ex. 1, at 31.) For years, Mr. Betancourt has also handled the maintenance and bills for his family home in Caracas, which he visits weekly if not daily. (Wohl Decl. Ex. 1, at 95.) Mr. Betancourt votes in Caracas—records reflect that he voted there 19 times in the two and a half years preceding the initiation of this action. (Wohl Decl. Ex. 2, at Ex. A.) When this lawsuit was filed, Mr. Betancourt belonged to a social club in Caracas, had been seeing doctors in Caracas, and had health and life insurance from companies in Caracas. (Wohl Decl. Ex. 4; Wohl Decl. Ex. 1, at 115-116; Wohl Decl. Ex. 10, at 5.) Mr. Betancourt has filed tax returns and paid income tax in Caracas. (Wohl Decl. Ex. 1, at 149-150.) At all relevant times, Mr. Betancourt's business, Derwick Associates, has been headquartered in Caracas, where has maintained his office. (Wohl Decl. Ex. 1, at 18, 123.) Mr. Betancourt has had accounts with three different banks in Caracas and a credit card through a fourth. (Wohl Decl. Ex. 7, Resp. to Interrogatory No. 2; Wohl Decl. Ex. 1, at 141-143.) He has employed a property manager based in Caracas. (Wohl Decl. Ex. 1, at 19.) He has used an accountant in Caracas. (Wohl Decl. Ex. 1, at 18.) Mr. Betancourt has owned multiple cars in Caracas. (Wohl Decl. Ex. 8)

At all relevant times, Mr. Betancourt has held a Venezuelan driver's license. (Wohl Decl. Ex. 2, at Ex. C.) He has had passports from Venezuela and Italy. (Wohl Decl. Ex. 1, at 38.)

Mr. Betancourt's wife has lived in Caracas. (Wohl Decl. Ex. 1, at 94.) So have his brothers. (Wohl Decl. Ex. 1, at 97.)

---

[1] In general jurisdiction cases, the relevant time for consideration is a reasonable period up to and including the date the suit was filed. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996).

### b. Mr. Betancourt's Limited New York Contacts

Mr. Betancourt has never been a domiciliary of New York. From January 1, 2011 until Plaintiffs filed their complaint on July 30, 2013—a period of 941 days—Mr. Betancourt spent a sum total of 42 nights (under 5%) in New York. (Wohl Decl. Ex. 5, Resp. to Interrogatory No. 5; Wohl Decl. Ex. 6, Supp. Resp. to Interrogatory No. 5.) When he traveled to New York, Mr. Betancourt did so on a tourist visa. (Wohl Decl. Ex. 1, at 147.) Mr. Betancourt does not work in New York. (Wohl Decl. Ex. 1, at 78; Wohl Decl. Ex. 9, at 109.) He has never voted in New York, paid income tax in New York, or filed tax returns in New York. (Wohl Decl. Ex. 2, at ¶ 10; Wohl Decl. Ex. 1, at 37-38, 181.) He has never seen any doctors or dentists in New York. (Wohl Decl. Ex. 1, at 77.) He has never had health or life insurance from New York, or belonged to any clubs in New York. (Wohl Decl. Ex. 1, at 115-16, 181.) He has no cars in New York and has never had a New York driver's license. (Wohl Decl. Ex. 2, at ¶ 10.) None of his immediate family owns any residential property in New York. (Wohl Decl. Ex. 1, at 92.) Contrary to what is alleged in the Amended Complaint, he never conducted business from 450 Park Avenue. (Wohl Decl. Ex. 2, at ¶ 14.)

When Plaintiffs initiated this lawsuit, Mr. Betancourt's New York contacts consisted of: 1) the ownership of an apartment, which he acquired for vacation and investment purposes in 2010 and renovated and furnished thereafter; 2) a banking relationship with J.P. Morgan; and 3) past or current relationships with three New York law firms. (Wohl Decl. Ex. 1, at 21-22, 27, 29-30, 161.)

<u>Apartment</u>. At all times, Mr. Betancourt considered the New York apartment a vacation home; he never intended to live at the apartment permanently. (Wohl Decl. Ex. 1, 161-62.) Mr.

Betancourt's primary house is in Caracas, Venezuela. He also owns vacation homes in Paris, Madrid, and Florida. (Wohl Decl. Ex. 2, at ¶ 12.)

J.P. Morgan Accounts. Mr. Betancourt chose to bank with J.P. Morgan because of its reputation as a global bank and because of J.P. Morgan's efforts to attract customers in Latin America. (Wohl Decl. Ex. 1, at 83.) He personally held an account there and owned certain special purpose investment vehicles that held bank accounts with J.P. Morgan. (Wohl Decl. Ex. 1, at 44, 46, 55.) In 2012, J.P. Morgan informed Defendant Trebbau that it had decided not to do business with individuals and entities in Venezuela, and over time Mr. Betancourt moved the majority of the assets that he had held at J.P. Morgan to a bank outside the United States. (Wohl Decl. Ex. 1, at 51-52, 54.) Before this change in 2012, Mr. Betancourt held about 20 to 38% of his net worth in assets and bank accounts in New York. (Wohl Decl. Ex. 1, at 50.) Mr. Betancourt also held bank accounts in Europe, Canada, and Venezuela, and he invested in real property and private companies in Europe, Latin America, and Africa. (Wohl Decl. Ex. 1, at 60, 62, 64-65, 141-43.)

