UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE HONORABLE OTTO J. REICH and OTTO REICH ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>LEOPOLDO ALEJANDRO BETANCOURT LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and FRANCISCO D'AGOSTINO CASADO,<br><br>Defendants. | **Defendants' Public Filing**<br><br>~~SEALED DOCUMENT~~<br><br>Civil Action No. 13 CV 5307 (PJO) |

### DEFENDANT BETANCOURT LOPEZ'S
### REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS
### RENEWED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue, 34th Floor
New York, N.Y. 10110
(212) 921-8399
*Attorneys for Defendant*
*Leopoldo Alejandro Betancourt Lopez*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

POINT I ................................................................................................................................ 3

    Plaintiffs Are Not Entitled To An Evidentiary Hearing ....................................... 3

POINT II ............................................................................................................................... 4

    The Court Does Not Have Personal Jurisdiction Over Betancourt........................ 4

        a.    *Daimler Applies To This Case* ................................................................ 4

        b.    *Plaintiffs Have Not Made A Prima Facie Showing Of New York Domicile* ................................................................................................. 5

        c.    *Plaintiffs Cannot Establish Personal Jurisdiction Based On An Exception To The Domicile Requirement* ............................................... 7

        d.    *Plaintiffs' Purported Conflicts With The Venezuelan Government Do Not Help Their Personal Jurisdiction Claim* ........................................... 8

POINT III .............................................................................................................................. 9

    Plaintiffs Are Not Entitled To Additional Jurisdictional Discovery ..................... 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amiri v. DynCorp Int'l, Inc.*,
No. 14-CV-03333 SC, 2015 WL 166910 (N.D. Cal. Jan. 13, 2015) ........................................... 6

*Banco Latino v. Gomez Lopez*,
17 F. Supp. 2d 1327 (S.D. Fla. 1998) ........................................................................................ 8

*Bhatti v. Pettigrew*,
No. 11 Civ. 1044, 2012 WL 1107650 (S.D.N.Y. Apr. 3, 2012) (Oetken, J.) ............................ 3

*Blanco v. Banco Indus. de Venezuela, S.A.*,
997 F.2d 974 (2d Cir. 1993) ...................................................................................................... 8

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
No. 14 Civ. 121, 2014 WL 6077247 (S.D.N.Y. Nov. 14, 2014) (Oetken, J.) ........................... 8

*Chambers v. Weinstein*,
44 Misc. 3d 1224(A) (N.Y. Sup. Ct. 2014) (Sherwood, J.) ....................................................... 5

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ...................................................................................................... 4, 5, 7, 8

*De Pena v. De Pena*,
318 A.D.2d 415 (1st Dep't 1969) .............................................................................................. 5

*Palazzo ex rel. Delmage v. Corio*,
232 F.3d 38 (2d Cir. 2000) ........................................................................................................ 5

*DH Servs., LLC v. Positive Impact, Inc.*,
No. 12 Civ. 6153, 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014) (Abrams, J.) ......................... 3, 9

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013) ........................................................................................................ 3

*Ehrenfeld v. Bin Mahfouz*,
9 N.Y.3d 501 (N.Y. Court of Appeals 2007) ............................................................................ 4

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
218 F. Supp. 2d 369 (S.D.N.Y. 2002) (Kaplan, J) .................................................................... 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
131 S. Ct. 2846 (2011) .............................................................................................................. 4

*Gucci Am., Inc. v. Weixing Li*,
　768 F.3d 122 (2d Cir. 2014) ............................................................................................ 7

*Heath v. Estate of Heath*,
　No. 2:14-cv-610-JHH, 2014 WL 3809965 (N.D. Ala. July 30, 2014) ........................... 5

*Henderson v. FLOORgraphics, Inc.*,
　153 F. Supp. 2d 133 (D. Conn. 2001) ............................................................................ 6

*Hicks v. Brophy*,
　839 F. Supp. 948 (D. Conn. 1993) (Cabranes, J.) ..................................................... 3, 6

