UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

THE HONORABLE OTTO J. REICH and
OTTO REICH ASSOCIATES, LLC,

       Plaintiffs,

v.

LEOPOLDO ALEJANDRO BETANCOURT LOPEZ,
PEDRO JOSE TREBBAU LOPEZ, and FRANCISCO
D'AGOSTINO CASADO,

       Defendants.

Civ. No. 13 CV 5307 (JPO)
ECF Case

~~FILED UNDER SEAL~~

**Defendants' Public Filing**

---

PLAINTIFFS' SURREPLY MEMORANDUM OF LAW IN FURTHER
OPPOSITION TO BETANCOURT'S AND TREBBAU'S RENEWED MOTIONS TO
DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2)

SMITH VALLIERE PLLC
1221 Avenue of the Americas, 42nd Floor
New York, New York 10020
(212) 755-5200

*Attorneys for Plaintiffs
The Honorable Otto J. Reich and
Otto Reich Associates, LLC*

Plaintiffs the Honorable Otto J. Reich and Otto Reich Associates, LLC (together, "Plaintiffs") submit this Surreply Memorandum of Law and the accompanying Declaration of Mark W. Smith dated February 3, 2015 with exhibits (the "Smith Surreply Decl."), for the limited purpose of correcting several inaccuracies in the Reply Memoranda of Law submitted by defendants Leopoldo Alejandro Betancourt Lopez ("Betancourt") and Pedro Jose Trebbau Lopez ("Trebbau") (together, "Defendants").[1]

**ARGUMENT**

Where jurisdictional discovery has occurred, all facts presented by the plaintiff in opposition to a Rule 12(b)(2) motion must be construed in the light most favorable to the plaintiff, and all doubts are resolved in plaintiff's favor. Unless and until an evidentiary hearing is held, a *prima facie* showing suffices, *notwithstanding any controverting presentation by the moving party*, to defeat the motion. Alternatively, the Court may defer determination of the personal jurisdiction issue until summary judgment or a trial on the merits. Defendants do not dispute this well-established legal standard. Rather, they cherry-pick a handful of purported connections to Venezuela, and ask the Court to accept at face value their material misrepresentations and biased testimony, even when contradicted by objective documentary proof, and ask the Court to draw all inferences *against* Plaintiffs. The law simply does not allow the Court to do so. Plaintiffs have put forward sufficient facts to state a *prima facie* case of jurisdiction, and the Court cannot consider any contrary evidence unless and until an evidentiary hearing is held. Contrary to Defendants' representations, it is not Plaintiffs' burden to disprove

---

[1] For the convenience of the Court, Plaintiffs' cites to the "Opp Memo" are to Plaintiffs' Memorandum of Law In Opposition to Defendants' Renewed Motions to Dismiss; "Smith Decl." refers to the Declaration of Mark W. Smith dated January 15, 2015; "BS" refers to the Statement of Facts Supporting a *Prima Facie* Case of Personal Jurisdiction Over Defendant Betancourt; "TS" refers to Plaintiffs' Statement of Facts Supporting a *Prima Facie* Case of Personal Jurisdiction Over Defendant Trebbau; and "Reich Decl." refers to the Declaration of Otto J. Reich dated January 15, 2015.

Defendants' alleged connections to Venezuela where, as here, Plaintiffs have made a *prima facie* showing supported by an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over Defendants.

I. **DEFENDANTS MISREPRESENT SEVERAL KEY FACTS AND ASK THIS COURT TO CREDIT THEIR BIASED TESTIMONY**

    A. **Betancourt's Statement That He Was Not In New York In 2013 Is False And Directly Contradicted By His Own Documentary Evidence**

In his reply brief, Betancourt affirmatively states, for the first time, that he "did not come to New York in 2013." (*See* Betancourt Reply at 1.) This assertion is consistent with Betancourt's responses to Plaintiffs' jurisdictional interrogatories, in which Betancourt did not identify any time periods that he was in New York during 2013. (*See* Smith Decl., Exs. 8, 9.) Betancourt's blanket assertion in his reply brief and his sworn interrogatory responses are entirely disproved by objective documentary evidence, including documents produced by Betancourt himself. For example, Plaintiffs submitted documentary evidence that Betancourt was actually present at his New York residence on July 31, 2013 when Plaintiffs' process server attempted to serve him with the Complaint in this action. (*See* Smith Decl., Ex. 48.) Moreover, e-mails produced by Betancourt himself, as well as the architecture firm he hired to make ███████████ of renovations to his New York residence, De La Garza Architecture LLC, show that Betancourt was in New York at least during the months of May, June and July 2013. (*See* Smith Surreply Decl., Exs. 3-6.)

