UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
          :
THE HONORABLE OTTO J. REICH and OTTO  :
REICH ASSOCIATES, LLC,          :
          :    13-CV-5307 (JPO)
          Plaintiffs,  :
          :    OPINION AND ORDER
     -v-      :
          :
LEOPOLDO ALEJANDRO BETANCOURT   :
LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and :
FRANCISCO D'AGOSTINO CASADO,     :
          :
          Defendants. :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

Plaintiffs Otto J. Reich, a former United States ambassador to Venezuela, and his consulting company, Otto Reich Associates, LLC (collectively, "Plaintiffs"), allege that the activities of Leopoldo Alejandro Betancourt Lopez, Pedro Jose Trebbau Lopez, and Francisco D'Agostino Casado (collectively, the "Defendants"), caused injury to their property and reputation. They assert claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), as well as various claims under New York State common law. (*See* Dkt. No. 29 ("Am. Compl.").) On February 28, 2014, Defendants moved to dismiss the complaint. (Dkt. No. 31.) In an Opinion and Order dated August 18, 2014 (the "Opinion"), the Court granted the motion in part and denied it in part. (Dkt. No. 59.) Plaintiffs have moved for partial reconsideration of the Court's decision, or, in the alternative, for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Dkt. No. 64 ("Motion for Reconsideration").) For the reasons that follow, Plaintiffs' motion is denied.

**I.      Background**

The Court assumes familiarity with the underlying facts and procedural history, as set forth in the Court's Opinion. As explained in the Opinion, the Court dismissed Plaintiffs' civil RICO claims (Claims I and II),[1] and Plaintiffs' civil conspiracy claim (Claim VII). For the remaining claims, the Court held that Plaintiffs have not made a *prima facie* showing that the Court has personal jurisdiction over defendants Betancourt and Trebbau, and granted Plaintiffs permission to engage in discovery on this issue. Finally, the Court held that it has personal jurisdiction over defendant D'Agostino, and that Plaintiffs have adequately pleaded various state law claims against him.

Plaintiffs ask the Court to reconsider its dismissal of their civil RICO claims. The Court dismissed the civil RICO claims on two independent grounds. The Court held, first, that Plaintiffs have failed to allege the elements of one of the predicate acts, namely wire fraud; and second, that Plaintiffs have failed to show that the predicate acts together form "a pattern of racketeering activity," as required to plead a RICO violation under 18 U.S.C. § 1962(c). Plaintiffs contend that both holdings are erroneous.

**II.     Legal Standard**

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotations omitted). The standard for granting a motion for reconsideration is accordingly high, *Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010) (summary order), and such motions "are properly granted only if

---

[1] Plaintiffs pleaded both a substantive RICO violation and a RICO conspiracy claim under 18 U.S.C. § 1962(d). The Court dismissed the latter because Plaintiffs failed to adequately allege the former. (Opinion at 19.)

there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence or (3) a need to correct a clear error or prevent manifest injustice," *Drapkin*, 818 F. Supp. 2d at 696 (citing *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 288-89 (2d Cir. 2011)). "Reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided; in addition, the moving party may not 'advance new facts, issues or arguments not previously presented to the Court.'" *Christoforou v. Cadman Plaza N., Inc.*, No. 04 Civ. 8403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. Mar. 19, 2009) (quoting *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999)). "The decision to grant or deny the motion is within the sound discretion of the district court." *Id.* (citing *Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999)).

**III.   Discussion**

    **A.   Wire Fraud**

Plaintiffs argue that the Opinion misstates the elements of wire fraud. Specifically, they assert that, in interpreting "scheme to defraud" within the meaning of the wire fraud statute, the Court erred in requiring Plaintiffs to allege both that Defendants intended to *deprive* them of money or property, and that Defendants intended to *obtain* money or property as a result of the scheme. Only the former showing, Plaintiffs argue, is required under Supreme Court and Second Circuit precedent. (Motion for Reconsideration at 3-8.)

The Court acknowledges that this issue is not as clear as the Opinion may suggest.[2] In fact, there is disagreement among the federal courts of appeals on this very issue, namely,

---

[2] The Court's Opinion states:

> While Plaintiffs have sufficiently alleged actual injury, a wire fraud scheme to defraud also requires that Defendants intend to obtain property, a claim which is lacking in Plaintiffs' allegations. Although it is well established in this Circuit that wire fraud does

