

# SMITH VALLIERE PLLC

1221 AVENUE OF THE AMERICAS | 42ND FLOOR | NEW YORK NEW YORK 10020

Tel 212 755 5200
www.svlaw.com

Mark W. Smith
(212) 755-5220
msmith@svlaw.com

April 10, 2015

**FILED UNDER SEAL AND
VIA ECF WITH REDACTIONS**

Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007
OetkenNYSDChambers@nysd.uscourts.gov

**REDACTED PUBLIC FILING**

Re: *The Honorable Otto J. Reich, et al. v. Betancourt Lopez, et al.*, No. 13-cv-5307

Dear Judge Oetken:

We represent Plaintiffs, the Honorable Otto J. Reich and Otto Reich Associates, LLC, in the above-referenced matter. On April 3, 2015, and pursuant to the Court's instructions, the parties submitted their respective proposed protective orders for the Court's consideration.[1] Plaintiffs submit that the protective relief sought by Defendants is unsupportable as a matter of law and fact and, if granted, would seriously and unfairly prejudice Plaintiffs in the prosecution of this case.[2]

### A. Defendants Have Not Met Their Burden Of Showing "Good Cause" For The Broad Protective Relief They Seek

A party seeking a protective order under Fed.R.Civ.P. 26(c) bears the burden of proving that "good cause" exists for issuance of that order.[3] *See* Fed.R.Civ.P. 26(c)(1). Good cause can

---

[1] Plaintiffs' proposed protective order shall be referred to herein as "Plaintiffs' Proposed Protective Order" or "PPPO"; Defendants' proposed order shall be referred to as "Defendants' Proposed Protective Order" or "DPPO."

[2] At the outset, it is important to note that the overbearing protective relief Defendants seek to impose now will control discovery in this matter even if the Court finds – and it should not – that Defendants Leopoldo Alejandro Betancourt ("Betancourt") and Pedro Trebbau Lopez ("Trebbau") are not subject to personal jurisdiction in New York. Thus, the protective relief ordered by this Court will govern the production of documents from not only Plaintiffs and Defendant Francisco D'Agostino Casado ("D'Agostino"), but also various subpoenaed third parties.

[3] Defendants concede that they bear the burden of showing "good cause" for the broad protective relief that they request. Indeed, the first sentence in Defendants' Proposed Protective Order states: "The Court having found that good cause exists ...." (*See* DPPO at 1.)

be shown only where the requesting party demonstrates that a "clearly defined, specific and serious injury" will occur absent the protective relief. *Qube Films Ltd. v. Padell*, 13-CV-8405 (AJN), 2015 U.S. Dist. LEXIS 2021, at *6 (S.D.N.Y. Jan. 5, 2015) (citations omitted); *Allen v. City of New York*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) (good cause under Rule 26(c) requires demonstrating a "clearly defined and serious injury" that would result from disclosure) (citations omitted).

The showing necessary to establish a "clearly defined, specific and serious injury" entails "an unusually fact-sensitive inquiry." *Sang Lan v. Time Warner, Inc.*, 11 Civ. 2870 (AT) (JCF), 2014 U.S. Dist. LEXIS 87198, at *5 (S.D.N.Y. June 20, 2014) (citation omitted). The party seeking protective relief must set forth "particular and specific facts ... rather than conclusory assertions." *Id.*; *see Qube Films Ltd.*, 2015 U.S. Dist. LEXIS 2021, at *6 ("'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' are not sufficient to satisfy the burden") (citation omitted). The party seeking protective relief "*must provide the court with information* from which it can reasonably conclude that the nature and magnitude of the moving party's interest are such that protective intervention by the court is justified." *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982) (internal quotations and citations omitted) (emphasis added).

