UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                     :

THE HONORABLE OTTO J. REICH and OTTO  :
REICH ASSOCIATES, LLC,                              :
                                Plaintiffs,    :           13-CV-5307 (JPO)
                                                        :
                    -v-                      :          OPINION AND ORDER
                                                        :
LEOPOLDO ALEJANDRO BETANCOURT     :
LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and :
FRANCISCO D'AGOSTINO CASADO,         :
                                    Defendants. :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

In an opinion and order dated August 18, 2014, the Court allowed jurisdictional discovery to determine the domicile of Leopoldo Alejandro Betancourt Lopez ("Betancourt") and Pedro Jose Trebbau Lopez ("Trebbau"). *See Reich v. Lopez*, 38 F. Supp. 3d 436, 459 (S.D.N.Y. 2014) (Oetken, J.).[1] Jurisdictional discovery is now complete. Betancourt and Trebbau have renewed their motions to dismiss Plaintiffs' claims against them under Federal Rule of Civil Procedure 12(b)(2). For the reasons that follow, their motions are granted.[2]

**I.    Discussion**

Betancourt and Trebbau move to dismiss the Complaint on the ground that the Court lacks personal jurisdiction over them. In response, Plaintiffs principally argue that Betancourt and Trebbau are New York domiciliaries and, therefore, are subject to general jurisdiction in New York. Next, Plaintiffs raise several other arguments, many of which the Court already

---

[1] The Court assumes familiarity with this opinion and order.

[2] The Court has reviewed Betancourt's proposed sur-surreply memorandum of law and concludes that it would not affect the disposition of the instant motions. As such, Betancourt's motion for leave to file a sur-surreply is denied as moot.

rejected in its August 18 opinion. To the extent that the Court has already rejected the arguments pressed by Plaintiffs here, the Court will treat those arguments as a motion to reconsider the earlier opinion.

A. **Legal Standard**

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *see also DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (per curiam). Accordingly, the Court must engage in a "two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). First, the Court must look to the relevant jurisdictional statute of the state in which it sits: New York. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). Then, "[i]f the exercise of jurisdiction is appropriate under that statute, the [C]ourt must decide whether such exercise comports with the requisites of due process." *Id.*

Plaintiffs have the burden of showing personal jurisdiction over Defendants. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). To survive a motion to dismiss under Rule 12(b)(2), a plaintiff need only make a "prima facie showing" of jurisdiction. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998). But where, as here, "the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held[,] the plaintiff's prima facie showing . . . must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Bank Brussels Lambert*, 171 F.3d at 784 (brackets and internal quotation marks omitted). Questions of personal jurisdiction are fact intensive. *E.g.*,

2

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). And because the Court has not held an evidentiary hearing, "the pleadings and any supporting affidavits are to be interpreted in the light most favorable to the plaintiff." *Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F. Supp. 2d 481, 486 (S.D.N.Y. 2001).

The parties agree that if Betancourt and Trebbau are New York domiciliaries, the Court's exercise of personal jurisdiction would be consistent with New York law and the due process clause. Thus, the first question is whether Plaintiffs have made a prima facie showing that Betancourt and Trebbau are New York domiciliaries. The second question is whether, assuming Betancourt and Trebbau are not New York domiciliaries, this Court's jurisdiction is consistent with New York law and the due process clause.

### B. Domicile

Domicile is the "technically pre-eminent headquarters that every person is compelled to have in order that by aid of it, certain rights and duties which have attached to it by the law may be determined." *In re Thorne*, 148 N.E. 630, 632 (N.Y. 1925). A person has exactly one domicile at all times from his birth to his death. *Crawford v. Wilson*, 4 Barb. 504 (N.Y. Gen. Term 1848). At birth, he has the domicile of his custodial parent. *E.g.*, *In re Webber's Will*, 64 N.Y.S.2d 281, 283 (N.Y. Sur. Ct. 1946). He keeps this domicile until, by choice or operation of law, he acquires another. *Ennis v. Smith*, 55 U.S. (14 How.) 400, 422–23 (1853). To acquire a domicile by choice, the law requires physical presence in the domicile state coincident with the intent to make that state one's home—at least for a period of time. *In re Newcomb's Estate*, 84 N.E. 950, 954 (N.Y. 1908). The parties do not dispute that Betancourt and Trebbau have been physically present in New York. So the only question is intent.

