UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

THE HONORABLE OTTO J. REICH and
OTTO REICH ASSOCIATES, LLC,

                      Plaintiffs,

       v.

LEOPOLDO ALEJANDRO BETANCOURT
LOPEZ, PEDRO JOSE TREBBAU LOPEZ,
and FRANCISCO D'AGOSTINO CASADO,

                    Defendants.

Civ. No. 13 CV 5307 (JPO)

ECF CASE

**REDACTED VERSION OF DOCUMENT
FILED UNDER SEAL ON MAY 1, 2015**

---

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO VACATE THE COURT'S INTERIM SEALING
ORDER AND UNSEAL DOCUMENTS PREVIOUSLY FILED UNDER SEAL

 

SMITH VALLIERE PLLC
1221 Avenue of the Americas, 42nd Floor
New York, New York 10020
(212) 755-5200 Telephone
(212) 755-5203 Facsimile

Attorneys for Plaintiffs
*The Honorable Otto J. Reich and
Otto Reich Associates, L.L.C.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................... 1

POINT I
     THE PUBLIC'S RIGHT OF ACCESS HAS NOT BEEN SATISFIED WHERE
     JUDICIAL DOCUMENTS REMAIN HIDDEN FROM PUBLIC INSPECTION ............ 1

    A.    The Jurisdictional Documents Constitute Judicial Documents .............................. 2

    B.    The Common Law Presumption Of Public
          Access To The Jurisdictional Documents Is Strong ............................................... 4

    C.    Defendants' Naked Assertions Of Alleged Privacy And Security
          Concerns Do Not Outweigh The Public's Presumption Of Access ....................... 8

    D.    The Public Has A First Amendment
          Right Of Access To The Jurisdictional Documents ............................................. 10

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) .................................................................................................. 6, 10

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
   07 Civ. 10470, 2013 U.S. Dist. LEXIS 98913 (S.D.N.Y. July 12, 2013) ................... 3, 5, 10, 11

*Jetblue Airways Corp. v. Helferich Patent Licensing, LLC*,
   960 F. Supp. 2d 383 (E.D.N.Y. Feb. 28, 2013) ................................................................. 3

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) ................................................................................. 4, 5, 6, 10

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ............................................................................................................ 10

*Qube Films Ltd. v. Padell*,
   13-CV-8405 (AJN), 2015 U.S. Dist. LEXIS 2021 (S.D.N.Y. Jan. 5, 2015) ...................... 9

*Saks Inc. v. Attachmate Corp.*,
   14 Civ. 4902 (CM), 2015 U.S. Dist. LEXIS 52867 (S.D.N.Y. April 17, 2015) ................ 4

*Sang Lan v. Time Warner, Inc.*,
   11 Civ. 2870 (AT) (JCF), 2014 U.S. Dist. LEXIS 87198 (S.D.N.Y. June 20, 2014) ........ 9

*Standard Inv. Chartered, Inc. v. Nat'l Assoc. of Sec. Dealers, Inc.*,
   621 F. Supp. 2d 55 (S.D.N.Y. 2007) ................................................................................. 3

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ............................................................................................ 4, 8

*United States v. Erie County*,
   763 F.3d 235 (2d Cir. 2014) ................................................................................. 1, 4, 9, 10

**Statutes**

Fed. R. Civ. P. 5.2 .................................................................................................................. 8
Fed. R. Civ. P. 12 ................................................................................................................... 3
Fed. R. Civ. P. 26 ................................................................................................................... 9

Plaintiffs The Honorable Otto J. Reich and Otto Reich Associates, LLC (together, "Plaintiffs") respectfully submit this Reply Memorandum of Law and the Declaration of Noelle Kowalczyk, sworn to May 1, 2015, with exhibits ("Kowalczyk Decl."), in further support of Plaintiffs' motion to vacate the Court's interim sealing order and unseal documents previously filed under seal (the "Unseal Motion").

