UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE HONORABLE OTTO J. REICH and
OTTO REICH ASSOCIATES, LLC,

Plaintiffs,

vs.

LEOPOLDO ALEJANDRO BETANCOURT
LOPEZ, PEDRO JOSE TREBBAU LOPEZ, and
FRANCISCO D'AGOSTINO CASADO,

Defendants.

ECF CASE

13 CV 5307 (PJO)

## DECLARATION OF JULIA C. GREEN
## IN OPPOSITION TO PLAINTIFFS' MOTION PURSUANT TO  FED. R. CIV. P. 15(a)(2)
## FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Julia C. Green declares under penalty of perjury as follows:

1.      I am a lawyer at the firm of Lankler Siffert & Wohl LLP, counsel for Defendant

Leopoldo Alejandro Betancourt Lopez ("Betancourt") in the above-captioned action.  I make this

declaration in opposition to the motion by Plaintiffs for leave to file a second amended

complaint.

2.      Attached hereto as <u>Exhibit A</u> is a true and correct copy of a letter sent by Frank H.

Wohl to Mark W. Smith on October 4, 2013.

3.      Attached hereto as <u>Exhibit B</u> is a true and correct copy of a letter sent by Shawn J.

Rabin to Mark W. Smith on October 4, 2013.

4.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of a letter sent by Mark W.

Smith to Frank H. Wohl and Joseph A. DeMaria on October 11, 2013.

5.     Attached hereto as <u>Exhibit D</u> is a true and correct copy of a letter sent by Mark W. Smith to William Carmody and Shawn J. Rabin on October 11, 2013.

6.     Attached hereto as <u>Exhibit E</u> is a true and correct copy of pages 1-5 of the transcript of the pre-motion conference held in the above-captioned matter on December 17, 2013.   The cover page of the transcript incorrectly indicates that this conference occurred on December 16, 2013.   It actually occurred on the 17th of December.   *See* Dkt. Minute Entry 12/17/2013.

7.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: New York, New York
       May 14, 2015

                                                        _____
                                                        Julia C. Green (jgreen@lswlaw.com)



**EXHIBIT A**

**LANKLER SIFFERT & WOHL LLP**

ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N. Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

October 4, 2013

<u>**VIA E-MAIL AND REGULAR MAIL**</u>

Mark W. Smith, Esq.
Smith Valliere PLLC
75 Rockefeller Plaza, 21st Floor
New York, NY 10019

    Re:  *Reich, et al. v. Betancourt Lopez, et al.,* Index No. 13 CV 53071

Dear Mr. Smith:

   We and Tew Cardenas LLP, on behalf of defendants Leopoldo Alejandro Betancourt Lopez and Pedro Trebbau Lopez (the "Derwick Defendants"), write pursuant to Judge Oetken's Individual Practice Rule 4(B)(i) concerning the pleading deficiencies in the complaint filed in the above-referenced action. If plaintiffs refuse to withdraw or amend the complaint, the Derwick Defendants, among other actions, will move to dismiss the complaint, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (the "Rules").

   Plaintiffs' RICO claims are frivolous. Plaintiffs mischaracterize a groundless defamation claim as "wire fraud" and implausibly attempt to link this illusory wire fraud to a wholly unrelated, and entirely foreign, scheme purportedly involving bribery of Venezuelan government officials. For at least the following four separate and independent reasons, the RICO cause of action and common law causes of action are not only legally deficient but utterly frivolous:

   <u>First</u>, although plaintiffs' RICO claim depends entirely on the allegations of predicate acts of "wire fraud," those allegations fail as a matter of law because plaintiffs' wire fraud allegations constitute at best nothing more than "thinly clothed defamation" claims, not fraud: "it is firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations." *Kimm v. Lee,* 2005 WL 89386, at *4-5 (S.D.N.Y. Jan. 13, 2005), *aff'd* 196 F. App'x 14 (2d Cir. 2006). *See also Contes v. City of New York,* 1999 WL 500140 (S.D.N.Y. July 14, 1999) (defamation is not a predicate act for RICO); *Mount v. Ormand,* 1991 WL 191228 (S.D.N.Y. Sept. 18, 1991) (same); *Tsipouras v. W&M Properties, Inc.,* 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998) ("mere injury to character, business reputation, and/or the intentional infliction of emotional distress are not actionable under civil RICO"). *Creed Taylor, Inc. v. CBS, Inc.,* 718 F. Supp. 1171, 1180 (S.D.N.Y. 1989) (admonishing plaintiff's attorney for failing to recognize that defamation is not a predicate act—a fact which is "ascertainable from the face of the [RICO] statute."). As the court explained in *Kimm v. Lee,* wire fraud requires fraudulent intent—*i.e.*, the purpose of inducing another to part with something of value based on an intentional misstatement. *Kimm v. Lee,* 2005 WL 89386, at * 4 (internal quotation marks and citation omitted). "In order for the deceit implicit in fraud to rise to the level of wire fraud in particular, defendants must have used the wires as a means to obtain money or property by means of false or fraudulent pretenses, representations, or promises or for

purposes of executing a scheme to defraud." *Boritzer v. Calloway*, 2013 WL 311013 (S.D.N.Y. Jan. 24, 2013) (Oetken, J.). Plaintiffs do not allege that defendants used the wires to induce plaintiffs to part with something of value; plaintiffs allege merely that defendants sought to interfere with plaintiffs' business relationships. But "intent to injure is not the equivalent of intent to defraud." *Kimm v. Lee*, 2005 WL 89386, at * 4.