Lawyers. Prior to this lawsuit, Mr. Betancourt had directly or indirectly worked with three law firms in New York. The real estate lawyer, David Levine of the law firm Platte, Klarsfeld, Levine & Lachtman, LLP, represented Mr. Betancourt in connection with the acquisition of his New York vacation apartment in 2010. (Wohl Decl. Ex. 1, at 24, 27.) In 2012, Mr. Betancourt and others hired Kasowitz Benson Torres & Friedman LLP, a firm with offices in New York, Florida and seven other locations, to represent Derwick Associates in connection with a defamation claim, which was ultimately litigated and settled in Florida. (Wohl Decl. Ex. 1, at 9, 76-77, 82-83.) The Kasowitz firm was selected based on its reputation. (Wohl Decl. Ex. 1, at 82-83.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ provided advice relating to an investment in a

5

renewable energy company; although the renewable energy company was not in New York, Derwick Associates selected ▮▮▮▮▮ because of the firm's expertise in licensing renewable energy. (Wohl Decl. Ex. 1, at 78.) Neither Mr. Betancourt nor anyone else from Derwick Associates met anyone from ▮▮▮ in New York; the project was done through email. (Wohl Decl. Ex. 1, at 75; Wohl Decl. Ex. 9, at 23-24.)

## ARGUMENT

### The State Law Claims Against Defendant Betancourt Should Be Dismissed Because Jurisdictional Discovery Has Established That He Is Not Subject To Personal Jurisdiction In New York

The Court should dismiss the remaining state law claims against Defendant Betancourt, because Plaintiffs cannot meet their burden of establishing personal jurisdiction over him. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727-28 (2d Cir. 2012). In a case such as this one, in which there has been jurisdictional discovery, "[c]onclusory allegations are insufficient—'at [this] point, the *prima facie* showing must be factually supported.'" *In re Methyl Tertiary butyl Ether (MTBE) Products Liability Litig.*, 07 CIV. 10470, 2014 WL 1778984, at *1 (S.D.N.Y. May 5, 2014) (Scheindlin, J.) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)). "When a defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiffs do not counter that evidence—the allegation may be deemed refuted." *Id.* (internal quotation marks and citation omitted). The over 10,000 pages of discovery material that Plaintiffs have collected establish that Mr. Betancourt was not a New York domiciliary and is not subject to the Court's jurisdiction.[2]

---

[2] Because the jurisdictional issue "necessarily involves the examination of evidence underlying the jurisdictional elements of the pleadings," the Court may consider affidavits, deposition testimony, and other materials outside the complaint on this motion to dismiss without converting the motion

Plaintiffs cannot make out a *prima facie* case that Mr. Betancourt is domiciled in New York, because Plaintiffs cannot show that he ever intended that his New York apartment be his "true fixed home and principal establishment." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Domicile is not equivalent to residence: while a person may have more than one residence, he may have only one domicile. *Rosario v. I.N.S.*, 962 F.2d 220, 224 (2d Cir. 1992), *superseded on other grounds by statute*. "The center of [a person's] domestic, social and civil life," domicile has both a "physical and a mental dimension." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991) (Conboy, J.). Far from his one true home, Mr. Betancourt's New York apartment constitutes one of several vacation homes where he spends a total of only a few weeks a year. As such, it cannot form the basis for asserting general jurisdiction over Mr. Betancourt.

The factors used by courts to evaluate domicile in cases such as this one dictate that Mr. Betancourt is domiciled in Venezuela:

> A "totality of the evidence" approach is called for, and no single factor is conclusive, although the residence of a married person's spouse and children (if the couple has not separated) is given considerable weight. Among the influential factors are the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment. Courts have also listed other factors as relevant, including whether the person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears), affiliations with social organizations, and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

---

into one for summary judgment. *Hicks v. Brophy*, 839 F. Supp. 948, 950 (D. Conn. 1993), *adhered to on reconsideration*, 841 F. Supp. 466 (D. Conn. 1994) (Cabranes, J.).

*Nat'l Artists*, 769 F. Supp. at 1228 (internal quotation marks and citations omitted). Here, Mr. Betancourt has each of the enumerated contacts with Caracas: he lives with his wife in Caracas; he votes regularly in Caracas; he pays income and property tax in Caracas; he owns multiple homes in Caracas; he owns automobiles in Caracas; he has a Venezuelan driver's license; he has bank accounts at three different banks in Caracas; he belongs to a social club in Caracas; and his office is in Caracas. Mr. Betancourt sees multiple doctors in Caracas, and his accountant is in Caracas. Caracas constitutes his "principal establishment." *Palazzo*, 232 F.3d at 42.