*Jazini v. Nissan Motor Co.*,
　148 F.3d 181 (2d Cir. 1998) ........................................................................................... 6

*Keeton v. Hustler Magazine, Inc.*,
　465 U.S. 770 (1984) ....................................................................................................... 8

*Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*,
　169 F. Supp. 2d 1341 (M.D. Fla. 2001) ........................................................................ 8

*Lizardo v. Ford Motor Co.*,
　No. Civ.A.B.-04-187, 2005 WL 1164200 (S.D. Tex. May 10, 2005) .......................... 8

*Magdalena v. Lins*,
　123 A.D.3d 600 (1st Dep't 2014) .................................................................................. 6

*Mantello v. Hall*,
　947 F. Supp. 92 (S.D.N.Y. 1996) (Mukasey, J.) ............................................................ 7

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
　84 F.3d 560 (2d Cir. 1996) ............................................................................................ 4

*Mississippi Band of Choctaw Indians v. Holyfield*,
　490 U.S. 30 (1989) ......................................................................................................... 4

*Morales v. Ford Motor Co.*,
　313 F. Supp. 2d 672 (S.D. Tex. 2004) ........................................................................... 8

*Nat'l Artists Mgmt. Co. v. Weaving*,
　769 F. Supp. 1224 (S.D.N.Y. 1991) (Conboy, J.) ......................................................... 5

*Perkins v. Benguet Consol. Mining Co.*,
　342 U.S. 437 (1952) ....................................................................................................... 7

*Richtone Design Grp., LLC v. Live Art, Inc.*,
　No. 12 Civ. 7652, 2013 WL 5904975 (S.D.N.Y. Nov. 4, 2013) (Keenan, J.) .............. 3

*Rivas ex rel. Estate of Gutierrez v. Ford Motor Co.*,
    No. 8:02 CV-676-T-17 EAJ, 2004 WL 1247018 (M.D. Fla. Apr. 19, 2004) .............................. 8

*In re Roman Catholic Diocese of Albany, New York, Inc.*,
    745 F.3d 30 (2d Cir. 2014) .............................................................................................. 5

*SMT Shipmanagement & Transp. Ltd. v. Maritima Ordaz C.A.*,
    No. 00 Civ. 5789, 2001 WL 930837 (S.D.N.Y. Aug. 15, 2001) (Lynch, J.), *aff'd
    sub nom. David J. Joseph Co. v. M/V BALTIC*, 64 F. App'x 259 (2d Cir. 2003),
    *as amended* (May 30, 2003) .......................................................................................... 8

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) ............................................................................................ 5

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002) .......................................................................................... 7

*Weinfeld v. Minor*,
    No. 12 Civ. 6395, 2014 WL 4954630 (E.D.N.Y. Sept. 30, 2014) (Irizarry, J.) ............... 5

*Wolgin v. Smith*,
    Civ. A. No. 94-7471, 1995 WL 434395 (E.D. Pa. July 20, 1995) .................................. 6

**Statutes**

CPLR 301 ............................................................................................................................... 6

## PRELIMINARY STATEMENT

Defendant Betancourt submits this Reply Memorandum in response to Plaintiffs' Memorandum of Law in Opposition (Opp.) to the renewed motions of defendants Betancourt and Trebbau to dismiss the remaining claims in the amended complaint (Claims III-VI).

## STATEMENT OF FACTS

Plaintiffs' separately-filed statement of facts ("Statement of Facts" or "Pl. St.") does not contest any of the facts establishing that Betancourt is domiciled in Venezuela, not New York. Although Plaintiffs argue "Betancourt Spends Time in New York," their papers make clear that Betancourt does not spend *very much time* here. (Opp. 16.) Plaintiffs concede that in the 1079 days between February 1, 2012 and Plaintiffs' filing of their opposition papers on January 15, 2015, Betancourt spent only 30 in New York. (*Id.*) Betancourt's minimal time in New York predates this lawsuit: Plaintiffs' numbers show Betancourt spent less than 5% of his time here in 2010 and 2011, and 7.1% of his time here in 2012. (Pl. St. ¶¶ 166-168.) Betancourt did not come to New York in 2013.