Betancourt's misrepresentation in his reply brief is consistent with other occasions during the pendency of this action when Betancourt made self-interested and false assertions about his time in New York, only to "correct" them when confronted with documentary evidence disproving his claims. For example, in September 2014, Betancourt submitted a sworn

2

declaration stating that: "Since purchasing the apartment, I have spent in total fewer than 20 nights there." (*See* Smith Decl., Ex. 11 at ¶ 12.) However, jurisdictional discovery showed otherwise and, faced with conflicting documentary proof, in December 2014 and in support of his renewed motion, Betancourt "corrected" his prior sworn testimony to say "I now believe that I have spent a total of approximately 30 nights in the New York apartment since I acquired it in 2010." (*See* F. Wohl's December 23, 2014 Declaration, Ex. 3 at ¶ 4.)

Thus, even if the Court were to hold an evidentiary hearing, documentary evidence, including documents produced by Betancourt himself, demonstrate that Betancourt's "ever-evolving" statements about his time in New York are false.

### B. Plaintiffs Did Not Concede That Betancourt Spent Only 30 Nights At His New York Penthouse Apartment

In his reply brief, Betancourt falsely states that Plaintiffs "concede" he spent no more than 30 nights in his New York Penthouse Apartment. (*See* Betancourt Reply at 1, 6.) To the contrary, Plaintiffs point out that Betancourt *admitted* to having spent *at least* 30 nights at his New York residence from February 19, 2012 through December 21, 2012, which represent the first and last dates listed by Betancourt in his interrogatory responses as times he stayed at the Penthouse Apartment.[2] (*See* Opp Memo at 16; BS ¶ 168; Smith Decl., Exs. 8, 9 at Interrog. No. 5.) In any event, and as set forth in Plaintiffs' Opp Memo, Betancourt's self-interested assertions, which clearly seek to minimize his time in New York, carry no weight when contradicted by conflicting objective evidence demonstrating that Betancourt spent additional time in New York not reflected in his interrogatory responses.

---

[2] Interrogatory No. 5 asks Betancourt to identify every date he was in New York since January 1, 2009. Betancourt limited his responses to the period August 2010 through December 2012. (*See* Smith Decl., Exs. 8, 9.)

3

### C. Betancourt's Biased Testimony Concerning His Relationship With Defendant D'Agostino Cannot Be Credited By The Court

In his reply brief, Betancourt falsely claims that he and Defendant Francisco D'Agostino Casado ("D'Agostino") were never business partners. (*See* Betancourt Reply at 2.) Betancourt's biased statement ignores key facts in Plaintiffs' opposition concerning Betancourt's relationship with D'Agostino, which disprove (or at least call into serious question) his representations to this Court. (*See* BS at ¶¶ 119-134, 148-153.)

### D. Trebbau's Biased Testimony Concerning The 55th Street Residence Cannot Be Credited By The Court

Trebbau's reply brief falsely states that Plaintiffs have set forth no proof that Trebbau resided at the 55th Street Residence. (*See* Trebbau Reply at 4-5.) Trebbau's reply brief ignores key facts in Plaintiffs' opposition concerning Trebbau's use of the 55th Street Residence. (*See* TS at ¶¶ 26-36.) The Court may not accept Trebbau's self-interested testimony that he did not reside at the address he gave as his own in connection with his various business entities and bank accounts holding ▊▊▊▊▊▊▊▊▊▊▊▊. This is especially true in light of the fact that Plaintiffs were denied discovery of Trebbau's communications with Eduardo Travieso, Trebbau's putative roommate (although J.P. Morgan possesses such documents and is willing to produce them). These documents, which the Court ruled should be produced by Trebbau but which were not, likely would have shed additional light on Trebbau's use of the 55th Street Residence. In any event, Plaintiffs demonstrated in their opposition papers that the use of a mailing address by a defendant is *prima facie* evidence that the address constitutes the defendants' residence for purposes of domicile. (*See* Opp Memo at 9.)