3

whether a plaintiff must show—or at this stage, must allege—that a defendant intended to obtain money or property as part of a scheme to defraud. *Compare, e.g.*, *United States v. Hedaithy*, 392 F.3d 580, 601-02 (3d Cir. 2004) (rejecting the argument that "any violation of the mail fraud statute must involve a scheme for obtaining the victim's property"), *with United States v. Walters*, 997 F.2d 1219, 1227 (7th Cir. 1993) ("[W]e hold that only a scheme to obtain money or other property from the victim by fraud violates [18 U.S.C.] § 1341.")[3] Although the Second Circuit has not directly addressed the question, it has suggested, in a case distinguishable from this one, that it is inclined to follow the Third Circuit's holding that a plaintiff need not allege that a defendant intended to obtain money or property to make out a wire fraud claim. *See United States v. Males*, 459 F.3d 154, 158 (2d Cir. 2006) ("We . . . agree[] with the Third Circuit that 'a mail fraud violation may be sufficiently found where the defendant has merely deprived another of a property right.'" (quoting *Hedaithy*, 392 F.3d at 602 n.21)); *see also Porcelli v. United States*, 404 F.3d 157, 162 & n.5 (2d Cir. 2005) ("Under this Court's analysis, the defendant does not need to literally 'obtain' money or property to violate the [mail fraud] statute." (citing *Hedaithy*, 392 F.3d at 602 n.21)).[4] On reconsideration, the Court concludes that

---

> not require proof of actual profit from the scheme to defraud, intent to profit is still necessary. In this case, while Plaintiffs allege that Defendants intended to deprive them of money or property, they have not alleged that Defendants intended to *obtain* money or property as a result of their scheme. Nor could they plausibly do so: Defendants are not a market competitor of Plaintiffs such that they would expect to gain from Plaintiffs' loss of clients. Consequently, while there may be intent to harm, there is no intent to obtain property from Plaintiffs, and there is no scheme to defraud within the wire fraud statute.

(Opinion at 14-15 (citations omitted).)

[3] Although *Walters* and *Hedaithy* involved mail fraud, "[t]he mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here." *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987).

[4] At the same time, the court in *Porcelli* stated that an "essential element[]" of mail fraud is that "money or property [b]e the object of the scheme" to defraud. 404 F.3d at 162.

it need not decide this issue because Plaintiffs' civil RICO claim fails on a separate ground, namely that Plaintiffs have failed to show that the alleged predicate acts upon which their civil RICO claim is based are sufficiently "related" such that they constitute a pattern of racketeering activity.

### B. Relatedness

In its Opinion, the Court held that Plaintiffs have failed to allege predicate acts that are sufficiently "related" such that they form "a pattern of racketeering activity," as required under 18 U.S.C. § 1962(c). (Opinion at 15-18.) Plaintiffs assert that, in so holding, the Court erroneously distinguished between "relatedness" in civil and criminal RICO cases. (Motion for Reconsideration at 11-13.) To the extent that the Court suggested such a distinction, it was incorrect. *See Koal Indus. Corp. v. Asland, S.A.*, 808 F. Supp. 1143, 1161 (S.D.N.Y. 1992) ("The proof required to show a pattern of racketeering activity in a civil RICO suit brought under § 1964(c) is the same as that required in a criminal action."); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985) ("Section 1962 renders certain conduct 'unlawful'; § 1963 and § 1964 impose consequences, criminal and civil, for 'violations' of § 1962. We should not lightly infer that Congress intended the term to have wholly different meanings in neighboring subsections."). The fact that "relatedness" bears the same meaning in civil and criminal RICO cases does not, however, change the outcome in this case.[5]

---

[5] Defendants urge the Court to adopt what they view as a distinction in the case law between the requirements for showing relatedness for criminal and civil *enterprises*—that is, enterprises established solely for the sake of racketeering and enterprises that have other, legitimate purposes. (Dkt. No. 77 at 7-9.) Defendants are correct that the Second Circuit has stated that "[t]he question of whether acts form a pattern rarely is a problem with a criminal enterprise, as distinct from a lawful enterprise that commits occasional criminal acts." *United States v. Minicone*, 960 F.2d 1099, 1108 (2d Cir. 1992) (internal quotation marks omitted). Defendants are not correct, however, that the requirements of relatedness are clearly distinct between these two types of enterprises. The statement cited by Defendants on this point concerns continuity, not relatedness. *See United States v. Indelicato*, 865 F.2d 1370, 1383-84 (2d Cir. 1989) ("Where

5

In determining whether predicate acts are sufficiently related such that they form a "pattern" of racketeering activity, the Court considers the factors articulated by the Supreme Court in *H.J. Inc. v. Northwestern Bell Tel. Co.*: whether the acts "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 492 U.S. 229, 240 (1989) (internal quotation marks omitted). Plaintiffs contend that the Court's Opinion "runs afoul of the holding in *H.J. Inc.* by seeming to require that Plaintiffs satisfy *each* of the *H.J. Inc.* factors." (Motion for Reconsideration at 15.) Plaintiffs are mistaken. The Court used the elements articulated in *H.J., Inc.* merely as "a guidepost, a starting point for the relatedness inquiry as a *whole*, not a list of elements, each of which must be proven in order to establish a pattern of racketeering activity." *United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006). Indeed, the Court heeds—both in its Opinion and now—the Second Circuit's warning against an "overly formal conception" of relatedness.[6] *Id.* "In essence, the overall pattern requirement, of which relatedness is one component, is a bulwark against the application of RICO to the perpetrators of isolated or sporadic criminal acts." *Id.* at 375-76 (internal quotation marks omitted). "Thus, it is with an eye toward that outer limit that we consider whether predicate racketeering acts are related enough to form a pattern." *Id.* at 376.