Here, Defendants have neither met nor even attempted to meet their burden of showing good cause. Defendants did *not* file a motion seeking protective relief. Nor has any Defendant even bothered to submit an affidavit setting forth any facts upon which this Court could conceivably find that good cause exists to enter a protective order beyond Plaintiffs' proposal. To the contrary, the entire basis for Defendants' request is contained in two unsworn attorney letters to the Court. (*See* Letter from Frank Wohl, dated November 5, 2014 [ECF No. 86]; Letter from Joseph DeMaria dated November 5, 2014 ("DeMaria Letter") [ECF No. 87] (collectively, the "November 5 Letters").)

Defendants' November 5 Letters do not even allege *any* injury, much less demonstrate a "clearly defined, specific and serious" injury, which they will suffer if Defendants' requested protective relief is denied. Defendants' purported claim of harm is based entirely on rank speculation, conjecture and the naked assertions of their counsel that "[f]rom the very inception of this case, *someone* has used *the allegations of this lawsuit* to attack" Defendants in the media. (*See* DeMaria Letter [ECF No. 87] at 1 (emphasis added)). Defendants do not even claim – much less present "particularized and specific facts" – that Plaintiffs played any role in any reports about the allegations in this action, nor do they explain how media coverage, including by the *Wall Street Journal*, of the allegations in Plaintiffs' publicly-filed Amended Complaint, justifies the imposition of a protective order here.[4]

---

[4] Since this lawsuit was filed, Defendants have issued at least eight press releases to New York seeking to alter public opinion about themselves, this lawsuit, and their various personally controlled businesses, and have provided extensive information about their business activities – which they now claim should be designated "Confidential" – to such media outlets as the *Wall Street Journal*.

The reality is that Defendants are wealthy, high-profile individuals who became newsworthy when they filed a *$300 million* defamation action in Florida in 2012. Since then, Defendants have repeatedly thrust themselves into the national and international spotlight via their self-serving use of the national and international media, including New York-related press agents and press releases.[5] Media attention concerning this case is either in response to Defendants' efforts to manipulate the media or due to the fact that Defendants and/or their business associates/partners are being investigated by the authorities in several jurisdictions in multiple countries. In any event, Defendants' speculative and conclusory allegations of media harassment do not constitute "good cause."

### B. Defendants' Proposed Categories Of Confidential Information Are Ambiguous And Unworkably Broad

Plaintiffs' Proposed Protective Order tracks Fed.R.Civ.P. 5.2 and rationally limits the scope of confidential information to only social security numbers, taxpayer identification numbers, personal identification numbers issued by a foreign government, dates of birth, and financial account numbers. In contrast, Defendants ask the Court to designate as "confidential" the following four overly-broad and ambiguous categories of information:

(a) previously non-disclosed financial information (including bank account information and asset values);

(b) previously non-disclosed material relating to the ownership or control of any non-public company;

(c) previously non-disclosed business plans, product development information or marketing plans; and

(d) any information of a personal or intimate nature regarding *any individual* (including, without limitation, medical or health information; personal contact information; and information, such as identification numbers, vehicle registration, and social club membership, the disclosure of which could cause an alleged security risk to any individual).

Even if Defendants could show good cause to protect certain categories of information – and they cannot – Defendants' proposed categories are flawed and unworkable. First, each of Defendants' categories is unacceptably broad thereby allowing Defendants to designate as "confidential" whatever they themselves deem to be "financial information," "material relating to ownership or control of any non-public company," "business plans, product development information or marketing plans," and "information of a personal or intimate nature."

---

[5] Defendants are individuals of public interest due to their own conduct. That Defendants are under investigation by the New York County District Attorney's Office is not Plaintiffs' problem. Regardless, courts regularly hold that where the public has an interest in the litigation, the First Amendment trumps purported confidentiality concerns.