Self-serving statements of intent do not alone suffice to prove domicile. Rather, in this context, actions consistent with the intent to make a place one's home speak louder than words

alone. *See, e.g.*, *In re Griswold's Trust*, 99 N.Y.S.2d 420, 425 (N.Y. Sup. 1950) ("The judiciary has tended to disregard declarations when they are in conflict with conduct." (citing, *inter alia*, *Newcomb's Estate*, 84 N.E. at 955)). Intent can be inferred from a wide range of facts, and, as such, the totality of the circumstances surrounding a person's residences is relevant to the question. *See, e.g.*, *In re Will of Meyer*, 876 N.Y.S.2d 7, 12 (App. Div. 1st Dep't 2009) ("Intent is determined by the conduct of the person and all the surrounding circumstances . . ."); *see also Morrison v. Blitz*, No. 88 CIV. 5607 (MBM), 1996 WL 403034, at *1 (S.D.N.Y. July 18, 1996) (holding that courts should consider factors "including, but not limited to, the place of [a person's] family ties, voter registration, tax liability, driver's license and vehicle registration, business activities, bank accounts, social activities and religious affiliations.").

Although a person can have only one domicile at a time, many people live—in one sense of that word or another—in more than one place. *See Black v. Black*, 968 N.Y.S.2d 722, 723 (App. Div. 3d Dep't 2013). "An existing domicile, whether of origin or selection, continues until a new one is acquired, and a party . . . alleging a change in domicile has the burden to prove the change by clear and convincing evidence." *Hosley v. Curry*, 649 N.E.2d 1176, 1178 (N.Y. 1995).

Betancourt and Trebbau were Venezuelan domiciliaries at birth[3] and they both aver that Venezuela is where they intend their current homes to be. Plaintiffs, then, have the burden to show by clear and convincing evidence that Betancourt and Trebbau intended to make their New York residences their preeminent headquarters. Despite the opportunity to conduct fairly extensive jurisdictional discovery, and even with all factual disputes resolved in their favor,

---

[3] Plaintiffs do not argue that Trebbau and Betancourt established a new domicile when they went to college in the United States.

4

Plaintiffs have failed to make a prima facie case that Betancourt and Trebbau are New York domiciliaries.

### 1. Betancourt

Plaintiffs offer the following facts[4]—which, for the purpose of this motion, are assumed to be true—in support of jurisdiction over Betancourt.

The first set of facts offered by Plaintiffs concern Betancourt's residence in New York. In 2010, Betancourt bought an apartment in midtown Manhattan for $11.75 million. (*See* Statement of Facts in Opposition to Betancourt's Motion to Dismiss ¶ 27.) Since January 2011, Betancourt has been in the process of renovating the apartment. (*Id.* ¶ 40.) This process has cost Betancourt more than $3 million so far. (*Id.* ¶ 41.) Around the same time, Betancourt acquired furniture worth more than €100,000 (equivalent to around $109,000 at the time of this writing) and artwork worth well over $3 million. (*Id.* ¶¶ 45–47.) He pays for utility services at the apartment. (*Id.* ¶¶ 38–39.) He receives some mail at the apartment. (*Id.* ¶ 52.)

Next, Plaintiffs contend that Betancourt keeps most of his money in accounts with New York financial institutions. (*E.g.*, *id.* ¶¶ 70–79.) Betancourt, according to Plaintiffs, keeps $68 million in dollar-denominated accounts in New York banks. And this figure, Plaintiffs contend, represents "virtually all of Betancourt's assets in the world."[5] (*Id.* ¶¶ 6–8.)

---

[4] Plaintiffs' statement of facts contains many things other than relevant facts, including—but hardly limited to—legal conclusions (*e.g.*, ¶ 4 ("At all relevant times, Betancourt was domiciled for purposes of personal jurisdiction in New York."), allegations regarding the misdeeds of Betancourt's friend and financial advisor (*id.* ¶¶ 189–94), allegations that Betancourt's firm is under investigation by the Manhattan District Attorney's Office, (*id.* ¶ 203), and a long list of irrelevant factual contentions (*see generally id.*). In this section, the Court considers only those facts that are plausibly relevant to establishing personal jurisdiction over Betancourt.