## PRELIMINARY STATEMENT

This very public lawsuit has been litigated largely in secret. This is contrary to the long-standing principle that the public should have access to all proceedings and documents filed with the court. Public monitoring of the judicial process imposes upon the courts a measure of accountability and deters arbitrary judicial behavior. Such monitoring is not possible without access to the documents filed with the court. At issue here are judicial documents submitted by Plaintiffs in opposition to Defendants' renewed motions to dismiss on personal jurisdiction grounds (the "Motions"), which the Court granted in an Opinion and Order dated April 30, 2015 (the "April 2015 Opinion"). Under both the common law and the First Amendment, these documents should be made immediately available to the public.

## ARGUMENT

### POINT I

**THE PUBLIC'S RIGHT OF ACCESS HAS NOT BEEN SATISFIED WHERE JUDICIAL DOCUMENTS REMAIN HIDDEN FROM PUBLIC INSPECTION**

The Second Circuit has recognized that "[t]he notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014). Here, the public's right of access to the legal and factual materials submitted in connection with Defendants' Motions has not been

satisfied by the Court's unsealing of the parties' *redacted* memoranda,[1] attorney declarations and Plaintiffs' Statements of Facts Supporting a *Prima Facie* Case of Personal Jurisdiction (the "Fact Statements"). Noticeably absent from this universe of publicly-filed, but redacted, documents are approximately 2,000 pages of materials that support Plaintiffs' factual proffer in opposition to the Motions, which, Plaintiffs submit, constitute a *prima facie* showing of jurisdiction over Betancourt and Trebbau (the "Jurisdictional Documents"). Where, as here, the Jurisdictional Documents are "judicial documents," the common law right of public access and the First Amendment require that these documents be made accessible to the public.

### A. The Jurisdictional Documents Constitute Judicial Documents

Defendants try to draw a distinction between "judicial documents" and the Jurisdictional Documents when they describe the latter as "a mass of raw discovery material."[2] (Opp. Mem. at 6-7.)[3] Defendants' characterization is far from apt. Defendants concede that the Jurisdictional Documents comprise only a small portion ("2,000 pages") of the "over 10,000 pages of documents" produced to Plaintiffs as jurisdictional discovery, which the Court narrowly construed. (Opp. Mem. at 2-3.) Thus, the Jurisdictional Documents represent a *mere 20%* of the documents produced to Plaintiffs. This demonstrates a careful review and culling by Plaintiffs of the jurisdictional discovery made available to them and submitted to this Court for its review in opposition to the Motions. Judicial review triggers the public right of access. Once a document

---

[1] These documents contain redactions made by Defendants presumably in accordance with their *proposed* protective order, which designates as "confidential" four overly-broad and ambiguous categories of information. *See* Plaintiffs' April 10, 2015 letter to the Court.

[2] "Raw discovery materials" are not what a party submits in connection with a pending and potentially dispositive motion to dismiss. "Raw discovery materials" are the universe of materials that sit in file cabinets or boxes in a law office war room.

[3] References to Defendants' Joint Memorandum in Opposition will be to "Opp. Mem."

has been separated from all "raw discovery materials" by coming under judicial scrutiny, the keen public interest in the fairness of that judicial proceeding arises.

Defendants rely heavily on Judge Scheindlin's decision in *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 07 Civ. 10470, 2013 U.S. Dist. LEXIS 98913 (S.D.N.Y. July 12, 2013) ("*In re MTBE*"). (Opp. Mem. at 7, 8, 10-12.) There, a defendant moved to maintain the confidentiality of documents produced in discovery and filed conditionally under seal in connection with a co-defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(2), pending the resolution of that motion.[4] *Id.* at *1. Judge Scheindlin held that, under the common law, the *discovery documents* in question constituted "'judicial documents' because they are 'relevant to the performance of the judicial function' – here, ruling on [the co-defendant's] pending motion to dismiss for lack of personal jurisdiction." *Id.* at *13. While Defendants quote heavily from this decision, they ignore entirely Judge Scheindlin's finding that discovery documents submitted to the court in connection with a motion to dismiss under Fed. R. Civ. P. 12(b)(2) are "judicial documents." *See also Jetblue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 396-97 (E.D.N.Y. Feb. 28, 2013) (document summarizing defendant's contacts with New York submitted to court in connection with Fed. R. Civ. P. 12(b)(2) motion was a "'judicial document' to which a presumption of public access applies"; "[i]t is relevant to the performance of the judicial function and useful in the judicial process" (internal quotations omitted) (citation omitted); *see also Standard Inv. Chartered, Inc. v. Nat'l Assoc. of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 65-66 (S.D.N.Y. 2007) (documents submitted in connection with motion for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) are