Because the so-called wire fraud claims fail, plaintiffs lack standing to bring civil RICO claims. To establish standing, plaintiffs must show that they were injured "by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). Plaintiffs' only alleged RICO injuries relate to the wire fraud claims which, because they are nothing more than purported defamation, do not constitute predicate acts.

Likewise, plaintiffs' attempts to allege other predicate acts, by reliance on allegations of bribery, in violation of the Foreign Corrupt Practices Act and the Travel Act, are unavailing. Plaintiffs claim no injuries arising from these acts. Further, the bribery allegations boil down to speculation concerning actions that "it is believed" defendants took, based on a statement— attributed to an individual who was never an owner, officer, director, employee or manager of Derwick Associates—that "you always have to pay consulting fees." *See Zembiec v. Cnty. of Monroe*, 766 F. Supp. 2d 484, 495 (W.D.N.Y. 2011), *aff'd* 468 F. App'x 39 (2d Cir. 2012) (granting motion to dismiss where factual allegations were "nothing more than surmise and speculation").

Second, plaintiffs have not alleged a pattern of racketeering activity, because the predicate acts they attempt to allege do not satisfy RICO's "relatedness" and "continuity" requirements. Plaintiffs fail to plead any facts supporting a plausible relationship between the alleged defamation/wire fraud and the alleged bribery. Plaintiffs assert that the defamation was necessary to protect the enterprise by interfering with a "union" between plaintiffs and an existing ORA client—Eligio Cedeño—and a prospective client—Banco Venezolano (the "Bank"). The bizarre suggestion that a union between plaintiffs and Cedeño or the Bank could somehow hurt the enterprise is unsupported by any factual allegations. (To the contrary, plaintiffs claim ORA was working with Cedeño in 2010, while the enterprise allegedly committed many of the acts of bribery.) Nor do plaintiffs allege facts supporting a claim that interfering with the relationships furthered the bribery. Accordingly, the RICO claim must be dismissed. *Rosenson v. Mordowitz,* 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) (Oetken, J.). Moreover, to the extent that personal jurisdiction is predicated on the RICO claims, the failure of the RICO claims would necessitate dismissal based on personal jurisdiction as well. *See Continental Petroleum Corp. v. Corporation Funding Partners, LLC*, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012).

Third, the alleged bribery scheme involves exclusively foreign conduct: foreign actors, in a foreign country, and a foreign government, in connection with foreign contracts. It is well-established that RICO does not apply to wholly extraterritorial schemes. *See Norex Petroleum Ltd. v. Access Indus., Inc.,* 631 F.3d 29 (2d Cir. 2010).

<u>Fourth</u>, the complaint fails to plead adequately any state law causes of action under Virginia law, assuming for the purpose of this letter that Virginia law applies. The claim for tortious interference with prospective economic advantage is defective because of the absence of any allegation that the relationships with Cedeño and the Bank would have continued "but for" the Derwick Defendants' conduct. *Glass v. Glass*, 321 S.E.2d 69, 77 (Va. 1984). The allegation that the Bank—which plaintiffs allege to have been adamantly opposed to the Derwick Defendants—discontinued its prospective relationship with plaintiffs based solely on a phone call from Betancourt defies plausibility. With respect to the defamation claim, the innocuous statement "*Otto Reich is working for us*" does not portray plaintiffs as "odious, infamous, or ridiculous" and so does not rise to the level of offensiveness required for defamation. *Chapin v. Greve*, 787 F. Supp. 557, 562 (E.D. Va. 1992). Nor does such a statement constitute disparagement of products as required for a claim for product disparagement/trade libel. *See Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 203 F. Supp. 2d 587, 600 (E.D. Va. 2002) (statements concerning "acts" rather than products, do not constitute disparagement). The claim for civil conspiracy necessarily fails because the underlying claims for tortious interference and defamation are legally deficient. *See Almy v. Grisham*, 273 Va. 68, 639 (2007).

Further, as described in counsel's August 27, 2013 letter to you, the complaint is predicated upon numerous factual allegations that are demonstrably false. Contrary to the complaint: D'Agostino is not and never was an owner, officer or employee of Derwick Associates; Betancourt and Trebbau never visited—let along conducted business from—450 Park Avenue; Derwick Associates USA LLC was not registered as a Florida Limited Liability Company during the relevant time period, and Derwick Associates is not a U.S.-based company; D'Agostino never told anyone that Derwick paid kickbacks to secure energy contracts; D'Agostino did not settle a Florida defamation action in September 2012; the Derwick Defendants never asked Francisco Convit-Guruceaga ("Convit") to call anyone at the Bank and say that Reich was working for Derwick Associates; Betancourt never told Cedeño that ORA had been retained by Derwick Associates; and Convit was never asked by defendants to extend, directly or indirectly, any offer of payment to Rafael Ramirez or Rodolfo Sanz for awarding construction contracts to Derwick Associates. The filing of a complaint replete with such false factual allegations suggests that this action was commenced solely for the improper purpose of causing harm to the Derwick Defendants by attempting to damage their reputations and injure their existing and prospective business and banking relationships.