Another factor that supports Caracas domicile is the "century-old presumption that a long-time domicile in a particular jurisdiction is presumed to continue." *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998). "[T]he presumptive domicile prevails where . . . the record supports two potential domiciles." *Bank of India v. Subramanian*, 06 CIV. 2026, 2007 WL 1424668, at *5 (S.D.N.Y. May 15, 2007) (Pauley, J.), *superseded on other grounds by statute*. Plaintiffs cannot dispute that Caracas, where Mr. Betancourt was born and raised, constitutes his domicile of birth. *Bhatti v. Pettigrew*, 11 CIV. 1044, 2012 WL 1107650, at *3 (S.D.N.Y. Apr. 3, 2012) (Oetken, J). As the party alleging a change of domicile, Plaintiffs bear the burden of overcoming the presumption that this domicile continues. *Gutierrez*, 141 F. 3d at 427-28. They cannot.

The New York connections presented in this case are more meager than those that other courts in this Circuit have concluded do not overcome the burden. For example, in *Finkelstein v. Wachtel*, 00 CIV. 2672, 2003 WL 1918309, (S.D.N.Y. Apr. 21, 2003), Judge Martin concluded that the presumption that plaintiff continued to be a Connecticut domiciliary was not overcome by facts showing that plaintiff spent 178 days in New York, received bills relating to his New York apartment in New York and used a garage, dry cleaner, multiple doctors, lawyers, a bank, a broker and a tax preparer all in New York. These facts did not outweigh the evidence that plaintiff

continued to maintain a Connecticut residence and he voted and paid taxes as a Connecticut resident. Similarly, in *National Artists Management. Co. v. Weaving*, Judge Conboy concluded that defendants were domiciled in New York—not Connecticut—notwithstanding their ownership of a home in Connecticut where they spent two weekends a month, registration to vote in Connecticut, Connecticut driver's licenses and a personal physician in Connecticut. 769 F. Supp. 1224. The court reasoned that defendants worked in New York, spent the bulk of their time in New York, received paychecks and personal bills in New York and saw other doctors in New York. The Connecticut home was "solely a weekend home" and therefore not defendants' domicile. *Id.* at 1229.[3]

Mr. Betancourt's relationship with J.P. Morgan holds little if any jurisdictional significance. New York is arguably the financial capital of the world. *See* John Glover, *New York Strips London of Mantle as World's Top Financial Center*, Bloomberg News (Mar. 16, 2014), http://www.bloomberg.com/news/2014-03-15/new-york-steals-london-s-mantle-as-world-s-top-financial-center.html. It is unremarkable that a high net worth individual would choose to bank with a New York bank. The use of New York financial institutions does not transform Mr. Betancourt into a New York domiciliary but rather reflects the concentration and quality of financial services in the state. Similarly, Mr. Betancourt's decision to work with lawyers at Kasowitz Benson Torres & Friedman LLP and ▮ reflects that those firms have established strong reputations internationally. *See, e.g.,* ▮ ▮

---

[3] *See also Hicks v. Brophy*, 839 F. Supp. 948, 950 (D. Conn. 1993) *adhered to on reconsideration*, 841 F. Supp. 466 (D. Conn. 1994) (Cabranes, J.) (ownership of two homes in Connecticut and Connecticut bank account did not establish Connecticut domicile when testimony and documentary evidence established intent to use the homes as vacation homes); *Henderson v. FLOORGRAPHICS, Inc.*, 153 F. Supp. 2d 133, 136 (D. Conn. 2001) (New Jersey vacation home did not establish New Jersey domicile).

As this Court has already explained, Plaintiffs cannot establish general jurisdiction over Mr. Betancourt by pointing to his New York contacts in a vacuum. "Nothing in *International Shoe* and its progeny suggests that 'a particular quantum of local activity' should give a State authority over a 'far larger quantum of . . . activity' having no connection to any in-state activity." Op. at 25, quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 762 n.20 (2014). It is clear that the far larger quantum of activity in this case is in Caracas, Venezuela. Accordingly, Mr. Betancourt cannot be subjected to general jurisdiction in New York.

The Court has already ruled that there is no specific jurisdiction over Mr. Betancourt. Op. 26-29. The Court has also ruled that there is no basis for general jurisdiction based on a theory other than domicile. Op. 25-26. Because jurisdictional discovery has established that Mr. Betancourt is not domiciled in New York, the remaining state law claims must be dismissed.

## CONCLUSION

For the reasons stated above, the remaining claims (Claims III-VI) should be dismissed in their entirety.

Dated: New York, New York
December 23, 2014

LANKLER SIFFERT & WOHL LLP

By: _____
Frank H. Wohl (fwohl@lswlaw.com)
Julia C. Green (jgreen@lswlaw.com)
500 Fifth Avenue, 34th Floor
New York, New York 10110
(212) 921-8399
*Attorneys for Defendant Leopoldo Alejandro Betancourt Lopez*