The facts establishing that Betancourt is not domiciled in New York are not in dispute:

1) Betancourt has spent only minimal time in New York;
2) Betancourt has never maintained an office in New York;
3) Betancourt has never voted in New York;
4) Betancourt has never seen a doctor in New York;[1]
5) Betancourt has never belonged to a social club in New York;
6) Betancourt has never owned a car in New York;
7) Betancourt has never obtained health or life insurance in New York;
8) Betancourt has never had a driver's license from New York; and
9) Betancourt has never paid income tax in New York.

(*See* Defendant Betancourt Lopez's Memorandum of Law in Support of the Renewed Motion to Dismiss, December 23, 2014 (filed under seal) ("Mov.") at 4.). Plaintiffs present no facts to

---

[1] Plaintiffs state that Betancourt "made an appointment with a doctor in New York" in 2012 or 2013 (Pl. St. § 221), but they neglect to clarify that Betancourt did not attend the appointment. (Betancourt Tr. at 77:19-21 (Smith Decl. Ex. 1).)

contradict the evidence that during the relevant period,[2] Betancourt's home was (and remains) in Venezuela, which is where he resided with his family, worked, voted, saw doctors, belonged to a social club, owned cars, obtained health and life insurance, had a driver's license and passport, maintained bank accounts, and paid income taxes.[3] (Mov. at 2-3.)

Plaintiffs attempt to paper over the absence of New York domicile with thirty pages of repetitive and largely irrelevant allegations that mischaracterize the sources they purport to cite. For example, Plaintiffs allege that Betancourt "employed ███████ to be on site in New York to manage the extensive renovation of the Penthouse Apartment" and cite only to Betancourt's deposition transcript purportedly in support of this fact. But Betancourt testified that ███████ is located in Caracas, Venezuela and comes to New York "once or twice a year to check on the property." (Betancourt Deposition Transcript ("Betancourt Tr.") at 19:14 (attached as Ex. 1 to the Declaration of Mark W. Smith, dated January 15, 2015 ("Smith Decl."))) Plaintiffs characterize Defendant D'Agostino as Betancourt's "business partner" and allege he '███████ ███████ ███████' (Opp. 15; Pl. St. ¶ 131.) In fact, D'Agostino and Betancourt were never "partners," and Betancourt did not "participate" in any investments with D'Agostino, because the potential projects never came to fruition. (Betancourt Tr. at 101:8-9; 112:13-14 (Smith Decl. Ex. 1); D'Agostino Deposition Transcript at 25:2-4; 122:22-25 (Smith Decl. Ex. 3).) Plaintiffs provide

---

[2] Betancourt and Trebbau have never disputed that the relevant period for analysis includes a reasonable period preceding the filing of the Complaint. Betancourt produced documents and answered interrogatories for a period dating back two and a half years before plaintiffs filed their complaint (to January 1, 2011). Betancourt provided additional information about trips to New York and the acquisition of the apartment dating back to January 1, 2010.

[3] Contrary to Plaintiffs' accusations, there is nothing "false" in the Venezuelan Certificate of Residency that Betancourt produced in response to Plaintiffs' document requests. (Opp. 5 n.3; Pl. St. ¶¶ 57 – 62.) The certificate reflects that Betancourt permanently lives at his family home in Quinta Pica-Pica in Venezuela. In fact, for purposes of Venezuela law, Betancourt's family home is where he permanently lives, and his driver's license and voter registration reflect this address. The fact that during the relevant period Betancourt also owned an apartment in Caracas where he and his wife resided does not change the fact that the family home was Betancourt's permanent address for purposes of Venezuela law. In any event, both the Pica-Pica family home and the apartment were in Caracas, Venezuela—not New York.

no source whatsoever for the fabrication that Betancourt maintains a "toehold in Venezuela to avoid U.S. worldwide taxes." (Opp. 10.) Plaintiffs repeat many of their allegations multiple times for additional emphasis, as if repetition will somehow make them accurate. Ultimately, Plaintiffs misrepresent the record, but even if their allegations were true they would not establish a *prima facie* case of personal jurisdiction.