### E. Trebbau Misrepresents That He Moved His Money From J.P. Morgan New York To RBC In Montreal Prior To The Commencement Of This Lawsuit

In his reply brief, Trebbau falsely states that "after his accounts were closed at JP Morgan, he moved his funds to RB[C] in Montreal, Canada, and those funds have remained outside New York." (*See* Trebbau Reply at 8, n.6.) He also argues that, based on his deposition testimony, there is no basis for the Court to infer that Trebbau kept money in New York after July 2013, and Plaintiffs have presented no evidence to rebut Trebbau's testimony. (*Id.*) This is also false. Trebbau himself testified that he continues to maintain a banking relationship with J.P. Morgan New York today where he has investment accounts worth no less than ▓▓▓▓▓ (*See* Smith Decl., Exhibit 2 at 55:15-22; 59:14-20, 23; Smith Decl., Exhibit 4 at Interrog. No. 1.)

Trebbau also argues that the extremely limited bank statements that he did produce from J.P. Morgan (covering only a period ending in January 2013 – months before the Complaint was filed) disprove significant facts supporting Plaintiffs' *prima facie* showing of jurisdiction because they allegedly reveal only a limited number of transactions in New York. (*See* Trebbau Reply at 8.) As an initial matter, Trebbau's argument conclusively establishes that bank statements (and credit card statements) showing location-specific transactions by Trebbau are highly relevant to the issue of jurisdiction and should have been produced. However, even if Trebbau's evidence could be credited on a Rule 12(b)(2) motion – and it cannot be – Trebbau's bank statements completely disprove his claim of Venezuelan domicile because they do *not* show even a single transaction in Venezuela during a two-year period.

## II. DEFENDANTS' CLAIM THAT VENEZUELA IS A VIABLE FORUM FOR PLAINTIFFS TO PURSUE THEIR CLAIMS IS FALSE

*Daimler* stands unequivocally for the proposition that a plaintiff must have available "at least one clear and certain forum in which a [] defendant may be sued on any and all claims."

*Daimler*, 134 S. Ct. at 760.³ *See also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (emphasis added). To deny Plaintiffs access to the New York courts to redress their injury given Defendants' innumerable contacts with this forum would run afoul of *Daimler*.

Defendants' assertion that Venezuela is an adequate alternate forum ignores the official findings of the U.S. Department of State that Venezuela is a corrupt and broken country characterized by lawlessness, violence and corruption. This is especially significant because, as Ambassador Reich states in his Declaration, claims alleging corruption involving Venezuelan government officials such as the claims against Defendants here are suppressed by the government and those asserting them face serious physical danger. (*See* Reich Decl. at ¶¶ 10-11.) Defendants' arguments also ignore one undeniable fact: Plaintiff the Honorable Otto J. Reich has been declared an enemy of the state by the government of Venezuela, with which Defendants here illegally conspire.⁴ (*See* Betancourt Reply at 8.) President Maduro himself has expressly and publicly condemned Plaintiff Otto Reich. (*See* Reich Decl. at ¶ 6.) He and other high-ranking Venezuelan government officials have publicly made repeated false statements against Otto Reich, including that: he conspired to assassinate President Nicolas Maduro (including as recently as during the fall of 2013), former President Hugo Chavez, and opposition

---

³ Defendants apparently misapprehend the distinction between the statutory basis for jurisdiction and the Constitutional due process analysis that the Court must engage in *after* it determines that the defendant is subject to jurisdiction under state law. (*See* Betancourt Reply at 4, n.5.) While a state law basis for jurisdiction *and* sufficient contacts with the forum state to satisfy Constitutional due process must *both* be present, the state law and Constitutional analyses are entirely distinct. Betancourt's description of the *Goodyear* case makes this clear. In the portion of the *Goodyear* decision quoted by Betancourt, the Supreme Court discusses, in the context of its Constitutional due process analysis, the concepts of "general, all-purpose jurisdiction [and] specific jurisdiction [which] is confined to adjudication of issues deriving from or connected to the very controversy that establishes jurisdiction." This discussion is entirely separate from any discussion of a statutory basis for jurisdiction. Thus, as set forth in Plaintiffs' opposition, when considering whether Constitutional due process permits jurisdiction over Defendants, the Court must take into account that acts by Defendants and their agents in New York give rise to Plaintiffs' claims, and apply the minimum contacts analysis which the Supreme Court in *Daimler* reaffirmed is the Constitutional due process analysis applicable to such cases.