---

the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity.")

[6] For this reason, the Court rejects Plaintiffs' "reading of *H.J. Inc.* as delineating specific requirements for finding horizontal relatedness distinct from vertical relatedness," as "such a reading "creates an overly formal conception of [relatedness]." *Daidone*, 471 F.3d at 375. (*See* Motion for Reconsideration at 15.)

6

Here, Plaintiffs have not adequately pleaded that the alleged predicate acts—bribery in violation of the Travel Act, 18 U.S.C. § 1952(a), and wire fraud—are sufficiently related such that they form a pattern of racketeering activity. As the Court held in its Opinion, "very little links the two predicates together." (Opinion at 17.) Central to this conclusion is the fact that the purpose and victims of the two offenses are distinct.[7] Accordingly, the Court denies reconsideration of its dismissal of Plaintiffs' civil RICO claims.[8]

## III. Certification for Interlocutory Appeal

---

[7] The purpose of the alleged bribery was to allow Defendants to obtain inflated construction contracts from the Venezuelan government. (Compl. ¶¶ 3-5.) The purpose of the alleged wire fraud was to induce Banco Venezolana and Eligio Cedeno to stop retaining Plaintiffs' consulting services, where both the bank and Cedeno were staunch opponents of Defendants and had sought to expose Defendants' illegal activities. (*Id.* ¶¶ 7-14.) Plaintiffs allege that these acts share the uniform purpose of "securing monetary benefits for [Defendants], and . . . cover[ing] up this illegal scheme." (*Id.* ¶ 264.) "[T]he fact that two acts 'both have the effect of generally increasing defendants' funds,'" however, "is not enough to support a RICO claim." *Cohen v. Cohen*, 993 F. Supp. 2d 414, 426 (S.D.N.Y. 2014) (quoting *Ray Larsen Assocs. v. Nikko Am., Inc.*, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996)).

Further, while Plaintiffs are the victims of the alleged wire fraud, the bribery would theoretically harm not Plaintiffs, but Defendants' business competitors. RICO was not designed, however, "to punish isolated instances of lawbreaking, and the test [for relatedness] prevents plaintiffs from pleading unrelated predicate acts allegedly committed against other victims to extend the scope of the pattern of racketeering activity." *Id.* at 425 (internal quotation marks, ellipsis, and alterations omitted).

[8] The Court also notes that courts in this district have "repeatedly cautioned against plaintiffs' attempts to mold their claims to the RICO form even though their injuries do not fall within those intended to be addressed by the Act." *Lefkowitz v. Reissman*, No. 12 Civ. 8703 (RA), 2014 WL 925410, at *4 (S.D.N.Y. Mar. 7, 2014) (internal quotation marks omitted). To this end, RICO claims "merit particular scrutiny" where, as here, "the predicate acts are mail and wire fraud, and where the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion. Permitting plaintiffs to advance RICO claims in such cases would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions." *Id.* (internal quotation marks and citation omitted).

7

Plaintiffs request that the Court certify the issues discussed above for interlocutory appeal. (Motion for Reconsideration at 19-23.) It is a "basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). However, a court, in its discretion, may certify an interlocutory ruling for appeal if the ruling involves (1) "a controlling issue of law" as to which (2) "there is substantial ground for difference of opinion" and (3) "an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Even if these three criteria are met, "district courts retain unfettered discretion to deny certification if other factors counsel against it." *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (internal quotation marks omitted).

Due to the Court's conclusion on reconsideration that it is unnecessary to resolve whether Plaintiffs have adequately pleaded the predicate act of wire fraud, the only issue that remains for interlocutory appeal is whether the predicate acts are sufficiently "related" such that they form a pattern of racketeering activity. This issue, while controlling, is not purely one of law, but rather one of mixed law and fact. To resolve it, the Second Circuit would be required to review this Court's application of the law to the allegations in the amended complaint. It is thus not an appropriate issue for interlocutory review. *See Century Pac. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) ("The 'question of law' certified for interlocutory appeal must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.") (internal quotation marks omitted). The Court denies Plaintiffs' request for certification of an interlocutory appeal.[9]

---

[9] Plaintiffs have articulated two purely legal issues for interlocutory appeal that concern the "relatedness" inquiry. (Motion for Reconsideration at 20 (requesting interlocutory appeal to determine whether there is "a distinction in the application of relatedness as between criminal and civil RICO cases" and whether "a plaintiff in a civil RICO action [is] required to satisfy each

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for partial reconsideration or, in the alternative, for certification for interlocutory appeal, is DENIED. Defendants' motion to file a sur-reply is GRANTED. The Clerk of Court is directed to close the motions at Docket Numbers 64 and 81.

SO ORDERED.

Dated: April 13, 2015
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

of the non-exclusive *H.J. Inc.* factors to show relatedness").) On reconsideration, however, the Court has clarified that Plaintiffs are correct on both issues.