Honorable J. Paul Oetken
April 10, 2015
Page 4

For example, in the papers filed in connection with Defendants' Renewed Motions to Dismiss, Defendants redacted repeated references to ▇▇▇▇▇, but did not redact references to J.P. Morgan, the Compass Group, Credit Suisse Securities USA, LLC, Pershing LLC or Deutsche Bank. Similarly, Defendants redacted the amount that Betancourt paid for his Penthouse Apartment at the Olympic Tower in New York City, but did not redact information revealing that he resides in the Penthouse Apartment at the Olympic Tower. Defendants also redacted the name of one of the law firms they retained in New York (▇▇▇▇▇▇▇▇), but did not redact the names of their other New York counsel (Kasowitz, Benson, Torres & Friedman LLP; Platte, Klarsfeld, Levine & Lachtman LLP; and Lewis Baach PLLC).[6]

Where, as here, there appears to be no rhyme or reason to Defendants' redactions – all of which Defendants presumably will contend fall within one or more of their designated categories – Defendants would have *carte blanche* to designate as "confidential" any information they want to keep out of the public eye if the Court adopts Defendants' Proposed Protective Order. *See In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 142, 148 (2d Cir. 1987) (trial court properly lifted its own protective order given "exceptionally pervasive protection granted appellants during the pretrial stages of this litigation," including the ability to designate as "confidential" "any records that, in their estimation" should be kept confidential, along with "the fact that appellants never were required to show good cause as mandated by Rule 26(c)").

Second, Defendants' financial information (Category No. 1) and information relating to the ownership or control of any non-public company, including any of the Derwick entities (Category No. 2), is at the heart of this litigation. Plaintiffs allege that Defendants amassed enormous fortunes through an illicit and illegal bribery scheme designed to secure energy-industry contracts in Venezuela. Plaintiffs have also alleged that Defendant D'Agostino worked together with Betancourt and Trebbau, and that they acted as each other's agents and partners, and were the owners and/or officers, directors, or operators of one or more of the Derwick entities. Plaintiffs should not be handicapped in their ability to develop these lines of inquiry and evidence, including by working with various third-party witnesses, on account of Defendants having designated such information "confidential."

Third, it is significant that Defendants include their "identification numbers" as part of the category of information they consider "of a personal or intimate nature." Yet, Betancourt and Trebbau publicly filed unredacted copies of their drivers' licenses, voter registration information and tax registration documents, each of which contained their Venezuelan "identifying number." (*See* ECF Nos. 67, 68.) These documents were publicly filed notwithstanding the redaction rules set forth at Fed.R.Civ.P. 5.2 and Rule 21.3 of the Electronic Case Filing Rules & Instructions for the Southern District of New York. Plaintiffs should not be prohibited from sharing that information (and other information Defendants now consider "of a personal or intimate nature" that Defendants voluntarily disclosed) with third-party witnesses who are unwilling to submit themselves to the jurisdiction of this Court for the purpose of

---

[6] Plaintiffs will address each of Defendants' redactions in Plaintiffs' reply papers in further support of their Motion to Vacate the Court's Interim Sealing Order and Unseal Documents Previously Filed Under Seal.

Honorable J. Paul Oetken
April 10, 2015
Page 5

Honorable J. Paul Oetken
April 10, 2015
Page 5

resolving "any issue or dispute arising" under Defendants' Proposed Protective Order. *See* Section C, *infra*.

Fourth, many of the documents that Defendants apparently seek to protect are documents controlled by third parties that were provided to the third parties by Defendants, obtained independently by the third parties, or created by the third parties. Defendants have not claimed – let alone suggested – that any of these third parties are under any obligation to keep these documents "confidential." Indeed, several third parties produced to Plaintiffs documents that Defendants now disingenuously ask this Court to characterize as "confidential." For example, the Olympic Tower where Betancourt resides in New York, produced documents containing Betancourt's telephone numbers, identifying numbers, and financial information as well as information concerning Derwick, which Betancourt provided to it without any confidentiality restrictions. If such documents were subject to a confidentiality agreement, Defendants surely would have sought to enforce it or make Plaintiffs (and the Court) aware of it. It is also noteworthy that Defendants have *publicly and voluntarily* distributed to the *Wall Street Journal* and various public authorities a document (labeled attorney work product) that discusses various aspects of their business and personal lives, including their views about this lawsuit.