[5] Betancourt disputes this characterization. According to him, roughly 35% of his net worth, at most, has been in accounts with New York banks. (Trans. of Betancourt Deposition, at 51:15–22.) Plaintiffs contend that Betancourt's valuation of his Venezuelan assets—the majority of which, he contends, are equity shares of closely held corporations—is not credible and is entitled

Similarly, Plaintiffs contend that Betancourt conducts a wide range of business in New York. He has retained at least four separate New York law firms to provide him legal advice and assist him in transactions and litigation. (*Id.* ¶ 9.) He has consented to be sued in New York in connection with a mortgage on his New York apartment and in several other discrete contexts. (*Id.* ¶ 22.) In connection with Derwick Associates, the business that Betancourt runs with Trebbau, Betancourt has attended many business meetings and social functions in New York City. (*Id.* ¶¶ 116–40.)

Finally, Plaintiffs contend that many of Betancourt's close friends and family members live in New York. Eduardo Travieso, Betancourt's personal banker and close friend, lives in New York. So do two of Betancourt's cousins and another "relation." (*Id.* ¶¶ 197–200.)

In response to these purported New York contacts, Betancourt points to his extensive contacts with Venezuela to show that he, in fact, intends Venezuela to be his true and permanent home. Betancourt owns two residential properties in Venezuela. (Trans. of Betancourt Deposition, at 31.) Betancourt handles the maintenance and pays the bills for his family's home in Pica Pica, Venezuela. (*Id.* at 95.) He visits the home weekly, if not daily. (*Id.*) Betancourt votes in Caracas and has a Venezuelan driver's license. (Declaration of Frank Wohl, Ex. 2, ¶¶ 7, 9 & Exs. A, B.) He belongs to a social club in Caracas, sees doctors in Caracas, has health and life insurance from companies in Caracas, maintains the headquarters of his business in Caracas, and files tax returns and pays income tax in Caracas. (Trans. of Betancourt Deposition, at 115–

---

to no weight because he has not produced documentary evidence of his Venezuelan holdings. The Court need not, and does not, reach this question because, even assuming that the vast majority of Betancourt's net worth is held in New York bank accounts, Plaintiffs have failed to make a prima facie showing of jurisdiction.

16, 123, 149–50.) Betancourt has bank accounts and credit cards in Caracas. (Declaration of Frank Wohl, Ex. 7.) He owns multiple cars that he keeps in Caracas. (*Id.*, Ex. 8.)

Betancourt spends the overwhelming majority of his time outside of New York. (*Id.*, Ex. 5, at 7–8.) Of the 941 days that passed between January 1, 2011, and July 31, 2013, Betancourt spent about 42 nights in New York.[6] Although this alone is insufficient to prove that Betancourt is not domiciled in New York—indeed, one can make a place his home in one day—it is strongly indicative that Betancourt did not intend to make New York his home. *See* EUGENE F. SCOLES, ET AL., CONFLICT OF LAWS 258 (4th ed. 2004) ("Important evidence will be reflected in the amount of time that is spent at each of the residences and the purpose for which the time is spent."). And the New York apartment is not Betancourt's only non-Venezuela residence. He owns "vacation homes" in Paris, Madrid, and Florida. (Declaration of Frank Wohl, Ex. 2 ¶ 12.)

Considering all the circumstances of this case, Plaintiffs have failed to make a prima facie showing that Betancourt is domiciled in New York. Their most persuasive evidence is that, at least according to them, Betancourt keeps the vast majority of his money in dollar-denominated accounts in New York, that he owns an expensive apartment in midtown Manhattan, and that he does business in New York. But this conduct, standing alone, is not conclusive of Betancourt's intent to make his home in New York. *See Morrison*, 1996 WL 403034, at *3 (rejecting claim of New York domicile where party owned a midtown apartment and conducted extensive business in Manhattan, but voted, paid taxes, and had his driver's

---

[6] Plaintiffs contend that Betancourt falsely stated that he did not visit New York in 2013. (Plaintiffs' Surreply Memorandum of Law, at 2–3.) In support of this contention, Plaintiffs offer their unsupported statement that Betancourt was in his apartment when they attempted to serve him with papers in this suit and copies of emails that, they assert, show he was planning to visit New York in 2013. (*See* Declaration of Mark Smith in Support of Plaintiffs' Surreply.) Regardless, even assuming that Betancourt spent more time in New York, the totality of the circumstances is insufficient to overcome the presumption that his domicile remains in Venezuela.

license in another jurisdiction). Considering the totality of the circumstances, the Court concludes that Defendants have failed to present clear and convincing evidence that Betancourt intends to be domiciled in New York.