---

[4] Defendants characterize the motion in *In re MTBE* as "similar to Plaintiffs.'" (Opp. Mem. at 7.) As explained above, however, the movant in that case sought to *maintain the confidentiality* of the documents in question, which is the opposite of the relief Plaintiffs seek here.

3

judicial documents where jurisdictional facts are placed in dispute and court has power to decide issues of fact by reference to evidence outside pleadings).

As illustrated above, and contrary to Defendants' contentions, the universe of "judicial documents" is not so narrowly limited to encompass only evidence at trial or summary judgment motions. (Opp. Mem. at 11.) *See, e.g., United States v. Erie County*, 763 F.3d at 240 (compliance reports filed with district court pursuant to settlement agreement were "judicial documents"; "the compliance reports would be considered by the [c]ourt for the purpose of ruling on an [as yet unfiled] enforcement motion brought by either of the parties").

### B. The Common Law Presumption Of Public Access To The Jurisdictional Documents Is Strong

"There is a strong presumption that the public should be able to access every single document filed with this court of law." *Saks Inc. v. Attachmate Corp.*, 14 Civ. 4902 (CM), 2015 U.S. Dist. LEXIS 52867, at *37 (S.D.N.Y. April 17, 2015) (citation omitted)). That presumption is "based on the need for federal courts ... to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Erie County*, 763 F.3d at 240 (citing *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

Here, the weight of the presumption given to the Jurisdictional Documents does not turn on Defendants' self-interested assessment of their "relevance" or "usefulness." (Opp. Mem. 7-8.) Nor is it correct to suggest, as Defendants do, that certain documents might be entitled to a greater presumption based on the extent to which they "directly affect[ed]" the Court's April 2015 Opinion. (*Id.*) The Second Circuit has disavowed such reasoning, stating: "If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision ... documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision." *Lugosch v.*

4

*Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) (emphasis in original) (citation omitted). Indeed, the Second Circuit has expressly held that "once those submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations." *Id.* (citation omitted).[5]

The Jurisdictional Documents provide the evidentiary basis for the Plaintiffs' Fact Statements, which set forth a detailed summary of the facts relevant to Betancourt's and Trebbau's contacts with and relationship to New York. As such, these documents were not only material to the Court's disposition of the Motions, they played a significant role in determining the parties' substantive rights. Unlike the situation in *In re MTBE*, 2013 U.S. Dist. LEXIS 98913, which is cited by Defendants (Opp. Mem. at 11), the Court's April 2015 Opinion granting Defendants' Motions is more akin to a dispositive motion. This is particularly true where Plaintiffs have no alternate forum in which to pursue Defendants. *See In re MTBE*, 2013 U.S. Dist. LEXIS 98913 at *14-15 ("[d]ismissal for lack of personal jurisdiction ... leaves the losing party free to pursue its substantive rights in another forum".)[6] As Plaintiffs demonstrated in their submissions in opposition to the Motions, it is impossible for Plaintiffs to seek effective legal redress against Defendants in Venezuela.[7] (*See* Declaration of Otto J. Reich, dated January

---

[5] That courts issue decisions labeled "opinions" is not an accident. They are called opinions because that is what they are, *i.e.*, a formal statement from a judge or court of the reasons for a legal decision that can be agreed with, or disagreed with, in part or in whole. Relatedly, as an act of government directly affecting the legal rights and responsibilities of individuals, the courts' opinions, and the underlying materials that the courts consider or ignore in rendering their opinions, must be available to the public in order to deter arbitrary judicial behavior. Absent monitoring, the public will have no confidence in the integrity of judicial proceedings.