Based on the foregoing, if plaintiffs refuse to withdraw their complaint, the Derwick Defendants will move pursuant to Rule 12(b) to dismiss the complaint and pursuant to Rule 11 for the imposition of sanctions.

Very truly yours,

Frank H. Wohl

cc:    Joseph DeMaria, Esq.
       Shawn Rabin, Esq.



# EXHIBIT B

SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

15TH FLOOR
560 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022-6828
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

| Suite 5100 | Suite 5100 | Suite 950 | Suite 3800 |
| 1000 Louisiana Street | 901 Main Street | 1901 Avenue of the Stars | 1201 Third Avenue |
| Houston, Texas 77002-5096 | Dallas, Texas 75202-3775 | Los Angeles, California 90067-6029 | Seattle, Washington 98101-3000 |
| (713) 651-9366 | (214) 754-1900 | (310) 789-3100 | (206) 516-3880 |

Shawn J. Rabin
Direct Dial (212) 471-8347

E-Mail srabin@susmangodfrey.com

October 4, 2013

Mark W. Smith
Smith Valliere PLLC
75 Rockefeller Plaza, 21st Floor
New York, NY 10019

> Re:   Hon. Otto J. Reich, et al. v. Leopoldo Alejandro Betancourt Lopez, et al.
>       Civil Action No. 13 CV 5307

Dear Mark:

We, on behalf of Francisco D'Agostino, are writing pursuant to Judge Oetken's new Individual Practices in Civil Cases requiring that "[p]rior to filing a motion to dismiss, . . . the defendant shall communicate with the plaintiff by letter . . . either seeking a more definitive statement or setting forth specific pleading deficiencies in the complaint." This letter does both—it seeks a more definitive statement and explains the pleading deficiencies in Plaintiffs' Complaint. If Plaintiffs refuse to cure the defects outlined in this letter, Mr. D'Agostino will move to dismiss the complaint.

As you are aware from the Rule 11 letter we served on August 27, 2013,[1] we believe that the claims your client asserted in his complaint are lacking in legal merit and contain factual contentions that have no evidentiary support. As you also know, plaintiffs' complaint contains very few factual allegations that specifically relate to Mr. D'Agostino--and those that are included are factually wrong. For example:

- Paragraph 21: You claim that Mr. D'Agostino is a "permanent resident" of the United States. He is not.

- Paragraph 21: You claim that Mr. D'Agostino owns property located at 10 East 75th Street, New York, New York 10021. He is not the owner of this property.

- Paragraph 28, 32, & 124: You claim that "At all relevant times, Defendants Betancourt, Trebbau, and D'Agostino worked together as each other's agents and partners, and were the owners and/or officers, directors, or operators of Derwick Associates USA LLC and Derwick Associates Corporation, and these entities' predecessors, successors, assigns, and affiliates." This is false. Mr. D'Agostino is

---

[1] The 21-day period has expired, allowing Mr. D'Agostino to file a Rule 11 motion. Our hope is that such a motion will be unnecessary if you dismiss this complaint for the reasons explained in this letter and the Rule 11 letter.

not (and has never been) an owner, officer, director, or operator of any Derwick entity. Your client should know this from the documents you rely on for the allegations in your complaint.

- Paragraph 28: You claim that "these individual defendants"—which you define to include Mr. D'Agostino—"direct, control, and coordinate virtually all aspects of global strategy, as well as day-to-day activities of Derwick Associates, from D'Agostino's offices at 450 Park Avenue as well as from the homes of Betancourt and D'Agostino in New York." This is false. Mr. D'Agostino has never engaged in such conduct, never entered 450 Park Avenue before mid-2010, has not even entered 450 Park Avenue in over a year, and Mr. Betancourt and Mr. Trebbau never visited him at 450 Park Avenue.

- Paragraphs 50, 60 & 71: You claim that, in November 2012, "Mr. D'Agostino told a friend that 'of course' Derwick Associates paid kickbacks to secure its energy contracts"; he noted that in Venezuela, "you always have to pay" what D'Agostino called "consulting fees," in order to secure the contracts. This is not correct—in addition to Mr. D'Agostino not having any recollection of ever making this statement, this allegation has nothing to do with tying Mr. D'Agostino to any of the claims in the case.

- Paragraphs 90 & 91: You claim that Mr. D'Agostino opted to settle the Miami-Dade litigation. This is false. As you should have known from simply looking at the publicly available court filings, Mr. D'Agostino was not a party to the Miami-Dade lawsuit.