## ARGUMENT

### POINT I

**Plaintiffs Are Not Entitled To An Evidentiary Hearing**

There is no basis for an evidentiary hearing because, for the purposes of this motion, there is no "dispute over the authenticity of [Plaintiffs'] evidence." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). An evidentiary hearing is not necessary to evaluate whether Plaintiffs' averments of facts, if credited by the trier, would suffice to establish personal jurisdiction over the defendant. *Id.* at 85. Here, even if they were true, the allegations in Plaintiffs' Statement of Facts would not amount to a *prima facie* showing of personal jurisdiction. The remaining claims, therefore, should be dismissed without an evidentiary hearing. *See, e.g., DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153, 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014) (Abrams, J.) (dismissing case without an evidentiary hearing where plaintiff failed to make *prima facie* showing of personal jurisdiction); *Richtone Design Grp., LLC v. Live Art, Inc.*, No. 12 Civ. 7652, 2013 WL 5904975, at *6 (S.D.N.Y. Nov. 4, 2013) (Keenan, J.) (same).

Plaintiffs' suggestion that the Court lacks the ability to determine domicile at this stage is without merit. Courts regularly make determinations concerning intent and domicile without conducting the "full-blown evidentiary hearing" Plaintiffs seek. (Opp 5.) *See, e.g., Bhatti v. Pettigrew*, No. 11 Civ. 1044, 2012 WL 1107650 (S.D.N.Y. Apr. 3, 2012) (Oetken, J.); *Hicks v.*

*Brophy*, 839 F. Supp. 948, 949-50 (D. Conn. 1993), *adhered to on reconsideration*, 841 F. Supp. 466 (D. Conn. 1994) (Cabranes, J.).[4]

## POINT II

## The Court Does Not Have Personal Jurisdiction Over Betancourt

### a. *Daimler Applies To This Case*

Plaintiffs cannot dodge *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), by characterizing their claims as "arising out of New York contacts," because this Court has already determined that Plaintiffs have not made a *prima facie* showing of specific jurisdiction under New York's "arising out of" test. (August 18, 2014 Opinion and Order, Dkt. No. 59 ("Opin.") 26-29.) New York, unlike other states, "has seen fit to confer jurisdiction in a limited subset of cases concerning nondomiciliaries." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 513 (N.Y. Court of Appeals 2007). Because Plaintiffs' claims do not fit within this "limited set," Plaintiffs must put forth a viable theory of general jurisdiction to proceed in New York, and any such theory must satisfy the constitutional demands outlined in *Goodyear* and *Daimler*.[5]

---

[4] Nor is there any merit to the suggestion that cases evaluating domicile for subject matter jurisdiction cannot inform the analysis of domicile for personal jurisdiction. (Opp. 7 n.8.) "'Domicile' is . . . a concept widely used in both federal and state courts for jurisdiction and conflict-of-laws purposes, and its meaning is generally uncontroverted." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). There is no support for the notion that domicile should have a different meaning depending on what type of jurisdiction is at issue. Indeed, in prior filings relating personal jurisdiction, Plaintiffs themselves have cited cases analyzing domicile for subject matter jurisdiction. *See, e.g.*, Letter from Mark Smith to the Honorable J. Paul Oetken, dated November 26, 2014 (filed under seal) at 3 (citing *Durst v. Siegler*, 04 Civ. 6981 (RMB), 2005 WL 3358599 (S.D.N.Y. Dec. 7, 2005)).

[5] Contrary to Plaintiffs' suggestion, the state-law and constitutional analyses are not "entirely separate." (Opp. 19 n.13). Rather, a Court's analysis of the constitutionality of personal jurisdiction depends on the state laws invoked: "First, [a court] must determine whether the plaintiff has shown that the defendant is amenable to service of process *under the forum state's laws*; and second, it must assess whether the court's assertion of jurisdiction *under these laws* comports with the requirements of due process." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (emphasis added). *See also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (The Supreme Court has "differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction. . . . In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy *that establishes jurisdiction*.'")(emphasis added).