⁴ In the last year, the United States Department of State had to publicly deny an alleged assassination plot purportedly involving Plaintiff Otto Reich and the Central Intelligence Agency as against President Maduro.

candidate Henrique Capriles; he has worked with the U.S. Government to destabilize Venezuela; he planned and executed, as the Assistant Secretary of State of the U.S. Department of State, the coup d'état that temporarily removed Hugo Chavez from power; he recruited thousands of mercenaries in Central America to attack the Venezuelan people; he was involved in a plot to "bomb Venezuela"; he uses his company, Plaintiff Otto Reich Associates LLC, to support terrorist attacks in Venezuela; he was responsible for organizing and financing the waves of violence, including those involving fascist groups, that have repeatedly rocked Venezuela during the Chavez and Maduro governments, including most recently in 2014; and he has participated in an alleged plot calling for violence and human rights violations against the Venezuelan people. (*Id.* at ¶¶ 5, 7, 8.)

That former U.S. Ambassador to Venezuela Otto Reich is considered an enemy of the state of Venezuela cannot and should not be discounted. This fact alone distinguishes this case from the cases cited by Defendants as support for their contention that Venezuela is an adequate alternate forum. (*See* Betancourt Reply at 8, n.10.) Not only were Defendants' cases decided more than a decade ago – during a time of relative social and economic prosperity in Venezuela as compared to the current climate of high inflation, poverty and rampant violence – but none of the plaintiffs in those cases was an enemy of the state who sought to bring claims against members of the favored class who had profited from their relationship with the Chavez-Maduro government. Not only would Plaintiff Otto Reich's life be put in grave danger if he tried to bring his claims against Defendants in Venezuela, it would be impossible for him to procure an honest and impartial hearing. (*See* Reich Decl. at ¶¶ 6, 8-11.) ¶

Furthermore, on the date this brief[5] is being filed with the Court, news broke about the continued deterioration of United States/Venezuela relations. The Venezuelan government has announced that Vice President Joe Biden was conspiring against Venezuela and its current president Nicolas Maduro. (*See US-Venezuela Tensions Escalate Over Human Rights, VP Biden*, The New York Times, February 2, 2015; *US Says Joe Biden Is Not Plotting To Overthrow Venezuela's President*, The Guardian, February 2, 2015, copies of which are annexed to the Smith Surreply Decl. as Exhibit 7.) This overt hostility toward a senior U.S. government official plus the fact that the United States and Venezuelan governments have not exchanged ambassadors since **2010** is further evidence that it would be impossible for any United States citizen (especially a significant United States citizen accusing the politically-connected Defendants here of unlawfully conspiring with Venezuelan government officials) to receive a fair hearing in the Venezuelan court system.

Here, Defendants assert no alternative forum in which to sue other than Venezuela. If the Court dismisses Plaintiffs' case, Defendants will have once again successfully used the New York courts to silence their opponents all the while maintaining that they can't be held accountable for their actions in this forum.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' opposition to Defendants' Renewed Motions to Dismiss for Lack of Personal Jurisdiction, the Court should deny Defendants' Motions in their entirety and grant Plaintiffs such other and further relief as the Court deems just and proper.

---

[5] Because the news contained in the attached media reports about the state of United States/Venezuelan relations is breaking now, Plaintiffs did not include the related articles attached to the Smith Surreply Declaration in their motion to submit a surreply. However, Plaintiffs submit them now, for the Court may take judicial notice of these public governmental affairs.

Dated: New York, New York
February 3, 2015

Respectfully submitted,

SMITH VALLIERE PLLC

By: /s/ Mark W. Smith

Mark W. Smith, Esq.
Noelle Kowalczyk, Esq.

1221 Avenue of the Americas, 42nd Floor
New York, New York 10020
(212) 755-5200
msmith@svlaw.com
nkowalczyk@svlaw.com

*Attorneys for Plaintiffs
The Honorable Otto J. Reich
and Otto Reich Associates, LLC*

## CERTIFICATE OF SERVICE

I hereby certify this 3rd day of February, 2015, that I caused a true and correct copy of the foregoing document to be served via electronic mail on the following attorneys of record:

Frank H. Wohl, Esq.
Julia C. Green, Esq.
Lankler Siffert & Wohl
500 Fifth Avenue, 34th Floor
New York, NY 10110
*Attorneys for Defendant Leopoldo Alejandro Betancourt Lopez*

Joseph A. DeMaria, Esq.
Fox Rothschild LLP
200 South Biscayne Blvd.
Suite 3590
Miami, FL 33131
*Attorneys for Defendant Pedro Jose Trebbau Lopez*

Shawn Rabin, Esq.
Susman Godfrey, L.L.P
560 Lexington Avenue, 15th Floor
New York, NY 10022
*Attorneys for Defendant Francisco D'Agostino Casado*

Gregory Zimmer