Plaintiffs should not be burdened with Defendants' contrived categories of "confidential" information, which Defendants have not sought to impose on any other third party.

C. Defendants' Proposed Protective Order Is
   Impractical And Intended To Silence Third-Party Witnesses

The relief Defendants seek is part of a larger legal strategy that has been at play since the commencement of this litigation. To date, Defendants have successfully prevented Plaintiffs from sharing with prospective third-party witnesses, including subpoenaed parties who already possess information that Defendants now claim is "confidential," critical information necessary to help Plaintiffs build their case.[7] Defendants' Proposed Protective Order is designed to intimidate third-party witnesses who may have documents and information that substantiate Plaintiffs' claims.

To illustrate, the Non-Disclosure Agreement attached to Defendants' Proposed Protective Order as Exhibit A requires that any third-party witness who is provided with "confidential" documents must agree to *submit themselves to the jurisdiction of this Court* "for the purpose of *any issue or dispute* arising" under Defendants' Proposed Protective Order. *See* Exhibit A to Defendants' Proposed Protective Order (emphasis added). It also provides that these witnesses may be subject to "punishment for contempt of court," *i.e.*, jail time for criminal contempt, if

---

[7] Plaintiffs were prevented from providing J.P. Morgan with Defendants' social security numbers, personal identifying numbers and account numbers – information that is already in J.P. Morgan's possession – to assist J.P. Morgan in producing documents to Plaintiffs. Similarly, Plaintiffs were not allowed to provide Defendants' telephone numbers to the telephone companies to obtain copies of Defendants' telephone records, which would have shown calls to and from New York during the relevant period.

they are found to have breached the terms of the protective order.[8] (*Id.*). Such draconian confidentiality restrictions are not appropriate in a case like this, which has been the subject of widespread national (and international) media attention, including by the *Wall Street Journal*, and which has drawn the attention of the New York County District Attorney's Office and the United States Department of Justice, among others. Such harsh and extreme requirements serve only one purpose – to prevent third parties from working with and providing relevant information to Plaintiffs by threats and intimidation.

This is precisely the situation that Plaintiffs faced with J.P. Morgan where Defendants' Betancourt and Trebbau held no fewer than *forty (40) separate bank accounts*, which held *over ▓▓▓▓▓▓▓ in assets*. On November 13, 2014, the Court issued an Order allowing for the discovery of "documents concerning [Betancourt's and Trebbau's] meetings and business with [Eduardo] Travieso," who was employed by J.P. Morgan in New York during the relevant period. Defendants produced only a handful of documents concerning Travieso. In contrast, J.P. Morgan informed Plaintiffs that, in addition to banking documents, the bank also possessed numerous communications between the New York-based Travieso and Betancourt and/or Trebbau, as well as other documents concerning Defendants' business with Travieso. J.P. Morgan refused to produce these documents to Plaintiffs – despite having been served with a valid subpoena – because it was worried that its production *might* run afoul of the Court's November 13, 2014 Order. If J.P. Morgan, a sophisticated commercial enterprise with teams of experienced counsel, expressed such concerns, there is simply no way an average person will voluntarily agree to submit to the punishing conditions set forth in Defendants' Proposed Protective Order.

Defendants have repeatedly demonstrated that, as wealthy individuals with virtually limitless resources, they view litigation (and the threat of litigation) as a tool to silence and intimidate their critics. Defendants have falsely accused Plaintiffs of disseminating negative information about them, and threatened Plaintiffs and the undersigned counsel with legal action and motions for sanctions under Fed.R.Civ.P. 11 for allegedly disseminating negative and/or false information about them – again, all without any basis in fact. There is no reason to think that, if so empowered by this Court, Defendants won't threaten and intimidate innocent third parties who have information that would be helpful to Plaintiffs' case and who would otherwise be interested in cooperating with Plaintiffs.