2. **Trebbau**

Trebbau says that he has been a domiciliary of Venezuela for his entire life. (Declaration of Joseph A. DeMaria, Ex. B, ¶ 5-6.) He has submitted evidence demonstrating, among other things, that he votes and pays taxes in Venezuela, and that he has a Venezuelan driver's license. (*Id.* Ex. B, ¶¶ 7-10 & Exs. A-C.) During the period from January 1, 2011, until July 31, 2013, Trebbau avers that he spent a total of about 21 days in New York. (*Id.* Ex. C, at 5, Ex D, at 2.)

Plaintiffs offer essentially the same set of facts in support of jurisdiction over Trebbau, with one important exception: Trebbau neither owns nor rents any real estate in New York at all. Instead, Plaintiffs contend, his New York residence is the home of his friend and banker, Eduardo Travieso. Plaintiffs argue that "given Defendants' wealth and stature, it is simply implausible that they could maintain their extravagant lifestyles in Venezuela—a violent, third-world country beset by rampant blackouts, food shortages and gross poverty." (Plaintiffs' Memorandum of Law in Opposition to Betancourt's and Trebbau's Motions to Dismiss, at 10 [Plaintiffs' Memorandum].) And yet Plaintiffs would have the Court believe that a man of Trebbau's estimable "wealth and stature" permanently intends to crash on his friend's couch. Plaintiffs' prima facie case that Trebbau is a New York domiciliary fails because the evidence of intent is akin to the evidence against Betancourt, but weaker. Although owning or renting property in a jurisdiction is not a prerequisite to domicile, Plaintiffs have offered insufficient evidence to support a prima facie case that Trebbau intends to make New York his permanent home.

8

## C. Plaintiffs' Other Arguments

Plaintiffs argue in the alternative that the Court has personal jurisdiction over Betancourt and Trebbau despite the fact that they are not New York domiciliaries. In support of these alternative arguments, Plaintiffs contend that (1) Betancourt and Trebbau are "doing business" in New York within the meaning of New York Civil Practice Law and Rules ("CPLR") § 301; (2) the Supreme Court's holding in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), does not apply to this case; (3) even if *Daimler* did apply, Betancourt and Trebbau are "essentially at home" in New York (despite not actually being "at home" in New York); (4) Derwick Associates' New York activities should be imputed to Betancourt and Trebbau; and (5) Plaintiffs cannot sue in Venezuela. (Plaintiffs' Memorandum at 11–22.) As a preliminary matter, the Court has already rejected the first four arguments as either incorrect or insufficient. *Reich*, 38 F. Supp. 3d at 456–57. Plaintiffs do not point to any reason to reconsider these holdings. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). Thus, the Court treats these first four arguments as a motion to reconsider, and that motion is denied.

Finally, Plaintiffs contend that Venezuela is not a viable alternative forum for their claims. The arguments they press in support of this contention rely principally on denigrating Venezuela's judicial and political system and accusing Betancourt and Trebbau of being in "criminal cahoots with the Venezuelan government." (Plaintiffs' Memorandum, at 10.) The Court need not, and does not, decide whether Venezuela is a valid alternative forum for Plaintiffs claims because, for the purpose of establishing general jurisdiction over Betancourt and Trebbau, the mere fact that Venezuela may be an inadequate forum is insufficient to confer jurisdiction on

this Court. The question in a general jurisdiction case is whether the defendants' contacts render them "essentially at home" in the forum state. *Daimler*, 134 S. Ct. at 754. Because Betancourt's and Trebbau's contacts with New York are insufficient to render them at home in New York, the contention that Venezuela may not provide Plaintiffs the relief they seek is irrelevant.

**II.    Conclusion**

For the foregoing reasons, Betancourt's and Trebbau's renewed motions to dismiss are GRANTED, and this action is dismissed as against Defendants Betancourt and Trebbau pursuant to Federal Rule of Civil Procedure 12(b)(2). Betancourt's motion for leave to file a sur-surreply is DENIED as moot.

The Clerk of the Court is directed to close the motions at docket numbers 109, 110, and 126.


SO ORDERED.


Dated: April 30, 2015
       New York, New York

_____
J. PAUL OETKEN
United States District Judge