[6] Judge Scheindlin's decision in *In re MTBE* concerning the strength of the presumption of public access was based largely on the fact that the portions of the documents that the movant sought to keep under seal concerned the "precise amounts paid by [the co-defendant] for its business acquisitions in Puerto Rico" which had "little bearing on its contacts with that forum, which [was] the focus of the underlying judicial inquiry." *In re MTBE*, 2013 U.S. Dist. LEXIS 98913, at *14. This is unlike the situation here where the Jurisdictional Documents are highly relevant to the underlying judicial inquiry, *i.e.*, Defendants' contacts with New York.

[7] Defendants agree that ████████████████████████████████████████ (Opp Mem. at 13.)

15, 2015 [ECF No. 157]; Plaintiffs' Memorandum of Law in Opposition to Defendants' Renewed Motions to Dismiss [ECF No. 151] at 20-22; and Plaintiffs' Sur-Reply Memorandum of Law in Further Opposition to Defendants' Renewed Motions to Dismiss at 5-8 [ECF No. 152].) By its April 2015 Opinion, the Court, for all intents and purposes, granted summary judgment to Defendants when it credited Defendants' self-serving statements of intent and resolved factual disputes in Defendants' favor without the benefit of a full-blown evidentiary hearing. *See Lugosch*, 435 F.3d at 121 ("'documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons'") (citation omitted).

The Jurisdictional Documents are also of considerable value to those monitoring the federal courts because the April 2015 Opinion is in conflict with substantial precedent in this Circuit and implicates the U.S. Supreme Court's holding in *Daimler, AG, v. Bauman*, 134 S. Ct. 746, 754 (2014), which this Court previously acknowledged "has brought uncertainty to [the] application of New York's 'doing business' rule." (*See* August 18, 2014 Opinion and Order at 22.) Thus, the April 2015 Opinion and the Jurisdictional Documents presented to the Court for its consideration (but rejected by the Court) will be of interest to potential *amicus curiae* and the Second Circuit.

This Court's decision about what it considered relevant to the Motions is as much a "judicial decision" as any other. Likewise, the Court's decision to deem certain materials or information irrelevant or unnecessary for consideration is equally a judicial decision. In the April 2015 Opinion, the Court says: "Plaintiffs' statement of facts contains many things other than relevant facts .... [T]he Court considers only those facts that are plausibly relevant to establishing personal jurisdiction over Betancourt." (April 2015 Opinion at n.5.) The need for

public access to those materials the Court deemed irrelevant or unnecessary is especially high here, where the Jurisdictional Documents in question were submitted by Plaintiffs, and the Court's decision on the Motions was adverse to Plaintiffs.

Defendants contend that "[t]he presumption of public access is strongest for those documents that 'directly affect' the Court's ruling." (Opp. Mem. at 7.) In its April 2015 Opinion, the Court references, discusses and/or relies upon nearly every category of information that Defendants want to keep under seal, including the following subject matter:

- New York banking/financial relationships (April 2015 Opinion at 5);
- Amounts in New York bank/investment accounts (*Id.* at 5, n.5, 6);
- Employment of New York law firms (*Id.* at 6);
- Cost/value of New York residence (*Id.* at 5);
- Mortgages on New York residence (*Id.* at 5);
- Where Defendants file/pay taxes (*Id.* at 5, 8);
- Defendants' net worth/total asset value (*Id.* at 5, n. 5);
- New York bank accounts (*Id.* at 5);
- Friends and relatives in New York (*Id.* at 5);
- Cost of renovations to New York residence (*Id.* at 5);
- Cost of furniture and fixtures for New York residence (*Id.* at 5);
- Cost of artwork for New York residence (*Id.* at 5);
- Residences outside New York (*Id.* at 5, 6);
- Assets outside New York (*Id.* at 5, n.5);
- Meetings by Defendants in New York (*Id.* at 5, 6);
- Business transactions in New York (*Id.* at 6, 7);
- Travel to New York (*Id.* at 7); and
- Club memberships (*Id.* at 5).[8]