Despite very few allegations in the Complaint actually referring to Mr. D'Agostino specifically, the Complaint contains allegations against "Defendants," which is defined to include Mr. D'Agostino even though you know, or should have known, that Mr. D'Agostino was not involved in the conduct you allege against all "Defendants." Put simply, a complaint must contain allegations that are more specific than broadly characterizing all "Defendants" as one. And, a complaint must contain allegations more specific than those formed "on information and belief." This is particularly true where, as here, some of your claims require Fed. R. Civ. P. 9(b)'s heightened pleading standards. The complaint lacks any specific allegations against Mr. D'Agostino tying him to the alleged conduct in the complaint and therefore he is not properly on notice of any claims against him nor are the allegations factually sufficient to sustain any claims against him.

The first claim you assert against Mr. D'Agostino is a RICO claim that is subject to a heightened pleadings standard. *See, e.g., Boritzer v. Calloway*, 2013 WL 311013 (S.D.N.Y. Jan. 24, 2013). Plaintiffs' complaint fails to identify *any* fraudulent statements or acts—much less doing so with particularity—specifically attributed to Mr. D'Agostino. *See Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F.Supp.2d 239, 260 (S.D.N.Y. 2009). And, making allegations based on "information and belief" is inadequate for a RICO claim. *Berman v. Richford Indus., Inc.*, No. 78-civ-54, 1978 WL 1104, at *6 (S.D.N.Y. Jul. 28, 1978). In addition to not meeting the pleading requirements of RICO, Plaintiffs' complaint also fails to state a claim because (1) Plaintiffs' lack standing to bring a RICO claim because the alleged injury does not flow directly from the defendants' commission of the identified

predicate acts (*see Leung v. Law*, 387 F.Supp.2d 105, 113 (E.D.N.Y. 2005)); (2) RICO does not apply extraterritorially and the alleged conduct occurred in Venezuela (*see See Tymoshenko v. Firtash*, No. 11-cv-2794, 2013 WL 1234821, at *11 (S.D.N.Y. Mar. 26, 2013)); (3) the alleged predicate acts are based on defamation, not wire fraud, and there are no required allegations of fraudulent intent (*see Kimm v. Lee*, 04-Civ.-5724, 2005 WL 89386, at *4-5 (S.D.N.Y. Jan. 13, 2005), *aff'd* 196 F. App'x 14 (2d Cir. 2006)); and (4) the predicate acts in the complaint do not satisfy RICO's relatedness requirement (*see Rosenson v. Mordowitz*, 11-Civ.-6145, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012)).

The remaining claims all involve defamation and fail for many reasons. First, the complaint does not identify a single defamatory statement uttered by Mr. D'Agostino. A defamation claim cannot survive a motion to dismiss when it fails to identify the defamatory statement that was allegedly made. *Thai v. Cayre Grp., Ltd.*, 726 F.Supp.2d 323, 329 (S.D.N.Y. 2010). To the extent plaintiffs allege that Mr. D'Agostino somehow uttered the statements made by other Defendants to this case, such a claim would fail too because none of the allegations in the Complaint rise to the level of defamation or libel. Second, the complaint fails to identify under which state law these state-law claims are being pursued. Undoubtedly, the claims would fail under any state's laws. Third, Plaintiffs' last claim for civil conspiracy must fail because it is based on two paragraphs of allegations and in most states, like New York, a civil conspiracy is not an independent cause of action. *In re Tremont Sec. Law*, No. 08-civ-11117, 2013 WL 5393885, at *10 (S.D.N.Y. Sept. 26, 2013).

Put simply, the complaint fails to state a claim and therefore, absent you withdrawing the allegations in your complaint or providing evidentiary support for your allegations, we will file a motion to have it dismissed.

Sincerely,

Shawn J. Rabin

cc:     Frank Wohl
        Joe DeMaria

# EXHIBIT C



**S**MITH
**V**ALLIERE PLLC
75 ROCKEFELLER PLAZA 21ˢᵀ FLOOR  NEW YORK  NEW YORK 10019

TELEPHONE 212 755 5200
FACSIMILE  212 755 5203
WWW.SVLAW.COM

Mark W. Smith
(212) 755-5220
msmith@svlaw.com

October 11, 2013

**BY ELECTRONIC MAIL**

Frank Wohl, Esq.
Lankler Siffert & Wohl LLP
500 Fifth Avenue
New York, NY 10110

Joseph A. DeMaria, Esq.
Tew Cardenas LLP
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131

Re:   *The Honorable Otto J. Reich, et al. v. Betancourt Lopez, et al.*, **No. 13-cv-5307**

Dear Messrs. Wohl and DeMaria:

We represent The Honorable Otto Reich and Otto Reich Associates, LLC (together, "Plaintiffs"), and write in response to your letter of October 4, 2013 (hereinafter, the "October 4 Letter").[1]

As an initial matter, the arguments set forth in the October 4 Letter are unpersuasive and, if advanced in a motion to dismiss, would fail. Defendants' continued insistence that the Complaint is subject to dismissal because the factual allegations therein are "demonstrably false" (October 4 Letter, at 3), is not only without basis, but is inappropriate on a motion to dismiss. *Buyers & Renters United to Save Harlem v. Pinnacle Group NY LLC*, 575 F. Supp. 2d 499, 501 (S.D.N.Y. 2008). If your clients believe that the allegations in the Complaint are untrue, the proper course is to commence discovery, as we have suggested to you on numerous occasions already. That your clients have thus far refused (except to insist that Plaintiffs unilaterally disclose the names of their "sources") suggests that your clients' continued focus on disputed facts is pretextual.