The Court has already rejected Plaintiffs' argument that *Daimler* does not apply to them because they are individuals rather than corporations. (*See* Dkt. No. 44 at 20.) This Court is not alone in applying *Daimler* to claims against individuals.[6] And *Daimler* applies with equal force to cases involving United States plaintiffs.[7]

### b. *Plaintiffs Have Not Made A Prima Facie Showing Of New York Domicile*

Plaintiffs' failure to adduce any evidence of Betancourt's intent to make New York his home is fatal to their position. The element of intent is "crucial." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) (Conboy, J.). Betancourt would not suggest that his own statement that he never intended New York to be his home would carry the day *if it were belied by objective indicia to the contrary. Id.* The objective facts particularly key to intent, however, confirm that Betancourt has never been a New York domiciliary. Plaintiffs' voluminous filings do not question the nine clear indicia listed above (*supra* p. 1), let alone overcome the presumption that Betancourt's domicile of birth continued. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).[8] The provincial suggestion that it is not plausible for someone in Mr. Betancourt's financial situation to choose to domicile in Venezuela (Opp. 2, 9, 10, 22 n.18) is not a factual averment that can support a prima facie showing of personal jurisdiction. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (a plaintiff does not meet its burden with "argumentative inferences").

---

[6] *See, e.g., Weinfeld v. Minor*, No. 12 Civ. 6395, 2014 WL 4954630, at *6 (E.D.N.Y. Sept. 30, 2014) (Irizarry, J.); *Chambers v. Weinstein*, 44 Misc. 3d 1224(A) (N.Y. Sup. Ct. 2014) (Commercial Division) (Sherwood, J.); *Heath v. Estate of Heath*, No. 2:14-cv-610-JHH, 2014 WL 3809965, at *4 (N.D. Ala. July 30, 2014).
[7] *See, e.g., In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 33 (2d Cir. 2014).
[8] Plaintiffs mischaracterize *De Pena v. De Pena*, 318 A.D.2d 415 (1st Dep't 1969), when they suggest it stands for the proposition that citizenship is "irrelevant" to domicile. (Opp. 8 n.9.) The *De Pena* court determined that a party could establish New York domicile notwithstanding citizenship in another jurisdiction. *Id.* at 417. The ruling did not disturb the fundamental concept that "[d]omicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." *Palazzo*, 232 F.3d at 42 (citing *Linardos v. Fortuna*, 157 F. 3d 945, 948 (2d Cir. 1998)).

Plaintiffs do not dispute that Betancourt has spent a total of no more than 30 nights in the New York apartment. (Pl. St. ¶ 168; Declaration of Frank Wohl, dated December 23, 2014, Ex. 3, ¶ 4.) Betancourt's New York contacts incident to the ownership of the apartment—including the mortgage on the New York apartment, the use of architects and contractors to renovate the New York apartment, the purchase of furniture for the New York apartment, the use of a New York real estate lawyer, the occasional hiring of a cleaning woman for the New York apartment, the payment of real estate taxes for the New York apartment, and accounts with ConEdison and Verizon for electricity and phone service at the New York apartment—do not support Plaintiffs' claim of New York domicile. *See Hicks v. Brophy*, 839 F. Supp. at 952 ("[O]ne would hardly expect in this day and age that a vacation home would be maintained without an active telephone line."). *See also Henderson v. FLOORgraphics, Inc.*, 153 F. Supp. 2d 133, 135-36 (D. Conn. 2001) (vacation home did not establish domicile); *Wolgin v. Smith*, Civ. A. No. 94-7471, 1995 WL 434395 (E.D. Pa. July 20, 1995) (same); *Magdalena v. Lins*, 123 A.D.3d 600 (1st Dep't 2014) (defendant who owned apartment in New York not domiciled in New York and not subject to jurisdiction under CPLR 301).