Plaintiffs' respectfully request that the Court adopt the language set forth in Plaintiffs' Non-Disclosure Agreement (*see* PPPO, Exhibit A), which requires third parties to maintain the confidentiality of information designated "confidential" and restricts their use of such information to this litigation. *See also* PPPO at ¶ 3 ("Recipients of Confidential Information under this Order may use such material solely for the prosecution or defense of this action and any appeals thereto").

---

[8] Of course, before such a determination could be made, these third-party witnesses would be required to hire a New York lawyer and incur attorneys' fees and expenses associated with defending themselves against Defendants' accusations in the Southern District of New York.

### D. The First Amendment Is Offended By Protective Orders Granted Without Good Cause

A protective order that is issued in the absence of good cause necessarily violates the First Amendment. Parties presumptively have a right, in part protected by the First Amendment, to share what they learn in discovery with other persons, including potential third-party witnesses. A protective order that is not based on good cause infringes upon this presumptive right. Because Defendants have failed to make a showing of good cause, Defendants' Proposed Protective Order would offend Plaintiffs' First Amendment rights as well as the First Amendment rights of the public to have access to judicial documents.

Defendants pretend that they are worried about discovery, but not court filings. Yet, their Proposed Protective Order belies that assertion. Paragraph 7 of Defendants' Proposed Protective Order states that any information designated as "confidential" shall be filed under seal in Court. Defendants make no mention of the extraordinarily high standard for sealing documents because they cannot meet it. (*See* Plaintiffs' Memorandum of Law In Support of Their Motion to Vacate the Court's Interim Sealing Order and Unseal Documents Previously Filed Under Seal [ECF No. 132].)[9]

### E. Plaintiffs Object To Certain Provisions In Defendants' Proposed Protective Order

Defendants' Proposed Protective Order relies upon boilerplate language and law school-style "model" forms designed for cases dissimilar from this one. Rather than attempting to craft a narrowly-tailored, customized protective order appropriate for the facts and issues presented here, Defendants ask the Court to enter a protective order more suited for cases in which all the interested parties mutually seek to maintain the confidentiality of purely private information. This dispute is entirely different, for it touches on public issues that have graced the pages of the world's media and garnered the attention of major law enforcement agencies.

Accordingly, Plaintiffs object to the following provisions in Defendants' Proposed Protective Order for the reasons set forth below:

(a) Paragraph 3 of Defendants' Proposed Protective Order gives a party "30 days after receipt of the deposition transcript and/or video recording or the entry of [a Protective] Order, whichever is later," to designate portions of a deposition transcript and/or video recording as "confidential." Defendants' Proposed Protective Order further provides that, during this 30-day period, the entire deposition transcript and all exhibits shall be treated as "confidential." Plaintiffs submit that Defendants' proposed 30-day period is, quite simply, too long. Plaintiffs respectfully refer the Court to Paragraph 5 of Plaintiffs' Proposed

---

[9] It is one thing to allow such an accommodation for a few narrow pieces of information such as those identified in Fed.R.Civ.P. 5.2, but it becomes a major burden when dealing with a substantial amount of documents and information.

        Protective Order, which allows the parties 10 days to designate portions of a deposition transcript as "confidential," and relatedly shortens to 10 days the time period during which the entire deposition transcript and exhibits shall be treated as "confidential."

(b)     Paragraph 3 of Defendants' Proposed Protective Order permits a party to "designate material produced by a non-party as Confidential by serving on all parties a letter identifying it as such within 30 days of receipt of the non-party material or the entry of a Protective Order, whichever is later." Defendants' Proposed Protective Order further provides that "the entire non-party production shall be treated as Confidential under this Order until the expiration of the 30-day period for designation by letter." Plaintiffs submit that Defendants' proposed 30-day period is too long. Plaintiffs respectfully refer the Court to Paragraph 6 of Plaintiffs' Proposed Protective Order, which gives the parties *and non-parties* 10 days following production to designate materials produced by a non-party as "confidential."