Given the Court's decision to discuss such information in its April 2015 Opinion, which was filed on the public docket, the Court obviously concluded that such information should be

---

[8] Materials falling within one or more of the above categories have been redacted by Defendants from the parties' submissions filed in connection with the Motions on the purported ground that such information is "confidential." For the convenience of the Court, Plaintiffs have prepared a chart that identifies all the facts – as evident from Defendants' redactions – that Defendants want to keep sealed and out of the public eye. *See* Kowalczyk Decl., Ex. A. For each of these facts, Plaintiffs have set forth a basis for the Court to conclude that those particular items should be unsealed. The reasons set forth in the chart are in addition to those set forth in Plaintiffs' Reply Memorandum of Law.

7

made public. Accordingly, documents and information falling within these same classes of information that were submitted by the parties as part of the briefing on the Motions, but not expressly referenced in the April 2015 Opinion, should also be made accessible to the public.

Finally, it bears mentioning that the motive of the party seeking public access to judicial documents is irrelevant to the weight to be accorded the presumption. *United States v. Amodeo*, 71 F.3d at 1050. For this reason, even if the ill motives Defendants ascribe to Plaintiffs were true (Opp. Mem. at 9-11) – and they are not – they simply are not relevant to the Court's analysis.

### C. Defendants' Naked Assertions Of Alleged Privacy And Security Concerns Do Not Outweigh The Public's Presumption Of Access

Defendants' self-serving claims that their privacy and security interests will be compromised if the Jurisdictional Documents are made publicly available are woefully deficient. Defendants define their "personal information" to include "[their] investments, banking relationships and net worth" and "family, social, and personal relationships, contact information, living arrangements, and health information." They claim that "the public release of this type of information increases the risk that [they] may be victim[s] of identity theft, fraud, or other kinds of improper activity or invasion of [their] privacy."[9] *See* Betancourt Declaration, sworn to April 10, 2015 at ¶ 2; Trebbau Declaration, sworn to April 10, 2015 at ¶ 2. Defendants also claim to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ – but they do not describe their efforts nor explain how those efforts could possibly be relevant here where Defendants' confidential information remains under seal or has been redacted from the parties' public filings. *See*

---

[9] If the Court grants Plaintiffs' Unseal Motion, Defendants' social security numbers, taxpayer identification numbers, personal identification numbers issued by a foreign government, dates of birth, and financial account numbers will remain secret pursuant to Fed. R. Civ. P. 5.2. Thus, Defendants' purported risk identity theft, fraud, and invasion of privacy are largely unfounded.

Betancourt Declaration, sworn to April 10, 2015 at ¶ 3; Trebbau Declaration, sworn to April 10, 2015 at ¶ 3. Relatedly, Defendants do not indicate how the ███████████████████████ ███████████████████████████████████████████████████ *Id.*

By its April 2015 Opinion, the Court disclosed Betancourt's net worth. (*See* April 2015 Opinion at 5, n.5.) Thus, the Court must not have thought that the public disclosure of such information would endanger Betancourt's safety, *i.e.*, cause him to be ███████████ ██████████. (Opp. Mem. at 14.) Further, jurisdictional discovery in this action has shown that Defendants have released their "personal information" to various third parties countless times over. This calls into question the veracity of Defendants' sworn declarations.