The arguments set forth in the October 4 Letter regarding the legal sufficiency of the Complaint are without merit.

*First*, the Complaint sufficiently alleges a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (October 4 Letter, at 1, 2.) As alleged,

---

[1]     This letter incorporates the arguments set forth in our letter to counsel for Defendant Francisco D'Agostino, also dated October 11, 2013, as if fully set forth herein.

Defendants, independently and through Derwick Associates,[2] paid millions of dollars in kickbacks to Venezuelan government officials to secure energy sector contracts, in violation of the Travel Act and the Foreign Corrupt Practices Act. (Compl. ¶¶ 4; 11; 120-152.) Using the United States as a base of operations, Defendants funneled the profits to bank accounts in the United States. (Compl. ¶¶ 54; 65; 76.) Defendants then embarked upon a campaign of fraud, bullying, and intimidation against anyone they perceived would interfere with or reveal their scheme, including Plaintiffs. (Compl. ¶¶ 81-92.) This fraudulent scheme was intended to perpetuate Defendants' illegal activities, and was calculated to (and did) cause direct injury to Plaintiffs in violation of 18 U.S.C. § 1343. (Compl. ¶¶ 103-160; 114-119; 152.) Those allegations, taken together, satisfy the RICO statute's relatedness and continuity requirements, and fulfill each element of a claim under 18 U.S.C. § 1961, *et seq.*

Contrary to the assertions in the October 4 Letter, the predicate activity of wire fraud, engaged in by Defendants, is not a "thinly clothed defamation claim." (October 4 Letter, at 1.) In contrast to the cases cited in the October 4 Letter, the Complaint expressly pleads the existence of a scheme to defraud, in the direct service of which Defendants made knowingly false statements over the wires. (Compl. ¶¶ 103-160; 114-119; 152.) Similarly, the Complaint pleads, with particularity, the essential facts of the fraudulent statements, "provid[ing] the details of the individual communications that [Plaintiffs] believe[] were fraudulent," including "who the alleged speaker of any fraudulent communication was … the substance that is alleged to have been fraudulent," and the dates of the alleged communications. *Leung v. Law*, 387 F. Supp. 2d 105, 115 (E.D.N.Y. 2005); *see* Compl. ¶¶ 104-106; 115-116.

*Second*, the Complaint sufficiently alleges a "domestic" claim for relief. (October 4 Letter, at 2.) As alleged in the Complaint: (i) each Defendant directed the activities of Derwick Associates from the United States (Compl. ¶¶ 19-21); (ii) Defendants sent their ill-gotten profits to banks in the United States (Compl. ¶¶ 55, 65, 76); (iii) Defendants used United States (not Venezuelan) courts to silence those individuals they believed threatened to expose their unlawful scheme (Compl. ¶ 84); and (iv) Defendants' communications constituting wire fraud were initiated in the United States, to individuals based in the United States, concerning a victim who is an American citizen residing and doing business in the United States (Compl. ¶¶ 103, 115). That is more than sufficient under Second Circuit law. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012) (RICO enterprise deemed domestic where plaintiff presented evidence that scheme was allegedly conceived and orchestrated in and from the United States, and acts in its furtherance thereof were committed in United States by Americans and in Ecuador by both Americans and Ecuadorians).

*Third*, the Complaint sufficiently alleges state-law based causes of action for defamation and tortious interference with prospective economic advantage. (October 4 Letter, at 3.) Contrary to Defendants' contention that the phrase "Otto Reich is working for us" does not rise to the level of a defamatory statement, the law is clear that statements tying an individual to a

---

[2]     Derwick Associates is defined in the Complaint to include Derwick Associates USA, LLC and Derwick Associates Corporation, and those entities' predecessors, successors, assigns, and affiliates. (Compl. ¶ 28.)

corrupt or criminal organization can be defamatory. *See, e.g., Bufalino v. Associated Press*, 692 F.2d 266, 269 (2d Cir. 1982) (defamatory statements adequately alleged; "a description of an individual as a person 'with alleged mob ties' may well lower the community's estimation of that person and deter others 'from associating or dealing with him'"). To that end, the Complaint pleads extensively (and Defendants do not – and cannot – deny) that Derwick Associates had a widely-reported reputation for corruption that existed prior to the defamatory statements. (*See* Compl. ¶¶ 77-80.) Whether the statements set forth in the Complaint are ultimately defamatory is a question for the finder of fact, inappropriate for resolution on a motion to dismiss. *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) ("it is [] for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood").