Plaintiffs' alter ego theory adds nothing to their case. Even if the New York activities of Betancourt's personal companies (which own Betancourt's apartment and certain bank accounts) were attributable to Betancourt, those activities would not subject him to general jurisdiction in New York. *See Amiri v. DynCorp Int'l, Inc.*, No. 14-CV-03333 SC, 2015 WL 166910, at *6 (N.D. Cal. Jan. 13, 2015) (imputing contacts of alter ego to defendant and finding the contacts still fell short of establishing general jurisdiction). But Plaintiffs offer no facts to justify disregarding these corporate entities. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (a party

cannot use "legal conclusion couched as a factual allegation" to justify disregarding a corporate entity to establish a *prima facie* case of personal jurisdiction).

### c. *Plaintiffs Cannot Establish Personal Jurisdiction Based On An Exception To The Domicile Requirement*

There is no reason for the Court to retract its ruling that this case does not qualify as the "exceptional" case where general jurisdiction may be established based on something other than domicile. (Opin. 25-26.) *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise[.]")(internal quotations and citations omitted). The exception described in *Daimler*—the case of *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)—involved the *sui generis* situation of a corporate defendant that, during World War II, set up a temporary principal place of business in Ohio. *See Daimler*, 134 S. Ct. at 756. Unlike in *Perkins*, Plaintiffs have offered no evidence that New York has ever been Betancourt's "center of . . . activities," temporary or otherwise. *Id.* at 756 n.8.

There is no cogent—let alone compelling—reason for the Court to overturn itself and find personal jurisdiction based on the now defunct theory of "doing business" jurisdiction. The Second Circuit has confirmed that, following *Daimler*, a court cannot assert personal jurisdiction over a defendant "doing business" in New York if the defendant is not essentially at home here, which Betancourt plainly is not. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).[9]

---

[9] Even if doing business remained a viable theory of general jurisdiction in New York, Betancourt's activities are of the sort that courts have held insufficient for doing-business-based jurisdiction. *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (Kaplan, J) (no *prima facie* case of general jurisdiction where defendant owned and sold a New York apartment, made business trips to New York, engaged in business transactions here, and had New York bank accounts). *See also Mantello v. Hall*, 947 F. Supp. 92, 98 (S.D.N.Y. 1996) (Mukasey, J.) (activities in New York did not constitute "doing business" where they were not defendant's "principal corporate activity.").

### d. *Plaintiffs' Purported Conflicts With The Venezuelan Government Do Not Help Their Personal Jurisdiction Claim*

Plaintiff Otto Reich's unsupported claims about his own reputation and standing in Venezuela are not relevant to the analysis of whether this Court has personal jurisdiction over Betancourt. Procedural or other limitations on a plaintiff's ability to sue in other jurisdictions are not permitted to "complicate or distort the jurisdictional inquiry." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 (1984) (rejecting claim that personal jurisdiction should be found because claim would be procedurally barred in other jurisdictions). "[I]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) (citation omitted) (finding Venezuela an adequate alternate forum for litigation). Indeed, in the context of *forum non conveniens* motions where, unlike here, a plaintiff's interests are a legitimate consideration, courts have repeatedly upheld Venezuela as an adequate alternative forum, rejecting the arguments Plaintiffs now raise.[10] The "uninhibited approach to general jurisdiction" that Plaintiffs seek to revive would "[pay] little heed to the risks to international comity." *Daimler*, 134 S. Ct. at 763.[11]