(c)     Paragraph 5 of Defendants' Proposed Protective Order sets forth those persons to whom "confidential" information may be disclosed. Defendants' Paragraph 5 fails to include the following persons, all of whom are set forth at Paragraph 7 of Plaintiffs' Proposed Protective Order: the parties' insurers or indemnitors, lenders and their respective counsel (PPO at ¶ 7(a)); outside photocopying, document storage, information technology, data processing, or graphic production services employed or retained by the parties' counsel (PPO at ¶ 7(b)); counsel to any witness who may be called to testify at trial or deposition in this action ((PPO at ¶ 7(c)); consultants and investigators (PPO at ¶ 7(e)); and the appellate court(s) (PPO at ¶ 7(f)). These are routine categories of persons who frequently participate in litigations.

(d)     Paragraph 7 of Defendants' Proposed Protective Order concerns the filing of documents under seal. Defendants' Proposed Protective Order fails to provide that a party is not required to file a document under seal if the "confidential" information contained or reflected in the document was designated solely by that party. Plaintiffs respectfully refer the Court to Paragraph 10 of Plaintiffs' Proposed Protective Order for that language. Plaintiffs also refer the Court to Paragraph 11 of Plaintiff's Proposed Protective Order, which addresses the use of documents and information designated as "confidential" at trial.

(e)     Paragraph 8 of Defendants' Proposed Protective Order speaks to the situation where a party objects to a designation of confidentiality. Defendants' Proposed Protective Order requires the objecting party – and not the designating party – to apply to the Court for a ruling on the propriety of a "confidential" designation. Plaintiffs submit that the party seeking to maintain the confidential nature of a challenged document should be the party required to apply to the Court to maintain and justify that designation, and also bear the burden of establishing

good cause for the continuation of that treatment. *See Lachica v. City of New York*, 94 Civ. 7379 (LAK), 1995 U.S. Dist. LEXIS 2121, at *3 (S.D.N.Y. Feb. 23, 1995). Plaintiffs respectfully refer the Court to Paragraph 9 of Plaintiffs' Proposed Protective Order.

(f) Paragraphs 12-16 of Defendants' Proposed Protective Order address the inadvertent disclosure of information subject to a claim of attorney-client privilege or attorney work product protection, but not the inadvertent disclosure of information designated "confidential." Plaintiffs respectfully refer the Court to Paragraph 13 of Plaintiffs' Proposed Protective Order, which speaks to the inadvertent disclosure of "confidential" information.

(g) Defendants' Proposed Protective Order does not address the situation where a party or person in possession of "confidential" information receives a subpoena or other judicial process seeking the production of "confidential" information. Plaintiffs respectfully refer the Court to Paragraph 15 of Plaintiffs' Proposed Protective Order for such language.

(h) Defendants' Proposed Protective Order fails to provide that any party may move the Court to modify, supersede, terminate or eliminate any provision of the Protective Order (or the Protective Order in its entirety) at any time. Plaintiffs respectfully refer the Court to Paragraph 17 of Plaintiffs' Proposed Protective Order for such language.

The Second Circuit has cautioned that Rule 26(c) "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes" on a showing of good cause. *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983). Because Defendants have not – and cannot – meet their burden of demonstrating that good cause exists for the protective relief they seek, this Court should adopt in its entirety Plaintiffs' Proposed Protective Order.

Respectfully submitted,

Mark W. Smith

cc: Frank H. Wohl, Esq. (Counsel for Leopoldo Alejandro Betancourt Lopez)
Joseph A. DeMaria, Esq. (Counsel for Pedro Jose Trebbau Lopez)
Shawn Rabin, Esq. (Counsel for Francisco D'Agostino Casado)