Defendants make no effort to identify with any specificity why the public disclosure of their "personal information" would endanger them or pose any significant privacy concerns. Defendants do not claim to have been threatened nor do they explain how they would be threatened, by whom or why. Such naked, self-interested assertions devoid of any factual detail are insufficient to rebut the presumption of public access under the common law and fall far short of the required showing necessary to defeat the public's First Amendment right of access to judicial documents.[10] (*See* Section D, *infra*.) With respect to the latter, documents may be sealed only if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. Erie County*, 763 F.3d at 239. Those findings must be sufficiently specific such that a reviewing

---

[10] Fed. R. Civ. P. 26(c) requires that a party seeking protective relief under Fed. R. Civ. P. 26(c) set forth "particular and specific facts ... rather than conclusory assertions" to establish that "clearly defined, specific and serious injury" will occur absent the requested protective relief. *See Qube Films Ltd. v. Padell*, 13-CV-8405 (AJN), 2015 U.S. Dist. LEXIS 2021, at *6 (S.D.N.Y. Jan. 5, 2015) (citations omitted); *Sang Lan v. Time Warner, Inc.*, 11 Civ. 2870 (AT) (JCF), 2014 U.S. Dist. LEXIS 87198, at *5 (S.D.N.Y. June 20, 2014) (citation omitted). By the principles of *a fortiori* (what is true for the lesser is also true for the greater), if a specific factual showing must be made for a mere protective order under Fed. R. Civ. P. 26 (the lesser), then Defendants showing here must rise above mere conjecture and speculation. Defendants must demonstrate a specific proven threat or risk of harm to satisfy the far greater burden required to keep secret judicial documents.

court can determine whether sealing was proper. *In re MTBE*, 2013 U.S. Dist. LEXIS 98913, at *12. No such showing has been made here to enable this Court to issue the legally required findings.

### D. The Public Has A First Amendment Right Of Access To The Jurisdictional Documents

In addition to the common law right of access, the public enjoys a stronger right of access to judicial documents under the First Amendment. *United States v. Erie County*, 763 F.3d at 239. Here, "experience and logic" support making the Jurisdictional Documents available to the public. The relevant inquiry is "(a) whether the documents have historically been open to the press and general public (experience) and (b) whether public access plays a significant positive role in the functioning of the particular process in question (logic)." *Id.* (internal quotations omitted) (citation omitted).

With respect to "experience," "the courts of this country have long recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Id.* at 241 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978)). This right is in no way dependent on the procedural posture in which the documents are introduced and, thus, extends to pretrial documents generated for a judicial proceeding. Logic also requires that the public have access to the Jurisdictional Documents where the issues decided by the Motions concern, in part, the impact of *Daimler, supra,* on the continued application of New York's "doing business" rule. Further, "access to written documents filed in connection with pretrial motions is particularly important ... where no hearing is held and the court's ruling is based solely on the motion papers." *Lugosch*, 435 F.3d at 124 (citation omitted). Thus, in addition to the common law right of inspection, there exists a qualified First Amendment right of access to the Jurisdictional Documents.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion to Vacate the Court's Interim Sealing Order and Unseal Documents Previously Filed Under Seal, including the Jurisdictional Documents, and grant Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May 1, 2015

    Respectfully submitted,

    SMITH VALLIERE PLLC

    By:   /s/ Noelle Kowalczyk
        Mark W. Smith, Esq.
        Noelle Kowalczyk, Esq.

    1221 Avenue of the Americas, 42nd Floor
    New York, New York 10020
    (212) 755-5200 Telephone
    (212) 755-5203 Facsimile
    msmith@svlaw.com
    nkowalczyk@svlaw.com

    *Attorneys for Plaintiffs*
    *The Honorable Otto J. Reich and*
    *Otto Reich Associates, L.L.C.*

# CERTIFICATE OF SERVICE

I hereby certify this 4th day of May, 2015, that I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to the following attorneys of record, and is available for viewing and downloading:

Frank H. Wohl
Julia C. Green
Lankler Siffert & Wohl
500 Fifth Avenue, 34th Floor
New York, NY 10110
*Attorneys for Defendant Leopoldo Alejandro Betancourt Lopez*

Joseph A. DeMaria
Fox Rothschild LLP
200 South Biscayne Blvd.
Suite 3590
Miami, FL 33131
*Attorneys for Defendant Pedro Jose Trebbau Lopez*

Shawn Rabin
Susman Godfrey, L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
*Attorneys for Defendant Francisco D'Agostino Casado*

_____
Noelle Kowalczyk