*Fourth*, the Complaint pleads explicitly that Plaintiffs had specific, identifiable property that was lost only when Defendants and their agents made false statements to Plaintiffs' clients. (Compl. ¶¶ 104; 168.) As such, the notion that the Complaint does not plead sufficient causation is simply wrong.[3]

*Finally*, there is no basis for Defendants' threatened motion pursuant to Fed. R. Civ. P. 11, and as we have said under separate cover, it is well-settled that a pre-answer motion pursuant to Fed. R. Civ. P. 11, based entirely on disputed facts, is not only improper, but is a basis for sanctions against its proponents.

\* \* \* \* \*

Given the above, Plaintiffs do not concur with the arguments set forth in the October 4 Letter, and believe that the Complaint is more than adequate, as filed, under controlling authority.

All rights are reserved.

Sincerely,

Mark W. Smith

cc:     William Carmody, Esq.
        Shawn J. Rabin, Esq.

---

[3]     Regardless of which state's law is ultimately applied by the Court, the allegations in the Complaint are sufficient to establish defamation, tortious interference, and tortious interference with prospective economic advantage, for the reasons set forth above.

# EXHIBIT D

# SMITH VALLIERE PLLC

75 ROCKEFELLER PLAZA 21ˢᵀ FLOOR NEW YORK NEW YORK 10019

TELEPHONE 212 755 5200
FACSIMILE 212 755 5203
WWW.SVLAW.COM

Mark W. Smith
(212) 755-5220
msmith@svlaw.com

October 11, 2013

**BY ELECTRONIC MAIL**

William Carmody, Esq.
Shawn J. Rabin, Esq.
Susman Godfrey LLP
560 Lexington Avenue, 15th Floor
New York, New York 10022-6828

Re: *The Honorable Otto J. Reich, et al. v. Betancourt Lopez, et al.*, No. 13-cv-5307

Dear Messrs. Carmody and Rabin:

We represent The Honorable Otto Reich and Otto Reich Associates, LLC (together, "Plaintiffs"), and write in response to your letter of October 4, 2013 (hereinafter, "October 4 Letter").[1]

As an initial matter, the arguments set forth in the October 4 Letter are unpersuasive and, if advanced in a motion to dismiss, would fail. As previously discussed, your client's continued insistence that the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b) because of a litany of factual disputes is not only without basis, but is inappropriate on a motion to dismiss. (October 4 Letter, at 1; *see Buyers & Renters United to Save Harlem v. Pinnacle Group NY LLC*, 575 F. Supp. 2d 499, 501 (S.D.N.Y. 2008).)

As set forth in your letter, your client Francisco D'Agostino Casado ("D'Agostino") continues to insist that he is not an "owner, officer, director, or operator of any Derwick entity," and does not direct or control Derwick Associates' activities. (October 4 Letter, at 2.) Your client also disputes, among other things, that (i) he is a permanent resident of the United States; (ii) he owns particular property in New York; (iii) he directed the activities of Derwick Associates, alongside Messrs. Trebbau and Betancourt, from D'Agostino's offices in Manhattan; and (iv) he played any role in settling "the Miami Dade litigation." (October 4 Letter, at 1, 2.)

If your client believes that those allegations are untrue, the proper course is to commence discovery, as we have suggested to you on numerous occasions already. Instead, and despite his see-no-evil insistence that he has no relevant connection to the events described in the

---

[1] This letter incorporates the arguments set forth in our letter to counsel for Defendants Betancourt and Trebbau, also dated October 11, 2013, as if fully set forth herein.

Complaint, D'Agostino has not disclosed a single document, offered the sworn statements of himself or a single disinterested witness, or pointed to even one piece of information that calls any allegation of the Complaint into serious question.

Further, and leaving aside that Plaintiffs believe, with solid foundation, that D'Agostino is an integral part of Derwick Associates,[2] your client does not deny being (at the very least) an agent of Defendants Betancourt, Trebbau, and Derwick Associates, having acted on their behalf on numerous occasions. (Compl. ¶ 28.)

The remaining arguments set forth in the October 4 Letter regarding the legal sufficiency of the Complaint are without merit.

*First,* the Complaint sufficiently alleges a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (October 4 Letter, at 2.) As alleged, Defendants, independently and through Derwick Associates, paid millions of dollars in kickbacks to Venezuelan government officials to secure energy sector contracts, in violation of the Travel Act and the Foreign Corrupt Practices Act, funneled the profits to banks in the United States, and embarked upon a campaign of fraud, bullying, and intimidation to cover it up. This fraudulent scheme was intended to perpetuate Defendants' illegal activities, and was calculated to (and did) cause direct injury to Plaintiffs, in violation of 18 U.S.C. § 1343. (*See* Compl. ¶¶ 103-160; 114-119; 152.)