---

[10] *See, e.g., SMT Shipmanagement & Transp. Ltd. v. Maritima Ordaz C.A.*, No. 00 Civ. 5789, 2001 WL 930837, at *7 (S.D.N.Y. Aug. 15, 2001) (Lynch, J.), *aff'd sub nom. David J. Joseph Co. v. M/V BALTIC*, 64 F. App'x 259 (2d Cir. 2003), *as amended* (May 30, 2003) (Venezuela "unquestionably" an adequate alternative forum); *Morales v. Ford Motor Co.*, 313 F. Supp. 2d 672, 675 (S.D. Tex. 2004) ("The Plaintiffs. . . have confused their willingness to avail themselves of the Venezuelan forum for its availability."); *Lizardo v. Ford Motor Co.*, No. Civ.A.B.-04-187, 2005 WL 1164200, at *1 (S.D. Tex. May 10, 2005) (same); *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1331 (S.D. Fla. 1998) (rejecting contention that Venezuela is an inadequate forum because the judicial system is "rife with corruption and delays."); *Rivas ex rel. Estate of Gutierrez v. Ford Motor Co.*, No. 8:02 CV-676-T-17 EAJ, 2004 WL 1247018, at *7 (M.D. Fla. Apr. 19, 2004) (finding Venezuela an adequate alternative forum and rejecting plaintiffs' objection based on "recent political turmoil in Venezuela"); *Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1349-50 (M.D. Fla. 2001) (rejecting contention that Venezuela is an inadequate forum due to the corruption and bribery in the Venezuelan judicial system under the Chavez regime).

[11] Contrary to Plaintiffs' assertion (Opp. 7 n.5), reinstituting the RICO claims would provide a doubtful basis for personal jurisdiction. RICO's statutory nationwide service provision does not obviate the need to establish that the assertion of personal jurisdiction comports with the Constitution. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, No. 14 Civ. 121, 2014 WL 6077247, at *4 n.5 (S.D.N.Y. Nov. 14, 2014) (Oetken, J.).

## POINT III

## Plaintiffs Are Not Entitled To Additional Jurisdictional Discovery

Betancourt's sensitive financial information, which Plaintiffs yet again seek, would add nothing to the jurisdictional analysis. Plaintiffs cannot contest that Betancourt provided full access to the discovery that the Court permitted or that the Court repeatedly limited Plaintiffs' overbroad requests. (*See* Dkt. Nos. 103, 106, 117.) Betancourt produced his passports and other documents showing that during the relevant period, Betancourt spent less than 5% of his time in New York. Plaintiffs tested Betancourt's representations concerning his travel to New York by subpoenaing, among others, the Olympic Tower where Betancourt's apartment is located and the pilot of the private plane that Betancourt used to travel to New York. Plaintiffs have offered nothing to support the notion that an individual who so rarely comes to New York could be a New York domiciliary—whatever the portion of his banking activity was conducted in New York, the financial capital of the world.

Plaintiffs have not presented any basis for the Court to reconsider its previous discovery orders; they should not be permitted to rifle even further through Betancourt's personal life and financial affairs. *See DH Servs., LLC v. Positive Impact, Inc.*, 2014 WL 496875, at *16 (denying additional jurisdictional discovery where plaintiff had already made document requests and interrogatories and additional discovery was not "likely to bolster the arguments about personal jurisdiction . . . already made"). Betancourt's assets outside New York, including his real estate holdings in Europe and Venezuela; his bank accounts in Canada, Europe and Venezuela; his private ventures in Africa and Latin America; and his business activities in Venezuela, have no relevance to whether New York has general jurisdiction over Betancourt, an individual who is not domiciled in the state. The details of Betancourt's banking activities and his correspondence with

his personal banker would not change the jurisdictional analysis: Plaintiffs have already demonstrated the existence of Betancourt's bank accounts in New York. Plaintiffs will never be able to establish that Betancourt is subject to general jurisdiction in New York, and therefore they should not be permitted to conduct any further fishing expeditions.

## CONCLUSION

For the reasons stated above, the remaining claims (Claims III-VI) should be dismissed.

Dated: New York, New York
January 28, 2015

LANKLER SIFFERT & WOHL LLP

By: /s/
Frank H. Wohl (fwohl@lswlaw.com)
Julia C. Green (jgreen@lswlaw.com)
500 Fifth Avenue, 34th Floor
New York, New York 10110
(212) 921-8399
*Attorneys for Defendant Leopoldo Alejandro Betancourt Lopez*