That certain of the allegations in the Complaint are alleged upon "information and belief" is of no moment; the law is clear that Defendants should not be rewarded for their success in hiding the details of their fraud. *See, e.g., Eastman Chem. Co. v. Nestlé Waters Mgmt. & Tech.,* No. 11-2589, 2012 U.S. Dist. LEXIS 141281, at *15 (S.D.N.Y. Sept. 28, 2012) (Oetken, J.) ("The Second Circuit has underscored that pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant … or where the belief is based on factual information that makes the inference of culpability plausible is perfectly sufficient" to survive dismissal). Further, at most, only the wire fraud allegations in the Complaint are subject to a heightened pleading standard, as you concede. (October 4 Letter, at 2.)[3]

---

[2] For instance, your client discussed his role in Derwick Associates to a friend in November, 2012, and bragged that "of course" Derwick Associates paid kickbacks to secure its energy sector contracts, and that in Venezuela, "you always have to pay" what D'Agostino called "consulting fees" to secure government contracts. (Compl. ¶ 71.) As noted in the Complaint, no less an authority than the United States Department of Justice has declared that "consulting fees" are often euphemisms for bribes. (*Id.*, citing U.S. Department of Justice, *FCPA: A Resource Guide to the Foreign Corrupt Practices Act, available at* http://www.justice.gov/criminal/fraud/fcpa/guide.pdf (last accessed July 29, 2013) ("[b]ribes are often concealed under the guise of legitimate payments, such as commissions or consulting fees").)

[3] D'Agostino's notion that the Complaint "broadly characterize[es] all 'Defendants' as one" (October 4 Letter, at 2), is both incorrect as a factual matter and a misreading of the law. D'Agostino is explicitly alleged to have directed the activities of Derwick Associates, from the United States, and is explicitly alleged to have agreed to offer millions of dollars in kickbacks to Venezuelan government officials, and to take action to cover up the scheme

*Second*, the Complaint does not plead a claim for "civil conspiracy" as an independent tort. (October 4 Letter, at 3.) Rather, as alleged in the Complaint, "[e]ach of the Defendants [including D'Agostino], together with the others, conspired with respect to Counts II through IV." (Compl. ¶ 189.) *See Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001) (under New York law, "a plaintiff may plead the existence of a conspiracy in order to connect someone to an otherwise actionable tort committed by another and establish that those actions were part of a common scheme"). Plaintiffs' allegations give D'Agostino sufficient notice of the actions for which Plaintiffs seeks to hold him liable under a civil conspiracy theory.

*Finally*, there is no basis for Defendants' threatened motion pursuant to Fed. R. Civ. P. 11. As we have said under separate cover, it is well-settled that a pre-answer motion pursuant to Fed. R. Civ. P. 11, based entirely on disputed facts, is not only improper, but is a basis for sanctions against its proponents.

* * * * *

Given the above, Plaintiffs do not concur with the arguments set forth in the October 4 Letter, and believe that the Complaint is more than adequate, as filed, under controlling authority. Plaintiffs also decline to provide a more definitive statement at this time.

All rights are reserved.

Sincerely,

Mark W. Smith

cc:     Frank Wohl, Esq.
        Joseph A. DeMaria, Esq.

---

by defrauding Plaintiffs. (*See, e.g.,* Compl. ¶¶ 49, 59, 70, 113.) Further, the law is clear that a complaint may permissibly plead the activities of defendants collectively when an individual defendant acts in concert with others in directing fraudulent activity, especially when the defendants have taken pains to conceal their behavior, as D'Agostino and the other Defendants are alleged to have done here. *See, e.g., Philip Morris Inc. v. Heinrich, et al.,* No. 95-0328, 1997 U.S. Dist. LEXIS 20199, at *30 (S.D.N.Y. Dec. 18, 1997).

# EXHIBIT E

DcgQreiC

1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2  THE HONORABLE OTTO J. REICH,
3  OTTO REICH ASSOCIATES, LLC
3                    Plaintiffs
4
4           v.                         13 CV 5307 (JPO)
5
5  LEOPOLDO ALEJANDRO BETANCOURT
6  LOPEZ, PEDRO JOSE TREBBAU
6  LOPEZ, FRANCISCO D'AGOSTINO
7  CASADO,
7                    Defendants
8  ------------------------------x
8                                      New York, N.Y.
9                                      December 16, 2013
9                                      2:30 p.m.
10
10  Before:
11
11                    HON. J. PAUL OETKEN
12
12                                      District Judge
13
13                    APPEARANCES
14
14  SMITH VALLIERE, PLLC
15       Attorneys for Plaintiffs
15  MARK W. SMITH
16  NOELLE M. KOWALCZYK
17
18  LANKLER, SIFFERT & WOHL, LLP
18       Attorneys for Defendant Betancourt Lopez
19  FRANK H. WOHL
19  JULIA C. GREEN
20
21  TEW CARDENAS, LLP
21       Attorney for Defendant TREBBAU LOPEZ
22  JOSEPH A. DeMARIA
22
23  SUSMAN, GODFREY, LLP
23       Attorney for Defendant Casado
24  SHAWN J. RABIN
24
25

DcgQreiC
```
 1                  (In open court; case called)
 2                  THE DEPUTY CLERK:  Starting with plaintiff's counsel,
 3      can I have all counsel state their appearance for the record;
 4      also, just to make the record clear, who you are representing,
 5      your client as well.
 6                  MR. SMITH:  Mark Smith for both plaintiffs.
 7                  MS. KOWALCZYK:  Noelle Kowalczyk both plaintiffs.
 8                  MR. WOHL:  Frank Wohl and Julia Green, your Honor, for
 9      the defendant Betancourt.
10                  MR. DeMARIA:  Joe DeMaria for Pedro Jose Trebbau
11      Lopez.
12                  MR. RABIN:  Good afternoon, your Honor, Shawn Rabin
13      Susman Godfrey on behalf of Francisco D'Agostino.
14                  THE COURT:  Good afternoon everyone.
15                  We are here for a premotion conference in this case.
16      The defendants have submitted letters indicating that they
17      would like to file motions to dismiss the complaint.  So I
18      called you all in essentially to discuss that briefly and then
19      set a briefing schedule for the motions to dismiss.
20                  Let me start with counsel for the plaintiff, Mr.
21      Smith.
22                  MR. SMITH:  Yes.
23                  THE COURT:  If you could please tell me first, the
24      RICO claim, I understand there is a lot of law, obviously --
25                  MR. SMITH:  Yes.
```

DcgQreiC

 1          THE COURT:  -- on civil RICO claims and there are
 2    requirements of pattern, continuity, etc.  The predicate acts
 3    that you're alleging, I believe are wire fraud, travel act and
 4    FCPA.  Is Foreign Corrupt Practices Act a predicate act?  I
 5    didn't think that was a predicate act.
 6          MR. SMITH:  Yes, as a matter of fact, it is.  It's
 7    interesting in that the Foreign Corrupt Practices Act is not
 8    enumerated expressly in the statute.  However, the case law
 9    says that it is a predicate act for the purposes of RICO.  For
10    various historical reasons involving, I believe, as an academic
11    its interplay with the Travel Act, but the Black Letter Law is
12    that the Foreign Corrupt Practices Act is indeed a predicate
13    act for purposes of the RICO statute.
14          THE COURT:  Let me ask just generally about the
15    allegations.  There is a lot in here about allegations relating
16    to corruption --
17          MR. SMITH:  Yes.
18          THE COURT:  -- paying of kickbacks and things like
19    that, which seem to be kind of one set of allegations and they
20    seem, in some ways, kind of distinct from allegations
21    particularly affecting your clients.  With respect to Mr. Reich
22    and Reich Associates, the things that really seem -- at least
23    based on the allegations -- to affect him and that entity are
24    the things relating to specifically what you allege is a lie
25    about him and/or that entity doing work for Derwick, one of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

DcgQreiC

1  Derwick entities.  But how does that connect to all the
2  allegations about bribery, corruption, that sort of thing.
3          MR. SMITH:  Well, the way I approach RICO cases -- and
4  I think it's consistent with the law, your Honor, is that you,
5  first of all, have to have a series of predicate acts to
6  establish certain things such as the RICO enterprise,
7  continuity, relatedness, those basic elements of the RICO.
8          The predicate acts that we allege that do that are a
9  series of violations of the Foreign Corrupt Practices Act and
10  the Travel Act between 2009 and, I believe, sometime in 2010.
11  That's to establish, among other things, the RICO enterprise.
12          As to the Predicate Act, that specifically, and more
13  directly, targeted and hurt my client, there are two predicate
14  acts that we focus on.  Both are wire fraud claims where
15  individuals on behalf the defendants, or the defendant himself
16  on one occasion, used the wires to intentionally make false
17  comments, false statements about my client working for the
18  defendants who undeniably had a long-standing reputation going
19  back long before my client ever sort of came crossways with
20  them for corruption and these sorts of things, including The
21  New York Times had talked about this.  So, the specific
22  predicate acts that directly hurt my clients are two, and
23  they're both wire fraud predicate acts.
24          The other predicate acts we talk about do not
25  directly -- I'm going to be clear on this -- don't directly

DcgQreiC

1   hurt him; however, they're all related to one another because
2   it's the RICO enterprise that is going on that the defendants
3   were trying to protect by virtue of their engaging in the two
4   wire frauds to attack my clients criminally.  So it's all
5   related to the enterprise, and we are injured by only two of
6   the predicate acts that I outline in my complaint.  That's how
7   they're connected.
8           THE COURT:  The elements of fraud -- I am not sure for
9   purposes of the predicate act wire fraud exactly what the
10  characterization would be in a jury instruction, I can't
11  remember, but doesn't it involve some requirement to make a
12  misrepresentation or an artifice to defraud to gain something
13  of value or to get some money or something like that,
14  wrongfully?
15          MR. SMITH:  No, absolutely not.  It's a Black Letter
16  Law.  In fact, I looked very carefully at this because I like
17  to think I address the critical issues ahead of time.  Yes, we
18  looked very carefully at this.
19          I think the easiest way to answer the question is if
20  your Honor were to ever take a look at pattern jury
21  instructions around the country, including I think the jury
22  instructions in Judge Leonard Sand's book for jury instructions
23  for the Second Circuit, if you look at pattern jury
24  instructions and jury instructions for wire fraud and mail
25  fraud, there is no requirement that a prosecutor establish that